USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/12/2019

December 10, 2019

**BY ECF**

This application is referred to the Magistrate Judge on duty. The parties shall promptly schedule a *Curcio* hearing.

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

The Clerk of the Court is directed to terminate the letter motion at docket number 39.

Dated: December 12, 2019
New York, New York

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**

Re:   *United States* v. *Stephen M. Calk*, 19 Cr. 366 (LGS)

      The Government respectfully submits this letter to advise the Court of potential conflicts of interest presented by the representation of the defendant, Stephen Calk, by the law firms Loeb & Loeb LLP ("Loeb & Loeb") and Kramer Levin Naftalis & Frankel LLP ("Kramer Levin"), and to respectfully request that the Court hold a hearing pursuant to *United States* v. *Curcio*, 680 F.2d 881 (2d Cir. 1982), at the conference scheduled for January 9, 2020 or at such other time as the Court deems appropriate.

      Loeb & Loeb represents both the defendant and, in matters related and unrelated to this case, The Federal Savings Bank (the "Bank")—the financial institution for which the defendant was majority owner as well as Chairman and Chief Executive Officer during the relevant time period. These lawyers also previously represented the Bank's holding company National Bancorp Holdings Inc. (the "Holding Company") in connection with this case. This dual representation could potentially cause a conflict if the defendant wishes to advance defense theories that might reflect adversely upon the Bank or Holding Company or if defense counsel is aware of confidential Bank or Holding Company information they cannot use for his defense.

      As to Kramer Levin (which also represents the defendant), a member of that firm is currently on leave to serve as counsel to a Congressional committee. In that capacity, he could be involved in investigations which could theoretically overlap with facts relevant to the defense.

      To be clear, the Government does not believe that an actual conflict exists in either case, and does not remotely doubt that all defense counsel involved in this case will vigorously pursue their client's interests. Nonetheless, given the potential conflicts at issue, the Government submits that it is important that the defendant be allocated as to his understanding of the issues and state on the record whether he waives any such conflict.

The Honorable Lorna G. Schofield                                                                                        Page 2
December 10, 2019

I. **Factual Background**

On or about May 21, 2019, the defendant was charged in a one-count indictment, 19 Cr. 366 (LGS) (the "Indictment"), with financial institution bribery, in violation of Title 18, United States Code, Section 215(a)(2). As alleged in the Indictment, the charge stemmed from Calk's solicitation from Paul J. Manafort, Jr., a political consultant, who was seeking a series of large loans from the Bank, of assistance in obtaining positions with a presidential campaign and administration. Between in or about July 2016 and January 2017, Calk caused the Bank to extend more than $16 million in loans (the "Loans") to Manafort. During the same time period, Calk solicited and received from Manafort assistance in applying for senior positions with the incoming presidential administration. This assistance resulted in Calk's interview in Manhattan for the position of Under Secretary of the Army, a position he was not ultimately appointed to.

In or about October 2017, Manafort was charged with federal crimes by the Special Counsel's Office, which also sought to forfeit Manafort's interest in the properties securing the Loans. Manafort subsequently ceased making payments on the Loans, and the Bank and its holding company foreclosed on the cash collateral securing the Loans. Manafort has since been convicted of federal offenses and, on or about October 9, 2018, a preliminary order of forfeiture was entered forfeiting the Borrower's interest in the properties securing the Loans (the "Properties"). The Bank and the Holding Company have written down the remaining balance of the Loans—currently approximately $12 million—as a loss.

On or about November 9, 2018, the Bank and the Holding Company filed claims in the United States District Court for the District of Columbia asserting their interests in the Properties. As relevant here, the Bank asserted that it was an innocent owner of the Properties and that it "had no knowledge and no reason to know that [the Borrower had] engaged in any criminal activity" or that it had any other reason to believe that the Properties were subject to forfeiture when the Bank extended the Loans. *See* Federal Savings Bank Petition at 6, *In re: Petitions for Relief Concerning Consent Order of Forfeiture*, 18 Misc. 167 (ABJ) (D.D.C.) (ECF No. 8). That claim has not yet been resolved. The Government expects that several employees of the Bank, who were involved in the process of approving and extending the Loans and therefore have knowledge pertinent to the forfeiture matter, will be trial witnesses in the instant matter.

