# EXHIBIT H

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 1, 2019

**VIA EMAIL**

Daniel L. Stein, Esq.
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001

Re:   *United States* v. *Stephen M. Calk*, 19 Cr. 366 (LGS)

Dear Mr. Stein:

The Government writes, in an abundance of caution and in order to help you prepare your defense, to disclose to you certain information. The information contained herein is Highly Confidential within the meaning of the protective order.



06.20.2018



4. On or about June 27, 2017, Vanessa Bartholomew, an employee of TFSB, made the following statements to law enforcement agents, in substance and in part:

- Bartholomew did not find anything about the Manafort loans or their processing to be unusual.  She felt no pressure to close on the loans or push them through outside of normal protocols.

- Bartholomew did not find the variances in the net worth reported by the Manaforts in their loan applications to be unusual.



- Bartholomew did not believe that anything improper was done to fund the Manafort loans and did not believe that anyone at TFSB, including Calk, gained anything by funding the loan.

5. On or about June 27, 2017, James Brennan, an employee of TFSB, made the following statements to law enforcement agents, in substance and in part:

    - There did not appear to be anything unusual with respect to the Summerbreeze loan. There was an adequate amount of income and collateral.



    - Whether a loan was approved slowly or quickly was not an indication of anything in particular. Brennan had observed other deals close in as quickly as two days.

    - The Genesis default would not have had an impact on TFSB's loan decision.





9. On or about June 27, 2017, Thomas Horn, an employee of TFSB, made the following statements to law enforcement agents, in substance and in part:

- From a collateral standpoint, the Summerbreeze loan worked.

- Calk was normally very hands-on. Horn did not feel pressure to get the Summerbreeze loan done.



06.20.2018



14. On or about June 27, 2017, James Norini, an officer of TFSB, made the following statements to law enforcement agents, in substance and in part:

   - The Manafort loans were secured by real estate and cash, and were very well secured.

   - There were no concerns at the loan committee meeting regarding the Manafort loans.

   - ▮▮▮ TFSB's claim to fame was that they could turn around a loan in days. Norini did not recall a rush to complete the Manafort loans.

   - ▮▮▮ The credit committee could deny a loan even if Calk wanted it approved.

   - There was nothing preferential about the Manafort loan. It was a standard loan. If someone with a different name came in and asked for the same loan, it would have been approved. ▮▮▮

   - Calk has never pushed a loan to be approved.

16. On or about June 27, 2017, Dennis Raico, then an employee of TFSB, made the following statements to law enforcement agents, in substance and in part:

   - Raico did not feel pressure to treat the Manafort loans in a special way ▮▮▮

- The process of getting the 174 Jobs Lane (Bridgehampton) and 377 Union Street (Brooklyn) loans closed was long and went through a strict due diligence process.
  - █████████████████████████████
  - █████████████████████████████████
  - █████████████████████████████████

█████████████████████████████████████
█████████████████████████████████████

- ████████████████
- ████████████████████████████████
- ████████████████████████████████

████████████████████████████████████
████████████████████████████████████

- ████████████████████████████████
- ████████████████████████████████

████████████████████████████████████
████████████████████████████████████

- ████████████████████████████
- ████████████████████████████████

20. On or about June 27, 2017, Javier Ubarri, an officer of TFSB, made the following statements to law enforcement agents, in substance and in part:

- [REDACTED]

- [REDACTED]

- It was not unusually fast or otherwise remarkable to Ubarri that the proposed 2401 Nottingham loan was conditionally approved by the credit committee within one day or so of the initial meeting with the client.

- [REDACTED]

- It was Ubarri's understanding that Manafort and Yohai were negotiating with Genesis, a hard money lender. They were "technically in default of an agreement with them."

- [REDACTED]

- [REDACTED]

- [REDACTED]

- Ubarri did not think TFSB would make a bad loan just to accommodate a person, and Ubarri did not believe they had done so in this case.

- The deal was unusual, but it was not a bad deal, and TFSB does unusual deals all the time.

- TFSB elected to do the deal and wouldn't have done it if it were not in the bank's interest. [REDACTED]

- [REDACTED]





- Referring to the decision to make the 174 Jobs Lane loan, Ubarri stated that "the Credit Committee owns this."

- Ultimately, the Credit Committee made the decision to approve this loan and the vote was unanimous.

06.20.2018



- TFSB elected to move forward on the loan to Manafort after the changes Manafort requested because the cash flow and LTV analysis performed by the underwriters Horn and Brennan were favorable to support the funding of the loan. Additionally, the borrower's collateral and substantial net worth were sufficient for Calk's overall approval.







        Very truly yours,

        AUDREY STRAUSS
        Attorney for the United States
        Acting Under Authority Conferred by
        28 U.S.C. § 515

by: /s/ Paul M. Monteleoni
        Paul M. Monteleoni
        Douglas S. Zolkind
        Benet J. Kearney
        Assistant United States Attorneys
        (212) 637-2219/2418/2260

06.20.2018