# EXHIBIT I




**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 10, 2019

Daniel L. Stein, Esq.
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001

**Re: *United States* v. *Stephen M. Calk*, 19 Cr. 366 (LGS)**

Dear Mr. Stein:

The Government writes, in an abundance of caution and in order to help you prepare your defense, to disclose to you certain information. The information contained herein is Highly Confidential within the meaning of the protective order.



2. Additionally, in or about September 2018, in a proffer session with the Special Counsel's Office, Manafort, in substance, denied engaging in a quid pro quo with Calk.

3. On or about October 5, 2018, Manafort, in a proffer with the Special Counsel's Office and the U.S. Attorney's Office for the Southern District of New York, made statements substantially as memorialized in an FBI form FD-302 as follows:





Manafort recommended Calk because he had worked hard for the Campaign. Calk showed his ability and experience in building his bank. Manafort did not recommend Calk for any reason of Manafort's personal interest.



Manafort reviewed an 11/14/2016 e-mail chain between Manafort and Calk. When Calk asked "[a]re you aiding in the transition in any type of formal capacity," Manafort responded "[t]otal background but involved directly." Manafort was exaggerating. Manafort exaggerated, in part, because Calk was considering Manafort for a loan. Manafort does not believe that he would have received the loans anywhere else at the time. At a minimum, it would have been more complicated.

Early on, Manafort and Calk discussed how their relationship could be mutually beneficial. Calk could help Manafort with his loans and help on the Campaign. Manafort could help Calk get into the

Administration, could served on his Board, and could bring Calk other business.





Manafort delinked his helping Calk get a position in the Administration with Manafort getting a loan. Manafort never discussed with Calk his belief that the actions were not linked. As friends they would help each other, which included Manafort helping Calk get a job in the Administration.

4. On or about October 26, 2018, Manafort testified before a grand jury in the District of Columbia under questioning by attorneys from the Special Counsel's Office and made statements substantially as memorialized in a transcript as follows:









Q Now, with respect to the recommendation to Mr. Calk, I just want to make sure as of November 30, 2016, which I understand is the date of the e-mail, had you communicated to Mr. Kushner that Mr. Calk had approved I think it's like 15 or 16 million dollars in -- personal loans to you --

A Yeah.

Q -- at that time?

A Yeah.

Q Or that you had committed bank fraud in connection with the -- obtaining those loans?

A No.

Q And then did you ever communicate that to Mr. Kushner?

A No.

Q And is fair to say that if the roles were reversed and you were receiving a recommendation that's information that you would have wanted to have received because it could be potentially embarrassing to know what's the financial relationship of the person making the recommendation?

A I felt that Mr. Calk had earned this on his own activity -- his resume but more importantly the work he had done for the campaign in the -- in 2016. That was the basis upon which I made the recommendation.







Very truly yours,

AUDREY STRAUSS
Attorney for the United States
Acting Under Authority Conferred by
28 U.S.C. § 515

by: /s/ Paul M. Monteleoni
Paul M. Monteleoni
Douglas S. Zolkind
Benet J. Kearney
Assistant United States Attorneys
(212) 637-2219/2418/2260