UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>- against -<br><br>STEPHEN M. CALK,<br><br>*Defendant*. | Case No. 19 Cr. 366 (LGS) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT STEPHEN M. CALK'S MOTION FOR RELIEF TO ADDRESS THE GOVERNMENT'S ONGOING LATE DISCOVERY PRODUCTIONS**

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .................... ii

PRELIMINARY STATEMENT .................... 1

BACKGROUND .................... 2

ARGUMENT .................... 9

I. The Government Should Be Compelled To Identify Trial Exhibits, *Brady* Material, And Witnesses .................... 9

A. Legal Standard .................... 9

B. Identification of Trial Exhibits .................... 10

C. Identification of *Brady* Material .................... 11

D. Identification of Witnesses .................... 13

II. The Government Should Certify That Its Production Is Now Complete .................... 14

CONCLUSION .................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Brady v. Maryland*, 373 U.S. 83 (1963) .................... *passim*

*United States v. Blankenship*,
No. 5:14–Cr–00244, 2015 WL 3687864 (S.D. W.Va. June 12, 2015) .................... 12

*United States v. Cannone*,
528 F.2d 296 (2d Cir. 1975) .................... 9 n.6

*United States v. Cutting*,
No. 14-Cr-00139-SI-1, 2017 WL 132403 (N.D. Cal. Jan. 12, 2017) .................... 11, 12

*United States v. Daugerdas*,
S3 09-Cr-581, ECF No. 180 (S.D.N.Y. Oct. 14, 2010) .................... 10, 13, 14

*United States v. Hsia*,
24 F. Supp. 2d 140 (D.D.C. 1998) .................... 12

*United States v. McDonald*,
No. 01-Cr-1168(JS)(MLO), 2002 WL 2022215 (E.D.N.Y. Aug. 6, 2002) .................... 11

*United States v. Miranda*,
526 F.2d 1319 (2d Cir. 1975) .................... 9, 11

*United States v. Morrison*,
515 F. Supp. 2d 340 (E.D.N.Y. 2007) .................... 9

*United States v. Saffarinia*,
No. 19-Cr-216 (EGS), 2020 WL 224599 (D.D.C. Jan. 15, 2020) .................... 11

*United States v. Salyer*,
Cr. No. S–10–0061 LKK (GGH), 2010 WL 3036444 (E.D. Cal. Aug. 2, 2010) .................... 12

*United States v. Thomas*,
981 F. Supp. 2d 229 (S.D.N.Y. 2013) .................... 12

*United States v. Upton*,
856 F. Supp. 727 (E.D.N.Y. 1994) .................... 10, 11, 13

*United States v. Vilar*,
530 F. Supp. 2d 616 (S.D.N.Y. 2008) .................... 9, 10, 11, 13

**Rules**

Fed. R. Crim. P. 16 .......................................................................................................... *passim*

## PRELIMINARY STATEMENT

Defendant Stephen M. Calk respectfully submits this motion to address the government's ongoing discovery violations, namely its production of over 9,300,000 pages of documents months after the court-ordered discovery deadline, including most recently a 700 GB hard drive, containing hundreds of thousands of additional documents, on April 1, 2020. As a remedy, we ask that the government be compelled to (i) identify its anticipated trial exhibits, any *Brady* material, and trial witnesses; and (ii) certify to the Court that its discovery production is now complete. The defense seeks this remedy pursuant to the Court's inherent power to oversee discovery and Federal Rule of Criminal Procedure 16(d)(2), which give the Court power to craft a remedy to redress a party's failure to comply with its discovery obligations.

The grand jury returned the single-count indictment in this case almost a year ago, following a two-year investigation by the U.S. Attorney's Office for the Southern District of New York and the Special Counsel's Office. Mr. Calk is eager to go to trial and lift the cloud of the false allegation that has hung over his head throughout this period, which has, among other things, damaged his reputation and forced him to take a leave of absence from the bank that he built and has led since 2011. We recognize – particularly now, in the context of the COVID-19 crisis – that a trial in this matter will likely not be possible until the fall of 2020 at the earliest. It is nonetheless important that the parties be prepared to go to trial as soon as the crisis lifts and the Court's schedule permits.

