UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                           :

UNITED STATES OF AMERICA,        :

                                           :      Case No. 19 Cr. 366 (LGS)

    - against -                            :

STEPHEN M. CALK,                   :

               *Defendant.*          :

                                           :
------------------------------------x

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT STEPHEN M. CALK'S MOTION FOR RELIEF TO ADDRESS THE
GOVERNMENT'S ONGOING LATE DISCOVERY PRODUCTIONS**

KL3 3297707.1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ................................................................................................................................ 3

I.     The Government Delayed In Obtaining And Reviewing The SCO Files ........................... 3

II.    The Requested Relief Is A Fair Remedy Given The Government's Violation Of A Court-Ordered Deadline ....................................................................................................... 8

CONCLUSION ............................................................................................................................ 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*United States v. Ashburn*,
  No. 11-Cr-303 (NGG), 2014 WL 1800409 (E.D.N.Y. May 5, 2014) ................................8 n.7

*United States v. Blankenship*,
  No. 5:14-Cr-00244, 2015 WL 3687864 (S.D. W.Va. June 12, 2015) ......................................10

*United States v. Bonventre*,
  No. 10-Cr-228 (LTS), 2013 WL 2303726 (S.D.N.Y. May 28, 2013) ........................................9

*United States v. Budovsky*,
  No. 13-Cr-368 (DLC), 2016 WL 386133 (S.D.N.Y. Jan. 28, 2016) ..........................................9

*United States v. Collins*,
  409 F. Supp. 3d 228 (S.D.N.Y. 2019) ..............................................................................4 n.4

*United States v. Cutting*,
  No. 14-Cr-00139-SI-1, 2017 WL 132403 (N.D. Cal. Jan. 12, 2017) .......................................10

*United States v. Daugerdas*,
  S3 09-Cr-581, ECF No. 180 (S.D.N.Y. Oct. 14, 2010) .......................................................3, 11

*United States v. Healey*,
  860 F. Supp. 2d 262 (S.D.N.Y. 2012) ..............................................................................10 n.9

*United States v. Hsia*,
  24 F. Supp. 2d 14 (D.D.C. 1998) ............................................................................................10

*United States v. Marshall*,
  132 F.3d 63 (D.C. Cir. 1998) ....................................................................................................9

*United States v. Mohamed*,
  148 F. Supp. 3d 232 (E.D.N.Y. 2015) .............................................................................8 n.7

*United States v. Monsanto Lopez*,
  798 F. App'x 688 (2d Cir. 2020) .........................................................................................9 n.8

*United States v. Ohle*,
  441 F. App'x 798 (2d Cir. 2011) ............................................................................................10

*United States v. Ohle*,
  No. S3 08-Cr-1109(JSR), 2011 WL 651849 (S.D.N.Y. Feb. 7, 2011) ...................................10

*United States v. Rivera*,
   No. 16-Cr-175 (LGS), 2017 WL 1843302 (S.D.N.Y. May 8, 2017) ................................. 8 n.7

*United States v. Rubin/Chambers, Dunhill Ins. Servs.*,
   825 F. Supp. 2d 451 (S.D.N.Y. 2011) ..................................................................................... 10

*United States v. Saffarinia*,
   424 F. Supp. 3d 46 (D.D.C. 2020) ........................................................................................... 10

*United States v. Salyer*,
   Cr. No. S–10–0061 LKK (GGH), 2010 WL 3036444 (E.D. Cal. Aug. 2, 2010) .................... 10

*United States v. Upton*,
   856 F. Supp. 727 (E.D.N.Y. 1994) ............................................................................................ 8

*United States v. Vilar*,
   530 F. Supp. 2d 616 (S.D.N.Y. 2008) ........................................................................................ 8

*United States v. Volpe*,
   42 F. Supp. 2d 204 (E.D.N.Y. 1999) ..................................................................................... 4 n.4

**Rules**

Fed. R. Crim. P. 16 .......................................................................................................... *passim*

**Other Authorities**

Harrington Mem., *United States* v. *Reichberg*,
   No. 16-Cr-468 (GHW) (S.D.N.Y. Nov. 13, 2017), ECF No. 93 ........................................ 9, 10

KL3 3297707.1

Defendant Stephen M. Calk respectfully submits this reply memorandum in further support of his motion for relief to address the government's ongoing late discovery productions.

