UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
:
  UNITED STATES OF AMERICA,         :
:      Case No. 19 Cr. 366 (LGS)
     - against -            :
:
  STEPHEN M. CALK,           :
:
           *Defendant.*     :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


# SUPPLEMENTAL REPLY MEMORANDUM
# IN SUPPORT OF DEFENDANT STEPHEN M. CALK'S PRETRIAL MOTIONS

Defendant Stephen M. Calk respectfully submits this supplemental reply to address the extraordinary factual revelations contained in the declaration filed by the government at the Court's direction on May 7, 2020, (ECF No. 81). The government's declaration contains numerous disclosures that were either entirely omitted from, or at odds with, statements in its unsworn opposition memorandum, further demonstrating that it acted at least recklessly in connection with the search of Mr. Calk's phone. If nothing else, the government's latest submission raises far more questions than it answers and demonstrates that a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), is necessary.

## ARGUMENT

I.   The June 27, 2017 Interviews

In his declaration, Mr. Monteleoni, the lead prosecutor on this case, discloses that he had decided, prior to the interviews of TFSB executives conducted by the FBI on the morning of June 27, 2017, that the probable cause showing in the Fisher Affidavit was not "in any way contingent on whether or not the persons to be interviewed denied impropriety with the loans." (ECF No. 81 at ¶ 17). This is a remarkable assertion, given that the government had commenced its investigation just three months earlier, was only beginning to review the documents in its possession, and had yet even to speak with the principal participants in the events at issue. It shows that the government's failure to advise Magistrate Judge Rowland of the substantial exculpatory information gathered on June 27 was not a mere oversight amidst a whirlwind of investigative activity, as portrayed in the government's Opposition. (*See* Dkt. No 38 at 30-31). Rather, the government consciously chose to push forward with the search of Mr. Calk's phone and to disregard what it learned from the TFSB executives. Its decision to prejudge and discount this evidence was at least reckless, and is particularly troubling given that the witnesses interviewed that day included TFSB's president, Javier Ubarri, and chief operating officer, James

Norini – both longtime, reputable executives in the banking industry who have never been accused of wrongdoing, much less charged with a crime.[1]  As the government was well aware, they were also both members of the TFSB loan committee that approved the Manafort loans, and thus were percipient witnesses with direct knowledge of critical facts that had been misleadingly portrayed in the search warrant application.  Such deliberate withholding from a reviewing court of information contradicting the facts proffered to support a finding of probable cause is inconsistent with the government's "'heightened duty of candor in ex parte proceedings.'"  (*See e.g.*, Order at 2, *In Re Accuracy Concerns Regarding FBI Matters Submitted to the FISC*, No. Misc. 19-02 (FISC Ct. Dec. 17, 2019), https://www.fisc.uscourts.gov/sites/default/files/MIsc%20 19%2 002%20191217.pdf (criticizing the FBI for withholding information detrimental to its case from the Foreign Intelligence Surveillance Court)).

The government's declaration further reveals that, prior to execution of the search warrant, the lead prosecutor was specifically aware of exculpatory information obtained from Dennis Raico (the TFSB loan officer working on the Manafort loans) and "may have heard generally and secondhand during this time period that other witnesses did not describe irregularities." (Dkt. No 81 at ¶ 21).  Mr. Monteleoni apparently declined to follow up with the agents that day to learn more about witness statements contradicting the assertions in the Fisher Affidavit.  Given the exculpatory nature of what Mr. Monteleoni had already learned, as well as his role in drafting the affidavit (*id*. at ¶ 4), the government had an obligation to debrief its agents and bring this new information to the attention of Magistrate Judge Rowland before permitting them to execute the search warrant on Mr. Calk's phone.  It is no excuse for Mr. Monteleoni to

---

[1]  As noted in our reply memorandum (Dkt. No. 48 at 11-12), none of the interviewed TFSB executives has been charged with a crime, whether in connection with the Manafort loans, or for lying during the June 27 interviews.  Two of them, Dennis Raico and James Brennan, testified on the government's behalf at the trial of Paul Manafort in August 2018.

say that he had already decided that all of the TFSB executives would lie – surely, that was something the magistrate was entitled to determine as the neutral arbiter of probable cause.  *See United States v. Marin-Buitrago*, 734 F.2d 889, 894 (2d Cir. 1984) ("[W]hen a definite and material change has occurred in the facts underlying a magistrate's determination of probable cause, it is the magistrate, not the executing officers, who must determine whether probable cause still exists.").

Mr. Monteleoni's declaration also makes clear that he had time to follow up with the agents, whether on the afternoon or evening of June 27, the morning of June 28, or even on a date thereafter.  The government acknowledges that Mr. Calk's counsel was cooperative, affirmatively contacting government personnel and arranging for Mr. Calk to hand over the phone pursuant to the warrant the following day.  (ECF No. 81 at ¶ 19).  In fact, after the government had taken possession of the phone on the morning of June 28, there was no urgency at all to reviewing its contents.  With the phone secured, the government could take all of the time it needed to return to Judge Rowland if it genuinely believed that the new facts would not have impacted the finding of probable cause.  Significantly, in his declaration, Mr. Monteleoni omits to say when the search of the phone was actually conducted.  In all likelihood, the contents were not reviewed until days or weeks later – after the contents had been imaged and the phone itself returned to Mr. Calk.  What is clear is that at approximately 1 p.m. on June 28 (*i.e.*, just hours after the phone had been secured), Mr. Monteleoni, as well as an unidentified supervisor and another prosecutor from the Special Counsel's Office, were briefed on the TFSB interviews, and thus were well aware of the new evidence contradicting the Fisher Affidavit.[2]  (ECF No. 81

---

[2]  The declaration provides further evidence of many ways in which the Special Counsel's Office and U.S. Attorney's Office for the Southern District of New York worked hand in hand from the outset, (*see* ECF No. 81 at ¶¶ 4, 16, 20, 23), a fact that the government tried to downplay in its response to the defendant's discovery motion, (*see* ECF No. 74 at 3-4).

at ¶ 23).  Having secured the phone, the government was not entitled to search it based on a claim of supposed urgency without first apprising Magistrate Judge Rowland of this evidence.

