

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 12, 2020

**BY ECF**

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *United States* v. *Stephen M. Calk*, 19 Cr. 366 (LGS)

Dear Judge Schofield:

      The Government respectfully submits this letter in response to Calk's sur-reply in support of his request for a *Franks* hearing.[1] Calk's sur-reply provides no support for the baseless accusations of bad faith he levels at counsel for the Government.

      As an initial matter, Calk's sur-reply virtually ignores the governing standard: that in order to justify a *Franks* hearing, the omissions of which he complains must be "*necessary* to the judge's probable cause finding." *United States* v. *Salameh*, 152 F.3d 88, 113 (2d. Cir. 1998) (emphasis added). The alleged omissions here do not come close to meeting that standard. The Government relied on an extensive documentary record that proved—and still proves—that Calk abused his power as chief executive of a bank to solicit personal benefits, namely, assistance in obtaining high-level positions in the Trump presidential campaign and administration, in exchange for approving $16 million in loans to Paul Manafort. The alleged omissions are of, at most, marginal relevance to the probable-cause analysis.

      Calk instead focuses on arguing that Government counsel acted "recklessly." But the facts show that the Government acted cautiously and in good faith, even going so far as to not include a witness statement the Government regarded as plainly *incriminating* because the Government felt it was not necessary and was concerned with the witness's veracity.

      With respect to the June 16, 2017 Yohai interview, Calk ignores the fact that Yohai's statements about the *quid pro quo*—at least as reasonably understood by the Government—were significantly *inculpatory* and the Government decided not to rely on them in an abundance of

---

[1] Citations to "Sur-Reply" refer to Calk's sur-reply memorandum in support of his pretrial motions, (Dkt. 83); citations to "Opp." refer to the Government's memorandum in opposition (Dkt. 38); citations to "Monteleoni Decl." refer to the Declaration of Paul M. Monteleoni in opposition (Dkt. 81); and citations to "Arg. Tr." refer to the April 23, 2020 oral argument transcript (Dkt. 77).

caution since it was not necessary and the Government doubted Yohai's veracity. (*See* Opp. at 20-21 (noting inculpatory aspects of statements); Monteleoni Decl.¶ 9; *id.* at 5 n.2 (handwritten notes reflect the phrase "PM told Yohai he was getting these loans by promising Trump admin jobs")).[2] Moreover, Yohai's personal views regarding the *quid pro quo* were viewed by the Government as relatively unimportant to the probable cause analysis. (*See* Opp. 21). Rather, the Government's contacts with the Yohai case agent were focused on the information on Yohai's prior fraud (*see* Monteleoni Decl. ¶¶ 9(a), 9(b), 10), and the only information drawn from Yohai's interview statements that the Government entered into any draft affidavit also related to the prior fraud (*id.* at 5 n.2). Calk's attempt to paint these statements as the *sine qua non* of the warrant has no basis in evidence. Accordingly, given the nature of the statements and their lack of centrality to the warrant, the Government had no reason at the time to scour the files of a different FBI field office to search for further context regarding those statements.

Even assuming *arguendo* that any of these omissions were "necessary to the judge's probable cause finding," *Salameh*, 152 F.3d at 113—though they were not—the record establishes that there was no intent to mislead whatsoever. As an initial matter, Calk utterly fails to grapple with the fact that the Government included in the affidavit various facts showing Calk's pushback on requests by Manafort (*see* Opp. 26-27)—all of which supported the very "exculpatory" inferences Calk now urges. He does not explain how it is even possible that the Government could have attempted to mislead the magistrate judge or acted recklessly when it affirmatively decided to include such information. *See, e.g.*, *United States* v. *Vilar*, No. 05 Cr. 621 (KMK), 2007 WL 1075041, at *30 (S.D.N.Y. Apr. 4, 2007) (refusing to infer intent or materiality where affiant included allegations "entirely consistent with" complained-of omissions).

Indeed, it is significant that the Government did *not* include in the affidavit even the statement the Government understood to be plainly incriminating, *i.e.*, the statement summarized in the Government counsel's handwritten notes as "PM told Yohai he was getting these loans by promising Trump admin jobs." (Monteleoni Decl. at 5 n.2). This choice, as well, is utterly inconsistent with intent to mislead or recklessness.[3] It is, instead, evidence that the Government acted cautiously and in good faith.