Until several months after the indictment, both Calk and the Bank were represented by Loeb & Loeb in this matter.[1] On or about June 18, 2019, counsel for Calk informed the Government that Loeb & Loeb was no longer representing the Bank in connection with this case but would continue to represent Calk. Loeb & Loeb has informed the Government that, while it will continue to represent the Bank in other matters, Proskauer Rose, LLP ("Proskauer") will represent the Bank in connection with this case. Proskauer also represents the Bank it its litigation concerning the forfeiture of the Properties. The Government understands that Calk's Loeb & Loeb counsel continue to represent the Bank in several matters related to this case, including complying with subpoenas and other process from investigations conducted by other

---

[1] Since mid-2017, a number of individual Bank employees not including Calk have been represented by separate counsel in connection with this case.

governmental authorities into facts that are the same as or related to the facts underlying this case, and assisting the Proskauer attorneys in the litigation concerning the forfeiture of the Properties.[2]  Additionally, Loeb & Loeb counsel represented the Holding Company in this matter, although they have advised that they do not represent the Holding Company in this matter any longer.

On or about July 8, 2019, Loeb & Loeb informed the Government that Calk would be retaining Paul Schoeman, Esq., of Kramer Levin, as additional counsel in this matter.  On July 15, 2019, Mr. Schoeman informed the Government that Barry Berke, Esq.—a partner at Kramer Levin—is currently serving as a consultant to the Judiciary Committee of the United States House of Representatives, while on a leave of absence from Kramer Levin, and is anticipated to resume his position as a partner at the firm at some point during the pendency of Kramer Levin's representation of Calk.  As described in the press release accompanying Mr. Berke's appointment, he is to be consulting on "oversight matters related to the Department of Justice, including the Department's review of Special Counsel Mueller's investigation."[3]  While the Government is not aware of precisely which matters or topics Mr. Berke is participating in, the Government's investigation into the Loans is related to investigations previously conducted by the Special Counsel's Office.[4]

Mr. Schoeman has informed the Government that, upon Mr. Berke's return to Kramer Levin, Mr. Berke will not participate in Kramer Levin's representation of Calk and will be screened from any communications, materials, billing entries, or fees arising from the firm's representation of Calk, as required by New York Rule of Professional Conduct 1.11(b).  On or about July 19, 2019, Mr. Schoeman filed a notice of appearance on behalf on Calk.

**II.     Discussion**

   A.     <u>Applicable Law</u>

"A defendant's Sixth Amendment right to counsel includes a right to conflict-free representation." *United States* v. *Rogers*, <u>209 F.3d 139, 143</u> (2d Cir. 2000).  To ensure that a defendant's right to conflict-free counsel is adequately safeguarded, a district court has an obligation whenever it is "sufficiently apprised of even the possibility of a conflict of interest" to

---

[2] Calk's Loeb & Loeb attorneys also represent the Bank in matters not related to this case.

[3] *Chairman Nadler Announces Special Oversight Counsels to House Judiciary Committee Staff*, February 12, 2019, *available at* https://nadler.house.gov/news/email/show.aspx?ID=HKA7KB2PEXK6OBHWG7BVF76VOE.

[4] On September 17, 2019, Mr. Berke questioned a witness at a Judiciary Committee hearing relating to matters set forth in the Special Counsel's investigative report that are not related to this case.  *See, e.g.*, National Law Journal, *Barry Berke Makes House Debut With Lewandowski as Democrats Push Impeachment*, Sept. 17, 2019, *available at* https://www.law.com/nationallawjournal/2019/09/17/berry-berke-makes-house-debut-with-lewandowski-as-democrats-push-impeachment/   On December 9, 2019, Mr. Berke publicly participated in a presidential impeachment hearing not related to this case.