Unfortunately, the government is preventing the defense from doing so by continuing to produce hundreds of thousands of documents long after the court-ordered discovery deadline on October 15, 2019. As set forth below, these are, for the most part, documents obtained from the Special Counsel's Office – documents that the U.S. Attorney's Office has had access to and been aware of since long before this case was indicted. We

respectfully submit that the government should not be permitted to bury the defense in documents and frustrate its efforts to prepare expeditiously for trial. Instead, as a remedy for the government's ongoing violations, the Court should compel the government to provide the requested information immediately in order to reduce the burden on the defense caused by productions that are both extraordinarily voluminous and inexplicably untimely.

## BACKGROUND

Beginning in or about March 2017, the U.S. Attorney's Office for the Southern District of New York and the Special Counsel's Office ("SCO"), commenced a joint investigation that ultimately led to the indictment of Mr. Calk in this case. The SCO, which was investigating former Trump Campaign Chairman Paul Manafort, and Southern District (including the prosecutors on this case) worked closely together, conducted joint proffer sessions with employees of Mr. Calk's bank (The Federal Savings Bank ("TFSB")), and from early on shared evidence and information. Indeed, the investigation of Mr. Calk was totally intertwined with the SCO's investigation of Manafort; the two investigations even shared the same FBI case agent. Manafort was charged in February 2018 with defrauding TFSB (among other banks) by providing the bank with false information about his finances in connection with the two loans at the heart of the case against Mr. Calk (loans that, in this case, the government now claims were obtained through bribery rather than deception). At Manafort's trial in August 2018, two TFSB employees testified for the government pursuant to immunity orders regarding those loans. Those same witnesses, as well as potentially others from the Manafort trial, are expected to testify at Mr. Calk's trial. There will also be substantial overlap of documentary evidence.

From the outset of this case, the government was thus well aware that it would need to review the files of the Special Counsel's Office for relevant Rule 16 materials. Presumably with this in mind, at Mr. Calk's arraignment on May 23, 2019, the government

advised that "discovery in this case will be very voluminous." (*See* Arraignment, *United States v. Stephen M. Calk*, No. 19-Cr-366 (S.D.N.Y. May 23, 2019) at Tr. 14:21-23). Pursuant to the Court's May 23, 2019 Order, (ECF No. 5), and following consultations with the defense, the government proposed a discovery schedule providing that, "discovery, which is voluminous, be produced . . . on a rolling basis, beginning promptly . . . [and to] be completed by August 26, 2019," (*see* ECF No. 11). The Court granted the application, ordering that Rule 16 discovery be "produced on a rolling basis and completed by August 26, 2019." (*Id.*).

On July 29, 2019, the defense sent a discovery letter to the government seeking discovery pursuant to Rule 16 and *Brady/Giglio*, and specifically reminding the government of its obligation to review the files of the SCO for responsive material. Prior to the August 26 deadline, the government made six productions to the defense totaling approximately 90,000 documents (approximately 1,265,000 pages).[1] Yet, according to the government's index accompanying the discovery, none of the six sets appears to have included materials from the files of the Special Counsel's Office.

On August 26, 2019, the government sought permission of the Court to extend the discovery deadline to October 15, 2019. (ECF No. 28). The government explained that it had "completed its production of discoverable materials from [its own] investigative files," but that it had "been obtaining materials from the files of investigations conducted by the Central District of California and the Special Counsel's Office . . . , and ha[d] begun reviewing and producing

[1] The government's sixth production included six "documents" that were, in fact, hyperlinks to voluminous additional materials. The defense is unable to calculate the actual number of documents or pages reflected in this set and excludes it from the final tally. The set is comprised of roughly 90 folders, which link to an untold number of individual file paths, each of which has a separate hyperlink to an underlying document. As far as the defense can tell, the files cannot be word-searched and the only way to review them is to click through each of the roughly 90 folders and then through the hundreds of pages of individual links.

such materials." (*Id.*). The government noted that, while it believed "its production of core Rule 16 discovery material [was] substantially complete, . . . there [was] a significant volume of additional material from the files of the Special Counsel's Office—some of which [was] not yet in [the U.S. Attorney's Office for the Southern District of New York's] possession—that the Government intend[ed] to review for production to the defense" and therefore required an "extension of the discovery deadline by several weeks." (*Id.*). The government included a footnote in its application to carve out that, "the extended discovery deadline does not preclude the possibility of *a small volume of materials* being produced thereafter due to unanticipated contingencies." (*Id.*) (emphasis added). The Court granted the government's application, ordering the government to "produce any outstanding discovery on or before October 15, 2019." (ECF No. 29).