## PRELIMINARY STATEMENT

The total count of documents produced by the government in this matter after the discovery deadline now stands at over 10 million pages, 2.5 million of which arrived as recently as April 1, 2020.[1] The October 15, 2019 date was already an extended deadline that the government itself proposed, three months after it indicted and arrested Mr. Calk, and five months after it received access (by its own admission) to the Special Counsel Office's files. While obscured in its Opposition, the government proposed the extension of the discovery deadline to October 15 long after it had received the defense's Rule 16 requests that it now tries to blame for its belated productions. Indeed, the government's suggestion that the defense brought these late productions on itself by asking for material from the SCO files is utterly disingenuous. Given the overlap of the two investigations, it was obvious that the SCO files would contain relevant information, and the government had an obligation to obtain and search them. Nonetheless, as the government reveals in a footnote, it did not bother searching the SCO files for self-evidently relevant terms like "Calk" and "TFSB" until well into the discovery period, and the results of this search were among the millions of pages produced after the discovery deadline. The government also discloses, again in a footnote, that as the result of an "error," it did not obtain an additional 2.5 million pages of additional material from the SCO until December 2019. It then

---

[1] Since filing its motion, the defense has been able to process and load the government's latest production, yielding an even higher page count than originally believed.

took until March 2020 for the government to alert the defense that another massive production would be forthcoming, and to attempt (unsuccessfully) to produce it.

We respectfully submit that the government should not be permitted to violate the discovery deadline with impunity, and that the remedy requested by the defense is a fair one. Just as the defense was struggling to come to terms with the 7.5 million pages the government produced after October 15, it received another 2.5 million pages that it must now sort through as it prepares for trial, as a result of the government's delay. The government says that it "is presently unaware of any documents it intends to rely on at trial that were produced" after the discovery deadline, but also claims that it "has not yet determined the set of materials it intends to rely on at trial." (Gov't Opp'n at 12-13).[2] The former statement is of little comfort to Mr. Calk given the latter.

Of course, the government's assurances are also of no comfort if there is *Brady* material buried within these documents. Conspicuously, the government refrains from saying that there is no *Brady* material in the 10 million pages, even though it, the FBI, and/or the SCO have, in the course of their multi-year investigation, reviewed this information and presumably know what is in there.

On the other hand, the government articulates no prejudice it would suffer by identifying *Brady* material or providing good-faith exhibit and witness lists. This is not an organized-crime case, there is no danger of obstruction or other justification for withholding this information, and the government does not even attempt to argue otherwise. Indeed, the government notes that, in connection with Mr. Calk's release on bond almost a year ago, it

---

[2] Citations to "Gov't Opp'n" refer to the government's memorandum in opposition to defendant's discovery motion, ECF No. 74.

provided the defense with a list of 40 potential witnesses. We ask simply that the government now provide the defense with an updated list that has been supplemented or narrowed in the year that has passed, so that we may use it to help identify potentially relevant material in the discovery. Judge Pauley ordered this same relief, three months before trial, in the *Daugerdas* case, and in fact went even further, requiring production of 3500 material as well.

This should not be a trial by ambush, nor a war of attrition. The government has been dilatory and made mistakes in how it handled its discovery obligations with respect to the SCO files, files that, given the substantial overlap of the two investigations, obviously contained information relevant to this case. We ask that the Court exercise the considerable discretion it has in discovery matters to help remedy the prejudice caused to the defense by the government's delay, and ensure that this trial proceeds fairly.

## ARGUMENT

### I.  The Government Delayed In Obtaining And Reviewing The SCO Files

Among the questions left unanswered by the government is why it did not obtain, search, and review the SCO files far earlier than it did. While the government downplays the overlap and coordination between the investigations of Mr. Calk and Mr. Manafort, it does so unconvincingly. It says, for example, that the U.S. Attorney's Office in this District and the SCO "coordinated on a limited number of investigative steps," and then describes those steps, which are hardly "limited." They include working together on the search warrants for Mr. Calk's phone and Mr. Manafort's email account, collaborating on subpoenas, and jointly interviewing witnesses, including conducting a "series" of interviews with TFSB bank employees relating to the loans to Manafort. (Gov't Opp'n at 4). During certain proffers conducted with these witnesses, and perhaps others, Special Agent Sherine Ebadi was the sole FBI agent present, a principal questioner, and accordingly a potential witness at Mr. Calk's trial