II.      The June 16, 2017 Yohai Interview

Mr. Monteleoni's declaration also confirms that the government acted at least recklessly in omitting Jeffrey Yohai's June 16, 2017 statements to the FBI from the Fisher Affidavit, while including Yohai's alleged hearsay statement to Mitch Solow.  In its opposition memorandum, the government sought to distance itself from the June 16 interview (*see* ECF No. 38 at 8 & n.5), but Mr. Monteleoni now discloses that he and the FBI case agents knew of the interview before it took place, and in fact requested that the FBI agents in California put certain questions to Yohai during the interview.[3]  (ECF No. 81 at ¶ 7).  Given their prior knowledge of and involvement in Yohai's interview, it was incumbent on Mr. Monteleoni and the FBI to be familiar with Yohai's answers to its questions before submitting a sworn affidavit to the magistrate that relied on Yohai's purportedly damning statements to Mr. Solow.  It is also inexplicable that the two New York FBI agents involved profess no recollection of discussing the interview with the California FBI agent in advance of the warrant application (other than to say it is "possible" that they did), and have no notes.  (*Id.* at ¶ 10).

Mr. Monteleoni's declaration further reveals that the California FBI agent who interviewed Yohai completed the FBI Form 302 (which presumably included the relevant exculpatory information) by June 20, 2017.  (ECF No. 81 at ¶ 8).  This was six days before the government presented the Fisher Affidavit to Magistrate Judge Rowland.  This disclosure

---

[3]  In its Opposition, the government said only that the "investigative team drafting the affidavit was aware the interview had taken place and of some of the statements Yohai had made on other matters, but they did not attend the interview, did not have access at the time to the Form 302 written report of the statements, and were not aware at the time that Yohai had made the statements that Calk complains were omitted from the warrant affidavit."  (ECF No. 38 at 8 n.5).

contradicts the government's claim in its Opposition that it did not have "access" to the Form 302 when it submitted the Fisher Affidavit, (ECF No. 38 at 8 n.5), and is further evidence of the government's recklessness in pushing forward with the application without a thorough briefing on how Yohai had answered its questions.  The government routinely puts forward theories that defendants "consciously disregarded" the truth when targets of their investigations conspicuously fail, as the agents did here, to obtain unfavorable information.  Mr. Monteleoni's declaration provides no explanation for why the New York FBI agents did not simply ask the California FBI agent – who in fact participated in the June 27 interviews of TFSB personnel in Chicago, where the warrant was sworn out and executed (ECF No. 81 at ¶¶ 8, 16) – to e-mail, fax, mail or simply hand them a copy of the Form 302.[4]  If there is an explanation, it should be put forward and tested at a hearing.

## CONCLUSION

Clearly, the government's Opposition did not tell the full story of why the government failed to disclose material, exculpatory information to Judge Rowland before searching Mr. Calk's phone.[5]  As a result of the Court's April 23, 2020 order, we now have a

---

[4]  Mr. Monteleoni says in his declaration that the Form 302 was not "made electronically available to other FBI field offices [outside of the Los Angeles office]" until August 3, 2017. (ECF No. 81 at ¶ 8).  He appears to be referring to the uploading of the text of the report to the FBI's electronic database.  It is not credible to suggest that the report of the Yohai interview – of which Mr. Monteleoni and the New York agents were specifically aware and about which they had solicited information – could not have been obtained at an earlier date had it been requested.

[5]  Mr. Monteleoni's declaration also includes a paragraph purporting to summarize a July 19, 2017 letter to TFSB from the OCC.  It is unclear why the government has chosen to do so.  First, as pointed out in defendant's reply memorandum, the OCC letter was issued long after the search of Mr. Calk's phone and had nothing to do with the magistrate's probable cause determination. (ECF No. 48 at 5).  Second, Mr. Monteleoni has no personal knowledge of the OCC's determination and merely knows what he has read in the letter, which he could have included in its entirety for the Court to review and assess.  In any event, the government continues to leave out relevant information regarding the OCC's determination, which is addressed at pages 5-6 of our reply memorandum.

declaration from the lead prosecutor that contradicts and undermines the vague assertions in the Opposition, and raises serious questions about the government's decision to consciously disregard exculpatory information obtained from witnesses and proceed with the search. We respectfully submit that the defense has made a "substantial preliminary showing" of at least recklessness, and is entitled to a hearing. *See United States v. Harding*, 273 F. Supp. 2d 411, 425-26 (S.D.N.Y. 2003) (internal quotation marks omitted). Moreover, given Mr. Monteleoni's reliance on and specific reference to various notes, calendar entries, drafts, and e-mails in his declaration (*see* ECF No. 81 at ¶¶ 9, 13, 20, 21, 22 & n.2), we ask that the Court order discovery of those materials and any related documents prior to the hearing.

Dated:   New York, New York
         May 11, 2020

Respectfully submitted,

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By:  /s/ Paul H. Schoeman
     Paul H. Schoeman
     Darren A. LaVerne
     1177 Avenue of the Americas
     New York, NY 10036
     Telephone: 212.715.9100

LOEB & LOEB LLP

     Jeremy Margolis
     Joseph J. Duffy
     C. Linna Chen
     321 N. Clark Street
     Chicago, IL 60654
     Telephone: 312.464.3100

*Attorneys for Defendant Stephen M. Calk*