With respect to the June 27, 2017 interviews, the fact that Federal Savings Bank employees—subordinates of Calk—denied wrongdoing was neither remarkable nor surprising, and did not remotely undermine the plain significance of the documents giving rise to a finding of probable cause. Perhaps most critically, the statements mainly related to the issue of whether the Manafort loans were "good" or "well collateralized," but ultimately, while the quality of the loans may bear on intent or motive, it is not at all determinative of the ultimate question—a bank CEO cannot solicit a personal benefit in exchange for approving loans *regardless* of whether the loans

---

[2] Even were the Court to conclude the Government was mistaken in this understanding of the statements, the evidence and handwritten notes reflecting the Government's belief are fatal to any claim of wrongful intent.

[3] Indeed, Calk's counsel acknowledged that the omission of facially incriminating evidence would tend to cut against any substantial preliminary showing of intent. *See* Arg. Tr. 6 (Calk counsel claiming courts look to "whether all of the omissions sort of go in the same direction.").

would be approved in any event. (*See, e.g., United States* v. *Alfisi*, 308 F.3d 144, 151 (2d Cir. 2002); *see also* Opp. 16-17, 28-29). In declining to revise the warrant affidavit, the Government was of course mindful of the low threshold nature of probable cause, which "does not require the fine resolution of conflicting evidence" that higher standards of proof entail. *Gerstein* v. *Pugh*, 420 U.S. 103, 121 (1975). Calk argues the Government should have taken additional steps to "follow up" and "learn more about" this evidence after obtaining and before executing the warrant (Sur-Reply 2), but this is exactly the sort of "endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit" that is insufficient to warrant a *Franks* hearing. *United States* v. *Mandell*, 710 F. Supp. 2d 368, 376 (S.D.N.Y. 2010) (internal quotation marks omitted) (denying *Franks* hearing).

And, again, even assuming *arguendo* that these employee statements were material—though they were not—Calk cannot meet the second required showing, *i.e.*, that the Government acted intentionally or recklessly. Calk does not appear to dispute that, even before the Government interviewed these employees, it was concerned that Calk would place undue pressure on them. That is why the Government obtained a pen register order for Calk's phone. (*See* Monteleoni Decl. ¶¶ 17-18). It was thus entirely reasonable for the Government not to "entertain[] serious doubts as to the truth" of the affidavit's allegations, *United States* v. *Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (internal quotation marks omitted), based on the witnesses' various assertions and denials of improprieties—none of which called into question the Government's plain reading of the unambiguous documents.

Notably, the Government's skepticism as to these witness statements was completely justified. For example, Raico and Brennan, testifying at Manafort's trial under grants of immunity, gave a far fuller account of the transactions that fatally undercuts the allegedly "exculpatory" portions of their June 27, 2017 witness statements. (*See* Opp. 19, 30 & nn.12 & 19; *see also* Tr. 8/10/18, at 2014-15, 2030-31, 2033-36, 2054-55, 2066-68, 2072, 2097-98, *United States* v. *Manafort*, No. 18 Cr. 83 (TSE) (E.D. Va.) (ECF No. 243) (Raico testimony describing irregularities in loan process)).[4]

---

[4] Additionally Calk's suggestion that the Government could have "secured" his phone while returning it to him (Sur-Reply 3) is incorrect; since extracting its contents is a Fourth Amendment search, securing a phone pending obtaining a warrant entails keeping custody of the phone, which Calk's counsel opposed at the time (*see* Monteleoni Decl. ¶ 20). *See Riley* v. *California*, 573 U.S. 373, 388 (2014).

Page 4

At base, for all the unfounded aspersions it casts on counsel for the Government, Calk's sur-reply does not approach a showing either of materiality or of wrongful intent. Calk's motion should be denied without a hearing.

        Respectfully submitted,

        AUDREY STRAUSS
        Attorney for the United States
        Acting Under Authority Conferred by
        28 U.S.C. § 515

by: /s/ Paul M. Monteleoni
     Paul M. Monteleoni
     Douglas S. Zolkind
     Benet J. Kearney
     Assistant United States Attorneys
     (212) 637-2219/2418/2260

cc: Counsel of Record (via ECF)