The Honorable Lorna G. Schofield												Page 4
December 10, 2019

initiate an inquiry and to disqualify counsel or seek a waiver from the defendant whenever the inquiry reveals that there is an actual or potential conflict of interest. *United States* v. *Levy*, 25 F.3d 146, 153 (2d Cir. 1994). Moreover, this Court has "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat* v. *United States*, 486 U.S. 153, 160 (1988).

When a district court is confronted with a possible conflict of interest, it must first determine whether "the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States* v. *Cain*, 671 F.3d 271, 293 (2d Cir. 2012). If the court discovers "no genuine conflict, it has no further obligation." *United States* v. *Perez*, 325 F.3d 115, 125 (2d Cir. 2003). An actual conflict of interest exists when, "during the course of representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action," or where the attorney's representation to the defendant is "impaired by loyalty owed a former client." *United States* v. *Blau*, 159 F.3d 68, 74-75 (2d Cir. 1998) (internal citation omitted). "A potential conflict of interest exists if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *United States* v. *Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998).

Should the court determine that an actual conflict exists that is so severe that "no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation," then the court must disqualify counsel. *Levy*, 25 F.3d at 146, 153. Such *per se* conflicts arise in a very narrow set of circumstances, such as where trial counsel "is not authorized to practice law," where trial counsel "is implicated in the very crime for which his or her client is on trial," *Armienti* v. *United States*, 234 F.3d 820, 823 (2d Cir. 2000), or where the "actual conflict . . . is [otherwise] so severe as to indicate *per se* that the rendering of effective assistance will be impeded," *Perez*, 325 F.3d at 125; *see also United States* v. *Jones*, 381 F.3d 114, 119 (2d Cir. 2004); *Solina* v. *United States*, 709 F.2d 160, 164 (2d Cir. 1983) (unlicensed attorney); *United States* v. *Cancilla*, 725 F.2d 867, 868-70 (2d Cir. 1984) (attorney implicated in client's crime); *United States* v. *Schwarz*, 283 F.3d 76, 96-97 (2d Cir. 2002) (unwaivable conflict existed when attorney represented both police officer defendant and police union which had paid $10 million retainer to attorney).

If, however, "the court determines that the 'attorney suffers from a lesser [actual] or only a potential conflict,' then it may accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit the defendant to be represented by the attorney of his choice." *Perez*, 325 F.3d at 125 (quoting *Levy*, 25 F.3d at 153) (alteration in original). Conflicts "such as attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable." *Perez*, 325 F.3d at 127. However, "such a conflict might require a defendant to abandon a particular defense or line of questioning," and to "seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel." *Id.* (quoting *United States* v. *Fulton*, 5 F.3d 605, 613 (2d Cir. 1993)). If the defendant "can rationally opt to retain counsel of his choice despite a conflict, the court conducts a *Curcio* hearing to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation." *Perez*, 325 F.3d at 127.

The Honorable Lorna G. Schofield                                                                                Page 5
December 10, 2019

      In making a determination about whether to accept a defendant's waiver of conflict-free counsel, the district court "should address the defendant directly and determine whether he wishes to make a knowing and intentional waiver of his right to conflict-free counsel in conformity with the procedures set out in [*United States* v. *Curcio*, 694 F.2d 14, 24–25 (2d Cir. 1982)]." *Cain*, 671 F.3d at 293.  Because a defendant who chooses to waive his right to conflict-free counsel gives up important rights -- and, in certain cases, may be required to "abandon a particular defense or line of questioning," *Perez*, 325 F.3d at 127 -- the Second Circuit has prescribed in detail what procedures must be followed in a *Curcio* proceeding to effectuate the waiver:

> At such a hearing, the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in the narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

*Perez*, 325 F.3d at 119.