With the understanding that the government intended to complete its discovery obligations by mid-October and its representations that the relevant material had largely been produced, the parties proposed a joint briefing schedule for pretrial motions to begin early November, and "request[ed] a trial . . . in the spring of 2020, with a preference for a start date in late April 2020." (ECF No. 28). The defense's hope was to move expeditiously to vindicate Mr. Calk, while still building in enough time to diligently review the discovery material. [2]

Prior to the October 15 deadline, the government made eight additional productions containing approximately 128,000 additional documents (approximately 309,000 pages). The government's index described the vast majority of these documents as simply,

---

[2] The defense timely filed its pretrial motions on November 8, 2019, consistent with the Court-ordered schedule, while noting that it reserved the right "to seek additional relief from the Court in the event that the contents of the government's late productions [gave] rise to a dispute that the parties [were unable] to resolve." (ECF No. 37 at 16 n. 13).

"Documents obtained from the files of the Special Counsel's Office," without specifying the sources from which the SCO had obtained the materials.

The government did not comply with the October 15 deadline. Instead, without advising the Court or seeking Court approval, it continued to produce an enormous volume of documents – over 820,000 – in the subsequent weeks and months, on the following dates: October 28, 2019, October 29, 2019, October 31, 2019, November 18, 2019, December 17, 2019, and – incredibly – April 1, 2020.[3] The April 1, 2020 production alone was some 700 GB containing 109 additional folders of hundreds of thousands of new documents.[4] According to the government's accompanying descriptions, all of these documents, save two, were obtained from the SCO. Furthermore, per the dates listed on the government's index, where included, the majority of these were materials in the SCO's possession long before the Manafort trial. In other words, most of these are documents that the government has had access to since at least the SCO's investigation of Manafort concluded in 2018, and likely well before that, given the close relationship between the two offices as concerns the investigation of Mr. Calk.

The discovery "index" supplied by the government to date is of very little use in navigating the materials, and the defense has spent, and continues to spend considerable resources in determining the nature of the information in the discovery. The bulk of the late discovery—some 635,000 documents, or 7,500,000 pages—are described as nothing more than

---

[3] The government first attempted to produce its most recent set of materials to the defense on March 18, 2020, but when the defense received the hard drive containing these materials by Federal Express it had been damaged in transit and had to be reproduced. Ordinarily, the government would have directed the defense to retrieve the hard drive by hand from the government's offices, but the COVID-19 crisis required a change in procedures.

[4] Because of the volume of materials, the defense has been able to load only 500 to 550 GB of the 700 GB drive thus far. This portion contains over 159,000 documents and 1,680,000 pages and represents the contents of just eight of the 109 new folders.

"Documents obtained from the files of the Special Counsel's Office." In response to our inquiries, the government has pointed to what it claims to be identifying information in the electronic load files accompanying the documents. But we have found that the load files are similarly unhelpful. The descriptions provided in the load files are not sufficiently reliable indicators of the source of the data. For example, there is a document set whose load file data is Manafort\Financial Records\2017.05.02 The Federal Savings Bank. Neither TFSB nor Manafort appears to be the custodian of these documents; instead, the materials appear to be from the files of the Office of the Comptroller of the Currency.

Moreover, where the government did include descriptions in its index—beyond the summary "Documents obtained from the files of the Special Counsel's Office"—the identifying information is often as unhelpful as the load file data. For example, in its most recent discovery set, the government produced "Microsoft Corporation documents obtained from the files of the Special Counsel's Office, May 9, 2018." These are not documents pertaining to Microsoft Corporation. They instead appear to be the results of a search query for the email or Skype accounts of a number of different custodians, all of which simply happened to have been maintained on Microsoft's servers. Other such examples from the index include, "KeepItSafe, Inc. documents obtained from the files of the Special Counsel's Office, January 22, 2019," or "TripAdvisor documents obtained from the files of the Special Counsel's Office, December 18, 2017." Without review we cannot know to whom the documents belong, how they are relevant, and what they include.

There is also no way for the defense to efficiently separate the relevant from the irrelevant in the various document sets included in the productions. It is true that many of the

documents produced by the government are searchable,[5] but search terms are of limited use when one is trying to find relevant information (the exact nature of which is unknown, as the government has given the defense no real roadmap to the contents of the files) buried in mountains of unorganized data. Accordingly, the defense must use guesswork and trial and error to determine which subsets of documents might yield relevant results—a task made all the more difficult in light of the unreliable file path information. Even where we have tried targeted searching, each search string can yield thousands of results. Furthermore, with each new production the defense must re-run searches in what has become an inefficient, piecemeal process, frustrating the very purpose of a discovery deadline.