3

if prior statements by these witnesses are disputed.  Agent Ebadi was also the lead agent in the SCO's investigation of Manafort, sitting with the SCO prosecutors at counsel table at Manafort's trial.[3]  In light of the overlap of the investigations, the government has in fact treated the SDNY and SCO investigation as "joint," rather than "parallel," effectively conceding that it is obliged to search the SCO files for Rule 16 and *Brady* material.[4]

The reason for the joint investigation is self-evident:  The SCO and the U.S. Attorney's Office were investigating the same two TFSB loans to Manafort.  Accordingly, the government was well aware from the outset that the SCO's files contained relevant information and that to comply with the government's discovery obligations in this case it was required to review those materials for discoverable information.  The very theory of the SCO's case against Manafort suggested that the SCO's files would contain information material to Mr. Calk's defense since Mr. Calk, as the majority owner of TFSB, was the principal victim of one of Manafort's bank frauds.  As noted in our opening brief, the SCO charged Manafort with falsifying and concealing information from TFSB in order to obtain the two loans – not with obtaining them through the bribery of Mr. Calk, as the government alleges here.  And following Manafort's conviction for bank fraud and his admission to other crimes, the SCO presented to

---

[3]  The FBI was simultaneously conducting investigations of Mr. Calk, Manafort, and Jeffrey Yohai (Manafort's son-in-law, who was initially a proposed co-borrower in the TFSB loans). Agent Ebadi was the lead agent for the Manafort and Yohai cases.  Any other FBI "case agent" assigned to the investigation of Mr. Calk did not attend the TFSB proffers referenced above.

[4]  The distinction between joint and parallel investigations is one that the government routinely relies on in arguing that it is not obliged to produce discovery from the files of other law enforcement entities investigating the same conduct.  *See, e.g.*, *United States v. Collins*, 409 F. Supp. 3d 228, 241 (S.D.N.Y. 2019) (no joint investigation between USAO and SEC); *United States v. Volpe*, 42 F. Supp. 2d 204, 221 (E.D.N.Y. 1999) (joint investigation requirement extends to two separate prosecution teams within the USAO).  The government has raised no such argument here, as it knows that it has no legal basis to make it given the degree of cooperation between the U.S. Attorney's Office, the SCO, and the FBI.

the grand jury in Washington, D.C. Manafort's testimony that he did not help Mr. Calk obtain an interview with the Trump administration in return for the loans. (*See* Defendant's Pretrial Motions, ECF No. 37 at 14-15).

In light of the above, it was incumbent on the government to obtain and thoroughly review the SCO files before it chose to indict Mr. Calk in May of 2019, so that, having charged and arrested Mr. Calk, it would be in a position to promptly turn Rule 16 and *Brady* information from those files over to him. The government concedes that it had access to the SCO files two months prior to its decision to indict Mr. Calk. (Gov't Opp'n at 4). Yet, apart from "some" efforts it claims to have undertaken prior to indictment (*see id.* at 7), the government inexplicably appears to have waited months before seeking to obtain and review the vast majority of the material from the SCO. According to its index, it did not include a single document in its Rule 16 production from the SCO files prior to the August 26, 2019 discovery deadline that it had proposed following Mr. Calk's arraignment. (*See id*. at Ex. C, Productions 1-6). This, despite receiving a letter from Mr. Calk's prior trial counsel more than two months earlier, on June 18, 2019, specifically asking that the SCO files be searched for Rule 16 and *Brady* material, including documents relating to Mr. Calk or TFSB. (*Id*. at Ex. A). Current trial counsel sent another letter, on July 29, 2019, again reminding the government of its obligation to review the SCO files for Rule 16 and *Brady* material. (*Id*. at Ex. B).