      In light of a district court's obligation to ensure that a defendant receives a fair trial, the court should conduct any necessary inquiry as to possible conflicts of interest "sooner rather than later," so that "any conflict is identified and either eliminated or knowingly and voluntarily waived pre-trial."  *Rogers*, 209 F.3d at 146.  Though it is clearly preferable that such an inquiry be conducted pre-trial, at that point, it may be difficult to identify each of the "specific trial episodes in which the conflict" may come into play.  *Id.*  Indeed, in addition to making an assessment of "how serious the conflict is," the district court must also be aware "of how little can be predicted with certainty before a trial begins and [display] a sober regard for how much can go wrong once a trial starts."  *United States* v. *Rahman*, 861 F. Supp. 266, 275 (S.D.N.Y. 1994).

      For this reason, "where a serious potential conflict of interest exists, a trial judge has broad discretion to refuse a defendant his or her choice of counsel."  *United States ex rel. Stewart* v. *Kelly*, 870 F.2d 854, 857 (2d Cir. 1989); *see also Wheat*, 486 U.S. at 164 (holding that presumption in favor of petitioner's counsel of choice "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict"); *United States* v. *Zichettello*, 208 F.3d 72, 104 (2d Cir. 2000) (noting a district court's "substantial latitude" to require disqualification even where defendants have attempted to waive any potential conflict as long as it determines that the conflict is "severe").  Thus, "[i]n order to avoid lurking potential conflicts and to preserve the public's confidence in the integrity of the judicial system," district courts have discretion to reject a defendant's waiver of an actual or potential conflict.  *United States* v. *Oberoi*, 331 F.3d 44, 52 (2d Cir. 2003) (citing *Wheat*, 486 U.S. at 162-63); *see also United States* v. *Rogers*, 9 F.3d 1025, 1030-32 (2d Cir. 1993); *United States* v. *Locascio*, 6 F.3d 924, 931-35 (2d Cir. 1993).  Even the risk of a potential conflict becoming an actual conflict is, in certain cases, sufficient to empower the district court to decline to accept a waiver.  *Jones*, 381 F.3d at 120-21; *United States* v. *Gonzales*, 105 F. Supp. 2d 220, 223 (S.D.N.Y. 2000).

The Honorable Lorna G. Schofield					Page 6
December 10, 2019

    B.    <u>The Court Should Conduct a *Curcio* Hearing</u>

        1.  Loeb & Loeb

Here, a possible conflict arises from Loeb & Loeb's representation of both Calk and the Bank and, previously, the Holding Company. Based on the information available to the Government at this time, the Government does not believe that the divergent interests described above rise to the level of unwaiveable actual conflicts. However, the Government believes that there is sufficient possibility that "the interests of the defendant may place the attorney[s] under inconsistent duties at some time in the future," that the Court "has a threshold obligation to determine whether the attorney has an actual conflict, a potential conflict, or no conflict," and to "conduct a *Curcio* hearing to determine whether the defendant will knowingly and intelligently waive [his] right to conflict-free representation." *Kliti*, 156 F.3d at 153.[5]

Calk's and the Bank and Holding Company's interests are potentially at odds because Calk and the Bank and Holding Company may wish to make competing assertions in connection with this matter and in other litigation concerning the Loans. While the "likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials," *Rahman*, 861 F. Supp. at 275, the possibility of several conflicts is already apparent. For example, the Bank and Holding Company have suffered financial losses in connection with the Loans. In seeking to mitigate or recover those losses the bank may argue – and in the context of the litigation concerning the forfeiture of the Properties, has argued – that none of its employees were aware of any wrongdoing in connection with the Loans. By contrast, Calk may wish to argue that Bank or Holding Company employees were aware of potential problems regarding the Loans, but failed to notify him of any issues or that the processes used by other Bank personnel to evaluate the Loans were sub-par. Similarly, were Calk to be convicted, he may wish to argue that the offense had little or no detrimental effect on the Bank or Holding Company, while the Bank or Holding Company may wish to seek restitution. Additionally, during the course of its representation of the Bank or Holding Company, Loeb & Loeb may have access to information that would be advantageous to Calk's defense, but which (a) is protected by the attorney-client privilege between it and the Bank or Holding Company, and/or (b) would be damaging to the Bank or Holding Company were the information disclosed. In that same vein, Loeb & Loeb may be limited in its ability to cross-examine witnesses who are Bank or Holding Company employees out of a desire not to air information that is detrimental to the Bank or