The problems created by the government's late and voluminous productions have been compounded by numerous technical issues with the discovery; some of these we highlighted in our pretrial motions, (*see* ECF No. 37 at 17-18), while others have become apparent in the government's productions since our motions were filed. The government has produced certain emails and attachments as standalone documents without metadata indicating whether they are associated with one another. The discovery includes thousands of pages of individual documents in no apparent order saved as a single PDF; relevant documents for which we cannot identify a custodian; documents that are missing or are redacted to the point of abstraction; and other technical obstacles.

While disregarding the discovery deadline and continuing to produce documents, the government has tried to explain away the delay by claiming that it is simply producing these

---

[5] We recently discovered that not all of the materials that the government produced had been converted into a text-searchable format. The defense cannot readily identify the specific files in its database for which this is a concern and therefore must expend time and resources to convert thousands of documents into a text-searchable format.

materials "in an abundance of caution," and that it does not believe there is any relevant information contained within them. But the government carefully refrains from saying that there is nothing in these millions of pages that the government will rely upon at trial or, more importantly, that there is nothing material to the defense. If the government was certain that the documents were truly irrelevant, the government would not feel obliged to provide them to the defense pursuant to Rule 16. And, in fact, buried within the SCO documents we have already found material information, as one would expect given the overlap of the Manafort and Calk investigations. In any event, the government's disclaimers do not lessen the burden on the defense, which has an obligation to review the mountain of materials produced to it. Nor do the government's disclaimers justify producing these materials so long after the discovery deadline.

The defense would like to proceed expeditiously to trial following the abatement of the COVID-19 crisis, which we recognize will delay the scheduling of trials and other court proceedings in the coming months. But Mr. Calk should not be forced to choose between going to trial without adequate time for the defense to review the government's discovery, on the one hand, and adjourning the trial for many months after the crisis for purposes of reviewing the discovery, on the other, while he continues to live under the cloud created by the government's false charge. Given the government's disregard of the Court-ordered discovery schedule, it should be required to provide the defense with the information requested in this motion now, which will facilitate the review of the documents and ensure that this trial can proceed promptly and fairly once the danger posed by COVID-19 lifts.[6]

---

[6] Prior to filing this motion, we conferred with the government pursuant to Local Criminal Rule 16.1. The government declined to identify its anticipated trial exhibits and witnesses, indicating only that it would be amenable to doing so 4 to 6 weeks before trial. That is not an acceptable solution, as the defense needs this information now, in order to facilitate and expedite the review of the enormous amount of disorganized information the government has produced in violation

## ARGUMENT

### I. The Government Should Be Compelled To Identify Trial Exhibits, *Brady* Material, And Witnesses

#### A. Legal Standard

The Court possesses the inherent authority and discretion to regulate government disclosures in discovery. *See United States v. Vilar*, 530 F. Supp. 2d 616, 637 (S.D.N.Y. 2008). This authority is particularly necessary here in order to protect the defendant's "right to a fair trial" and promote "the fair and efficient administration of th[e] case." *Id.* at 640.

In addition to the Court's inherent authority, Rule 16(d)(2)(D) specifically authorizes the Court to remedy discovery violations by "enter[ing] any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(D). "In fashioning an appropriate sanction, if any, for a violation of Rule 16, the court has broad discretion." *United States v. Morrison*, 515 F. Supp. 2d 340, 353 (E.D.N.Y. 2007). "Whether or not sanctions for nondisclosure should be imposed depends in large measure upon the extent of the government's culpability for failure to make disclosable material available to the defense, on the one hand, weighed against the amount of prejudice to the defense which resulted, on the other." *United States v. Miranda*, 526 F.2d 1319, 1324 (2d Cir. 1975).[7]

---

of the Court's discovery deadline. The government also declined to specifically identify *Brady* information in the documents it has produced, stating only that it is aware of its obligations and believes it is in compliance with them. Finally, the government advised that it has now produced all discoverable material in its "possession," but noted that this is "without prejudice to [its] obtaining more discoverable information in [its] continuing investigation."

[7] One of the remedies enumerated in Rule 16(d)(2) to address discovery violations, is for the Court to "grant a continuance," *see* Fed. R. Crim. P. 16(d)(2)(B); however, as the Second Circuit has observed, continuances are only "a partial solution to the problem of unpreparedness" and "their prolongation of trials is . . . costly to both the government and the defendant." *United States v. Cannone*, 528 F.2d 296, 301 (2d Cir. 1975).