To be clear, the defense never requested that the government produce the entirety of the SCO's investigative files to the defense in this case. The defense had no idea, prior to receiving the files, what they contained. Instead, the defense requested that the government comply with its obligation to search the SCO's file for discoverable information. The government could have complied with the defense's requests by conducting a search, separating

5

the wheat from the chaff, and producing a more limited and manageable quantity of information. This would have been far preferable for the defense, but the government clearly waited too long to begin that process. While the government is studiously obscure on when it requested, obtained, and reviewed the SCO files, it reveals in a footnote that it did not search the SCO files for the basic terms "Calk," "TFSB," and the addresses for the properties at issue until "later," and that "some" of these results were included in the millions of pages it produced after the October 15 deadline. (*Id*. at 8 n.12). It appears that the government simply gave up on reviewing the SCO files for itself and made a decision to dump the entirety of the SCO's investigation on the defense.

In any event, by August 26, 2019, when it asked the Court to extend the original August discovery deadline to October 15, the government had been aware of the defense request that it search the SCO materials for more than two months, and specifically requested the extension in order to obtain and review these materials.[5] (Aug. 26, 2019 Letter, ECF No. 28). The defense did not object to the extension of the August deadline, or to an allowance that "the extended discovery deadline does not preclude the possibility of a small volume of materials being produced thereafter due to unanticipated contingencies." (*Id.*). We did not, however,

---

[5] In its Opposition, the government portrays its decision to provide the SCO documents as an act of beneficence. (*See* Gov't Opp'n at 7-8; *see also id.* at 2, 4, 6, 9, 10, & 18 n.24). But the government does not produce documents unless it believes the defense has a basis to receive them, and it clearly believed that such a basis existed under Rule 16. Indeed, each of the letters producing the SCO documents indicates that the documents were being provided pursuant to Rule 16. The government's statements in this regard – the notion that it has bent over backwards to be helpful in this case – are to be contrasted with the vigor with which it is resisting production of the OCC and Presidential Transition Team documents that are the subject of the defense's pending pretrial motions. (*See* Government's Opposition to Defendant's Pretrial Motions, ECF No. 38 at 37-40).

agree to the production of millions of pages of material after the deadline, much less to the production of 2.5 million pages *six months* after the deadline.[6]

The government blames a "copying error" – by whom, it is unclear from the carefully drafted footnote 14 to its Opposition – for its extremely untimely production of the 2.5 million pages. Remarkably, the government reveals that it became aware of these documents during "the discovery period" (by which it appears to mean prior to October 15) and in fact obtained the additional documents in December 2019. Yet the government did not alert the defense that it had become aware of a voluminous set of new documents until March 2020, and then did not attempt to produce the documents until later in the month. The defense never consented to the late production of these documents, and the government never asked the Court to extend the deadline. The government simply produced them, perhaps with the hope that the defense would not bring the matter to the Court's attention.

The government also claims that the defense overstates the technical issues with the productions. We disagree. But we did not file this motion to make the Court a referee on these issues, and are not seeking an order compelling the government to address them. In claiming that it has addressed previous technical issues that the defense has raised (Gov't Opp'n at 10), and blaming other issues on the SCO or other third parties (*id.* at 10-11 & n.12), the government acknowledges that there have in fact been problems with its productions – problems which the government has itself apparently encountered in obtaining and processing documents from the SCO, (*see e.g.*, *id.* at 10). What is clear is that had the government promptly complied

---

[6] As noted in our opening memorandum, when the defense filed its pretrial motions on November 8, 2019, we explained that the government had failed to comply with the October 15 deadline and reserved the right to seek relief with regard to its ongoing productions at a later date. (*See* Defendant's Pretrial Motions, ECF No. 37 at 16 n.13). We filed this motion shortly after receiving and loading the contents of the production received on April 1, 2020.

with its discovery obligations and had it not delayed in obtaining and reviewing the SCO files, these issues could have been addressed far earlier in this case.  The government knows from experience that such issues are not uncommon in cases involving massive quantities of data, and it knew from day one – even prior to indicting Mr. Calk – that this was such a case.  Now, as we head toward trial, the defense should not pay the price for the government's failure to comply with the Court's deadline.