---

[5] In order for Loeb & Loeb's representation of Calk to continue, the Bank must also waive any conflict and must do so in writing, as must the Holding Company if its interests are materially adverse to Calk's. *See* N.Y. Rules of Prof'l Conduct 1.7 ("Notwithstanding the existence of a concurrent conflict of interest . . ., a lawyer may represent a client if . . . each affected client gives informed consent, confirmed in writing"); *id.* 1.9 ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."); *id.* 1.9 cmt. 3 ("[K]nowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation.").

The Honorable Lorna G. Schofield                                                                                                    Page 7
December 10, 2019

Holding Company, or may otherwise be hesitant to present evidence that would reflect adversely on the Bank, which remains its client on other matters, or the Holding Company, which was previously its client.[6]

       2.  Kramer Levin

The Government does not currently believe that Mr. Berke's anticipated return to partnership at Kramer Levin, following his employment by the House Judiciary Committee, which implicates New York Rule of Professional Responsibility 1.11, poses a conflict with Kramer Levin's representation of Calk under the Sixth Amendment and Rule 1.9.  At this stage, the assurances laid out in Mr. Schoeman's July 15, 2019 letter regarding the measures that will be put in place upon Mr. Berke's return to screen him from the firm's representation appear to be consistent with the requirements of Rule 1.11(b).

However, in an abundance of caution and in the interest of economy, given the possibility that issues could arise at a later stage, the Government believes it is advisable to conduct a brief inquiry on this matter as well.  For example, given that Congressional oversight proceedings can sometimes receive significant media attention, it is possible that Mr. Berke may be involved in proceedings that could generate negative publicity adverse to defense theories Calk wishes to advance, or potentially regarding Calk specifically.

### III.  Conclusion

For the foregoing reasons, the Government respectfully requests that the Court conduct a hearing pursuant to the Second Circuit's ruling in *United States* v. *Curcio* to advise Calk of his right to conflict-free counsel and inquire whether he understands the possible conflict.  If, after being advised of the risks inherent in his continued representation by his current counsel, and having been afforded a reasonable opportunity to contemplate and process those risks, Calk informs the Court that he wishes to proceed with this current counsel, the Government requests that the Court elicit a narrative respond from Calk designed to ascertain whether he is fully aware of the risks involved in the representation provided by Loeb & Loeb and Kramer Levin, and to determine whether Calk is making a knowing and intelligent waiver of his right to conflict-free representation.

---

[6] A prior representation can be grounds for disqualification where the former client objects, the matters are substantially related, and the attorney had access to or was likely to have access to privileged information.  *See, e.g.*, *United States* v. *DiTomasso*, 817 F.2d 201, 219-20 (2d Cir. 1987).

The Honorable Lorna G. Schofield                                                                Page 8
December 10, 2019

      For the Court's convenience, the Government has enclosed a set of proposed questions to be put to the defendant as part of the *Curcio* inquiry.