To remedy the harm caused by the government's persistent discovery delays, we respectfully submit that the Court should exercise its inherent authority and its authority pursuant to Rule 16(d)(2) and order the government to identify its anticipated trial exhibits, any *Brady* material, and trial witnesses. This is something that the government is usually required to do as a trial date approaches. Requiring the government to make these disclosures now will allow the defense to sift through the voluminous discovery sets in a meaningful way and to ascertain which materials the government believes are relevant. This remedy is appropriate given the government's ongoing disregard of the October 15, 2019 deadline, and the prejudice the government's late productions have had and will continue to have on the defense's ability to prepare expeditiously for trial.

B. Identification of Trial Exhibits

Even where the government has complied with its discovery obligations, courts have ordered the disclosure of the government's exhibit list well in advance of trial for reasons of fairness and efficiency. *See, e.g.*, *United States v. Upton*, 856 F. Supp. 727, 747-48, 754 (E.D.N.Y. 1994) (ordering government production of exhibit list before a trial date had been set); *see also United States v. Daugerdas*, S3 09-Cr-581, ECF No. 180, at 3 (S.D.N.Y. Oct. 14, 2010) (ordering the government to disclose a witness list and 3500 material as a Rule 16(d)(2) sanction by November 22, 2010, more than three months before the start of trial). Disclosure of a preliminary exhibit list is particularly appropriate where the government's production is voluminous, the government only intends to rely on a smaller subset of the produced documents, and there is no other way for the defense to ascertain the documents on which the government intends to rely. *See, e.g.*, *Vilar*, 530 F. Supp. 2d at 640 (disclosure of an exhibit list was warranted "based on the large number of documents at issue in this case, and the likelihood that the Government will rely to a significant extent on only a portion of those documents at trial");

*Upton*, 856 F. Supp. at 747-48 (disclosure ordered where "the government has produced thousands of pieces of paper and of those thousands of documents the Superseding Indictment puts the defendants on notice of only a handful of items which the government contends is fraudulent," and "it is not clear that the government will restrict its proof to the documents cited in . . . the Superseding Indictment"); *United States v. McDonald*, No. 01-Cr-1168(JS)(MLO), 2002 WL 2022215, at *3 (E.D.N.Y. Aug. 6, 2002) (disclosure of an exhibit list ordered where the production was 200,000 pages).

Here, the government has not complied with its obligation to complete discovery in a timely manner. It has instead cavalierly ignored the Court's discovery deadline and belatedly produced large volumes of disorganized documents that have been in its possession, custody, or control since before the indictment was returned. Compelling the government to identify its trial exhibits now, as the defense confronts the task of sifting through the government's enormous and belated discovery, is necessary to protect Mr. Calk's right to a fair trial and promote "the fair and efficient administration of this case." *Vilar*, 530 F. Supp. 2d at 640. It is also an appropriate sanction under Rule 16(d)(2), given the extent to which the government's months-long delay has prejudiced the defense without good cause or leave of the Court, over many months. *See Miranda*, 526 F.2d at 1324.

C. Identification of *Brady* Material

Relatedly, the government should be compelled to identify any *Brady* material among the documents it has produced. *See generally Brady v. Maryland*, 373 U.S. 83 (1963). Even where the government has not violated its discovery obligations, courts have directed the government to specifically identify *Brady* material within its productions to the defense. *See United States v. Saffarinia*, No. 19-Cr-216 (EGS), 2020 WL 224599, at *30 (D.D.C. Jan. 15, 2020); *United States v. Cutting*, No. 14-Cr-00139-SI-1, 2017 WL 132403, at *9-10 (N.D. Cal.

Jan. 12, 2017); *United States v. Blankenship*, No. 5:14–Cr–00244, 2015 WL 3687864, at *6 (S.D. W.Va. June 12, 2015); *United States v. Salyer*, Cr. No. S–10–0061 LKK (GGH), 2010 WL 3036444, at *3 (E.D. Cal. Aug. 2, 2010); *United States v. Hsia*, 24 F. Supp. 2d 14, 29–30 (D.D.C. 1998); *see also United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) ("[T]he Government cannot hide *Brady* material as an exculpatory needle in a haystack of discovery materials.").