**II.     The Requested Relief Is A Fair Remedy Given The Government's Violation Of A Court-Ordered Deadline**

In its Opposition, the government does not contest that the Court has the discretion to grant the requested relief.  It recognizes that it is not unusual for exhibit and witness lists to be turned over several weeks prior to trial, and that in some cases – even where there has been no discovery violation – courts have required production months prior to trial.  *See, e.g.*, *United States v. Vilar*, 530 F. Supp. 2d 616, 638, 639-40 (S.D.N.Y. 2008); *United States v. Upton*, 856 F. Supp. 727, 747-48, 751, 754 (E.D.N.Y. 1994).  The question here is whether, under the circumstances of this case – where the government has failed to comply with a court-ordered discovery deadline and produced millions of pages of documents late – the government should be compelled to turn over this information earlier than it ordinarily would.  While the government cites cases where it says the issues were more complex or the document challenges more daunting, those cases did not involve the production of documents long after a deadline that had already been extended by two months at the government's request.[7]  Indeed, even the

---

[7] A number of the government's cases are also distinguishable on other grounds, including that they involved crimes of violence where early disclosure of witnesses raised issues not present here.  *See United States v. Mohamed*, 148 F. Supp. 3d 232, 235, 246-47 (E.D.N.Y. 2015) (in a murder trial, declining to order early disclosure of the government's witness list out of "significant safety and security concerns" and absent a showing of specialized need); *United States v. Rivera*, No. 16-Cr-175 (LGS), 2017 WL 1843302, at *2 (S.D.N.Y. May 8, 2017) (citing witness safety and security concerns); *United States v. Ashburn*, No. 11-Cr-303 (NGG), 2014

8

*Budovsky* and *Bonventre* cases, cited by the government, where courts ordered production of exhibit lists two months before trial, did not involve discovery violations by the government. And in requiring early production these courts accordingly did not rely on their authority to redress violations under Rule 16(d)(2), as we ask the Court to do here. *See United States v. Budovsky*, No. 13-Cr-368 (DLC), 2016 WL 386133, at *12 (S.D.N.Y. Jan. 28, 2016); *United States v. Bonventre*, No. 10-Cr-228 (LTS), 2013 WL 2303726, at *9 (S.D.N.Y. May 28, 2013).

The government acknowledges that Rule 16(d)(2) "give[s] the Court 'broad discretion in fashioning a remedy' for insufficient or belated disclosures." (Gov't Opp'n at 16). But it goes on to argue that early production of witness and exhibit lists under the rule is not an appropriate remedy, claiming that the "typical remedy for a belated disclosure is an adjournment where necessary to allow the other party time to respond to the new material." (*Id.* at 17). In support of this proposition, it cites a 22-year-old case from outside the circuit where the court merely held that exclusion of evidence was not warranted. *See United States v. Marshall*, 132 F.3d 63, 70 (D.C. Cir. 1998). The *Lee*, *Miranda*, *Pineros*, *Monsanto Lopez*, *Dupree*, and *Shaw* cases, also cited by the government, all similarly involved defense requests to preclude the admission of evidence at trial – a far more substantial remedy than that which we seek here.[8] The one case cited by the government where the defense sought early production of trial exhibits – *United States v. Reichberg* – did not involve the violation of a court-ordered discovery deadline. Indeed, the defense motion, cited by the government, did not invoke Rule 16(a)(2) at

---

WL 1800409, at *1, *14 (E.D.N.Y. May 5, 2014) (denying early disclosure of government witness list in a case involving gang violence).

[8] *Monsanto Lopez* is also easily distinguishable on the ground that the court found no discovery violation in the first place. *United States v. Monsanto Lopez*, 798 F. App'x 688, 690 (2d Cir. 2020) (summary order).

9

all or even allege that the government had been dilatory in producing discovery.  Harrington Mem. at 42-45, *United States* v. *Reichberg,* No. 16-Cr-468 (GHW) (S.D.N.Y. Nov. 13, 2017), ECF No. 93.