                         Respectfully submitted,

                         AUDREY STRAUSS
                         Attorney for the United States
                         Acting Under Authority Conferred by
                         28 U.S.C. § 515

by: /s/  Benet J. Kearney
     Paul M. Monteleoni
     Douglas S. Zolkind
     Benet J. Kearney
     Assistant United States Attorneys
     (212) 637-2219/2415/2260

Proposed *Curcio* Examination

*United States* v. *Stephen Calk*, 19 Cr. 366 (LGS)

A) **Introductory Questions to Establish Competence**

1. Age

2. Education

3. Current medications

4. Alcohol, drugs, medications within past 24 hours

5. Is anything interfering with your ability to understand what is happening here today?

B) **Satisfaction with Counsel from Loeb & Loeb and Kramer Levin**

6. Are you satisfied with the services of your attorneys thus far in the case?

7. Do you understand that your lawyers are have other clients whom they have obligations to?

C) **Potential Conflict of Interests Posed by Loeb & Loeb's Representation**

8. Have any of your attorneys from the law firm of Loeb & Loeb informed you that their firm currently represents The Federal Savings Bank -- where you were formerly CEO? Have they also informed you that they previously represented The Federal Savings Bank and the bank's holding company National Bancorp Holdings, Inc. in connection with this case? Have they informed you that, while they no longer represent The Federal Savings Bank in connection with this case, they continue to represent The Federal Savings Bank in other matters including matters related to this case?

9. Have any of your attorneys informed you that though their law firm is not participating in the representation of the bank or holding company in relation to this case, they nevertheless have ethical obligations to the bank because they represent the bank in

    other matters, including matters that involve the same facts as this case, and to the bank and holding company because of their prior representation?

10. How long have you been aware of this issue? How much time have you spent discussing this issue with them?

11. Do you understand that the fact that Loeb & Loeb represents both you and The Federal Savings Bank may lead them to have loyalties divided between yourself and the bank?

12. Do you understand that in some cases your lawyers from Loeb & Loeb might have incentive to put the interest of the bank before yours?

13. Do you understand that your lawyers from Loeb & Loeb may have learned information in their prior representation of The Federal Savings Bank or its holding company on this matter and other matters, and if the bank or holding company does not grant their permission, your lawyers would be forbidden from using this information when representing you, even if it would be helpful to your case?

14. Let me give you some examples of the ways in which the allegiance of your lawyers from Loeb & Loeb could adversely affect their representation of you in this case. This representation could affect the way that your lawyers form Loeb & Loeb consider and advise you:

    a. Whether, and when, you should plead guilty;

    b. Whether you should seek to cooperate with the Government;

    c. What defenses you should raise;

    d. Whether you should testify at trial;

    e. Which witnesses should be cross examined, and what questions they should be asked;

The Honorable Lorna G. Schofield  Page 11
December 10, 2019

    f.  Which witnesses should be called, and what other evidence to offer on your behalf;

    g.  What arguments to make on your behalf to the jury;

    h.  What arguments to make to the Court, and what facts to bring to the Court's attention, before trial, during trial, or at your sentencing.

15. Let me expand on some of those examples.

    a.  Do you understand that your attorneys from Loeb & Loeb may not wish to take positions in this case before trial, during trial, or at sentencing that are critical of The Federal Savings Bank, even if criticizing the bank might help your defense?

    b.  Do you understand that your attorneys from Loeb & Loeb may not vigorously cross examine witnesses who are employees of The Federal Savings Bank, should they testify at your trial, if your lawyers from Loeb & Loeb believe that such cross examination may be harmful to the bank's interests?

    c.  Are you aware that your attorneys from Loeb & Loeb may have access to or may have learned information from The Federal Savings Bank or its holding company that may be helpful in defending you, but that they are absolutely prohibited from conveying it to you and using it to defend you without the consent of the bank or the holding company because of the attorney client privilege that applies to the communications between your attorneys from Loeb & Loeb and their clients?

  d. Do you understand that your attorneys from Loeb & Loeb may be limited in making arguments about your level of involvement in the offense, role in the offense, and culpability?

  e. Do you understand each of the examples that I have given you?

16. Tell me in your own words what your understanding is of the potential conflicts of interest arising in this situation.