In particular, courts have directed the government to identify *Brady* material where, as here, its productions have been voluminous, *see Blankenship*, 2015 WL 3687864, at *3–4 (four million pages); *Salyer*, 2010 WL 3036444, at *3 (five years of investigation yielded "pages numbering into the millions"); *Hsia*, 24 F. Supp. 2d at 29 ("The government cannot meet its *Brady* obligations by providing Ms. Hsia with access to 600,000 documents and then claiming that she should have been able to find the exculpatory information in the haystack."); where, as here, the government's productions are unorganized or prove difficult to navigate, *see Cutting*, 2017 WL 132403, at *10 (government's "electronic production ha[d] been marred by technical problems that seriously impede defendants' ability to search the ESI"); and where, as here, the government is "in a far better position than the Defendant to know what evidence might be exculpatory . . . under *Brady*," *see Blankenship*, 2015 WL 3687864, at *7.

The defense faces an even greater uphill battle in its preparation for trial where, in addition to receiving late, massive quantities of discovery, it must sift through and attempt to make sense of emails missing attachments, associated documents randomly separated from one another, and document sets that cannot be searched. *See e.g.*, *Cutting*, 2017 WL 132403, at *5 (directing the government to identify *Brady* where among the technical challenges the defense faced were "emails that [were] missing attachments; . . . families of documents, such as an email

and its attachments, produced as standalone documents without metadata indicating that they are part of a family; . . .[and] emails and attachments produced as a single document").

Given that the government has ignored the discovery deadline and belatedly produced a large mass of disorganized information that it was aware of and had access to from the very outset of this case, specific identification of *Brady* material is warranted. Requiring the government to identify this information now will focus the defense's review and require little more from the government than reviewing the documents it has produced. The government has had access to these documents for months or years, can consult with the SCO (or, if necessary, the third parties who produced them to the SCO) with regard to their contents, and is far better positioned than the defense to expeditiously locate this information.

D. Identification of Witnesses

The Court may compel the disclosure of a witness list "where the defendant 'makes a specific showing that disclosure [is] both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case.'" *Vilar*, 530 F. Supp. 2d at 637 (S.D.N.Y. 2008) (quoting *Cannone*, 528 F.2d at 300-01). Defendants bear the burden to make "some particularized showing of need . . . balanced against the possible dangers accompanying disclosure." *Id.* at 638 (finding particularized need where there was a large "volume of documents at issue" and allegations of "wrongdoing over an extended period of time"); *Daugerdas*, S3 09-Cr-581, ECF No. 180, at 3 (ordering the government to produce a witness list as a Rule 16(d)(2) sanction after the government failed to produce 110 boxes and 120,000 documents).

Courts have compelled the production of witness lists well in advance of trial after evaluating a series of factors largely focused on the risk of violence or witness intimidation in a particular case. *See Upton*, 856 F. Supp. at 750-51, 754 (ordering government production of

witness list before a trial date had been set); *Daugerdas*, S3 09-Cr-581, ECF No. 180, at 3 (witness list ordered more than three months before trial). No such concerns are present here. There are no allegations of violence or witness intimidation, and Mr. Calk has no criminal record. In connection with this motion, we simply ask that the government be compelled to provide a good-faith witness list. This information will allow the defense to focus its review of the discovery on documents associated with persons whom the government is intending to call as witnesses, and thus to more readily identify relevant information within the hundreds of thousands of documents produced to date.

## II. The Government Should Certify That Its Production Is Now Complete

In addition to the above, we respectfully request that the Court order that the government certify, subject to further sanction, that its Rule 16 and *Brady* production is now complete. The government should have completed its production over six months ago. It should not, absent application to the Court and a showing of good cause, be permitted to unilaterally delay the production of discovery any further.

## CONCLUSION

For the foregoing reasons, Mr. Calk respectfully requests that the Court compel the government to (i) identify its anticipated trial exhibits, any *Brady* material, and trial witnesses; and (ii) certify to the Court, subject to further sanction, that it has completed its production.

Dated: New York, New York
April 13, 2020

Respectfully submitted,

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: /s/ Paul H. Schoeman

Paul H. Schoeman
Darren A. LaVerne
1177 Avenue of the Americas
New York, NY 10036
Telephone: 212.715.9100

LOEB & LOEB LLP

Jeremy Margolis
Joseph J. Duffy
321 N. Clark Street
Chicago, IL 60654
Telephone: 312.464.3100

*Attorneys for Defendant Stephen M. Calk*