Similarly, the cases cited by the government regarding its *Brady* obligations do not preclude the relief requested here.  In none of the government's cases did the defense seek identification of *Brady* material as a remedy for the government's violation of its discovery obligations.  *See United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 456 (S.D.N.Y. 2011) (identification of *Brady* material not necessary based on volume of production alone); *United States v. Ohle*, No. S3 08-Cr-1109(JSR), 2011 WL 651849, at *4-5 (S.D.N.Y. Feb. 7, 2011) (same); *United States v. Ohle*, 441 F. App'x 798, 804 (2d Cir. 2011) (summary order) (affirming the district court's *Brady* decision on other grounds, i.e., that the suppressed evidence was not material).[9]  Nor, for that matter, do any of those cases support the claim that specific identification of *Brady* material within a 10 million-page production is inappropriate or outside the Court's discretion.  The cases cited by the government – none of which is controlling here – merely say that the government generally has no obligation, as a constitutional matter, to provide this information.  The government ignores the extensive authority cited in our opening brief, *see United States v. Saffarinia*, 424 F. Supp. 3d 46, 73 (D.D.C. 2020); *United States v. Cutting*, No. 14-Cr-00139-SI-1, 2017 WL 132403, at *9-10 (N.D. Cal. Jan. 12, 2017); *United States v. Blankenship*, No. 5:14-Cr-00244, 2015 WL 3687864, at *6 (S.D. W.Va. June 12, 2015); *United States v. Salyer*, Cr. No. S–10–0061 LKK (GGH), 2010 WL 3036444, at *3 (E.D. Cal. Aug. 2, 2010); *United States v. Hsia*, 24 F. Supp. 2d 14, 29–30 (D.D.C. 1998), where courts

---

[9] In *United States v. Healey*, the only other case the government cites, the Court discussed *Brady* obligations only in *dicta*, as an analogy to Rule 16 obligations.  860 F. Supp. 2d 262, 269 (S.D.N.Y. 2012).

10

nonetheless required the government to provide specific identification of exculpatory information, particularly where discovery is voluminous. And it fails to articulate any prejudice it would suffer by providing this information. If there is no such information in the 10 million pages, it should say so.

Deadlines exist for a reason. When the government asked to extend the August 26 deadline, it represented that it would produce any additional discovery, allowing for the possibility of the later production of a "small volume" of additional material, by October 15. This was prior to setting a trial date, but the discovery deadline ordered by the Court served an important purpose. The defense was entitled to receive discovery by October 15 so that it could begin reviewing it as early in this case as possible, conduct that review in an efficient manner, and complete that review well in advance of trial. Ignoring the Court's deadline, the government has given itself an unfair tactical advantage by burdening the defense with another massive document review that may or may not produce important information. If it does, it will likely be too late for the defense to make effective use of the information. If it does not, the defense will have wasted enormous time and energy that should be devoted to trial preparation.

Because the government failed to comply with the deadline, or to even seek its further extension by the Court, it should be compelled to provide the limited relief requested by this motion, so as to help expedite the defense's review of material. As set forth in our opening brief, there is clear precedent for such relief in *Daugerdas*, where the court required the provision of an exhibit list and 3500 material, three months before trial, to remedy a late production by the government. *United States v. Daugerdas,* S3 09-Cr-581, ECF No. 180, at 3 (S.D.N.Y. Oct. 14, 2010).

11

Tellingly, even now, the government resists certifying to the Court that its production is complete. It says that it "does not anticipate any additional productions, save for any limited volume of new material gathered or uncovered in preparation for trial this fall," and that it "believes that it has now concluded its production of material gathered from the files of the SCO in response to the defense requests." (Gov't Opp'n at 10, 25). Given the government's prior predictions regarding discovery, the government should be definitive. It should provide an unequivocal certification to the Court that it has thoroughly searched its files, the SCO files, and the files of any other agency involved in this investigation with potentially relevant material and turned all such material over to the defense.

## CONCLUSION

For the foregoing reasons, Mr. Calk respectfully requests that the Court compel the government to (i) identify its anticipated trial exhibits, any *Brady* material, and trial witnesses; and (ii) certify to the Court, subject to further sanction, that it has completed its production.

Dated:   New York, New York
        May 4, 2020

Respectfully submitted,

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By:  /s/ Paul H. Schoeman
    Paul H. Schoeman
    Darren A. LaVerne
    1177 Avenue of the Americas
    New York, NY 10036
    Telephone: 212.715.9100

LOEB & LOEB LLP

    Jeremy Margolis
    Joseph J. Duffy
    C. Linna Chen
    321 N. Clark Street
    Chicago, IL 60654
    Telephone: 312.464.3100

*Attorneys for Defendant Stephen M. Calk*

KL3 3297707.1