17. Do you understand that the greatest danger to you is in the inability to foresee all of the possible conflicts that might arise because of Loeb & Loeb's simultaneous representation of The Federal Savings Bank, on the one hand, and the firm's representation of you, on the other, and the firm's prior representation of the bank and holding company?

18. Do you understand that the potential conflict has existed since your lawyers from Loeb & Loeb began representing you, The Federal Savings Bank, and its holding company simultaneously, and may continue to exist in some degree even after they ceased representing the bank and the holding company on this matter?

D) **Potential Conflict of Interests Posed by Kramer Levin's Representation**

19. Have any of your attorneys from the law firm of Kramer Levin informed you that a partner from their firm, Barry Berke, is currently on leave from the firm assisting the Judiciary Committee of the U.S. House of Representatives? Have they informed you that Mr. Berke's role includes consulting on "oversight matters related to the Department of Justice, including the Department's review of Special Counsel Mueller's investigation"? Have they informed you that this prosecution is being

The Honorable Lorna G. Schofield                                                                    Page 13
December 10, 2019

    brought by the Department of Justice, and arises out of an investigation related to the Special Counsel's investigation?

20. Have any of your attorneys from the law firm of Kramer Levin informed you that Mr. Berke is expected to rejoin the Kramer Levin firm? Have they informed you that, upon rejoining Kramer Levin, Mr. Berke will not participate in your representation and will be screened from any communications, materials, billing entries, or fees arising from Kramer Levin's representation of you?

21. Do you understand that if Mr. Berke, during the course of his work for the Congressional committee, learns something relevant to your case, he will not be able to share it with your defense team, even if it would be helpful to your case?

22. Do you understand that the Congressional committee being assisted by Mr. Berke may generate publicity that you find negative or that you consider adverse to your defense?

23. Do you understand that in some cases your lawyers from Kramer Levin might have an incentive not to make arguments that would reflect negatively on the work of the Congressional committee or on Mr. Berke?

**E) The Right to Conflict-Free Representation**

24. Do you understand that, in every criminal case, including this one, the defendant is entitled to assistance of counsel whose loyalty to him is undivided, who is not subject to any factor that might in any way intrude upon an attorney's loyalty to his interests? In other words, do you understand that you are entitled to attorneys who have only your interests in mind, and not the interests of any other client?

25. Have you received any inducements, promises or threats with regard to your choice of counsel in this case?

26. Have you consulted with any attorneys other than from Loeb & Loeb and Kramer Levin about the dangers to you of this potential conflict of interest?

27. Do you understand that you have a right to consult with an attorney free from any conflict of interest about this issue, and that the Court will give you an opportunity to do that if there is any aspect of the information that I have conveyed to you today that you wish to discuss with a conflict-free attorney?

28. Have you consulted with independent counsel about the conflict or potential conflict of interest that I have described to you today? Has counsel fully advised you about the situation? Do you wish to receive additional time to consult with independent counsel?

29. After considering all that I have said today about the ways in which Loeb & Loeb's representation of The Federal Savings Bank and prior representation of National Bancorp Holdings Inc. may adversely affect your defense, do you believe that it is in your best interest to continue with Loeb & Loeb representing you? Is that your wish?

30. After considering all that I have said today about the ways in which Mr. Berke's assistance to a Congressional committee may adversely affect your defense, do you believe that it is in your best interest to continue with Kramer Levin representing you? Is that your wish?

31. Do you understand that by choosing to continue with Loeb & Loeb and Kramer Levin representing you, you are waiving your right to be represented solely by attorneys who have no potential conflict of interest?

32. Are you knowingly and voluntarily waiving your right to conflict-free representation?

33. Do you waive any post-conviction argument, on appeal or otherwise, that by virtue of Loeb & Loeb's representation of The Federal Savings Bank or National Bancorp

Holdings Inc., or Kramer Levin having a partner assisting a Congressional committee, you were denied effective assistance of counsel?

**F) <u>Conclusion</u>**

34. Is there anything that I have said that you wish to have explained further?