

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

___

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 14, 2020

**BY ECF**

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

     Re:    *United States v. Stephen M. Calk*, 19 Cr. 366 (LGS)

Dear Judge Schofield:

     The Government respectfully submits this letter to request a modest adjournment of the December 2, 2020 trial date in light of the extraordinary circumstances posed by the COVID-19 pandemic, particularly given the number of critical witnesses who reside in states that are subject to mandatory quarantine by New York State and this District ("Restricted States").[1]  As described in the letter of Robert Andalman, Esq. (attached hereto as Exhibit A) – counsel to several Illinois-based employees of The Federal Savings Bank ("TFSB") who are expected to be key witnesses at trial – given the unique circumstances facing these witnesses, it would be immensely burdensome for them to comply with the protocol imposed by this District, including forced quarantining and medical testing, especially during the late November-December holiday season when the witnesses have a multitude of childcare and other family commitments.

     At the last conference, the Court deferred deciding whether to adjourn the trial in light of the significant logistical challenges posed by Illinois's inclusion in the list of Restricted States, determining that the parties and Court would have a better sense by mid-October whether conditions in Illinois were improving.  As set forth below, conditions in Illinois have steadily worsened since the last conference.  The Government respectfully submits that a trial on the current schedule would be impossible unless several key witnesses were allowed to testify via video—a proposal to which the defense objects.  However, a short adjournment, to at least late January or February 2021, may be sufficient to allow the trial to proceed at that point and would not remotely prejudice the defendant, who remains free on bail.

___

[1]   Restricted States are states with significant rates of transmission of COVID-19, as described in New York State Executive Order 2015, *see* https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO205.pdf.  The current list of restricted states is available here: https://coronavirus.health.ny.gov/covid-19-travel-advisory.

## Background

At a conference on July 2, 2020, the Court stated that it would "set a December trial date, but with the understanding that we all need to talk to each other because this is not a date that is entirely within our control." (Tr., Jul. 2, 2020, at 9.)  The Court tentatively set trial for December 2020, noting that "everyone should just take that with a grain of salt and we will have an understanding that we will convene again when we know more."  (*Id.* at 10.)

On or about July 28, 2020, New York State added Illinois to the mandatory quarantine list due to the significant degree of community-wide spread of COVID-19 within Illinois.[2]

On September 11, 2020, the Government wrote to the Court to advise that unless Illinois were removed from the list of Restricted States before the trial date, its inclusion on that list would be likely to pose substantial logistical challenges to witnesses and their counsel coming from Illinois (as well as certain other Restricted States), including at least five – and potentially as many as 12 – fact witnesses who reside in Illinois and who are expected to be key witnesses in the Government's case-in-chief, along with (as the defense has stated) "most if not all of the likely defense witnesses" who "are in the Chicago-area."  (Dkt. 101.)

On September 14, 2020, the defendant wrote to the Court in response to the Government's September 11th letter.  (Dkt. 102.)  The defendant did not express any disagreement with the concerns raised by the Government concerning the feasibility of a December 2020 trial date.  Rather, he stated that "[g]iven the scheduling process that has already occurred and the inherent uncertainty as to whether the pandemic conditions will improve before December, Mr. Calk does not wish to abandon the December 2 trial date at this time."  (*Id.*)

On September 17, 2020, the parties appeared for a telephonic conference with the Court. The Court stated:

> We still live in times of real uncertainty, and I checked this
> morning the data for COVID-19 cases in Illinois and how it's
> trending, and although the numbers per hundred thousand are
> still way above the threshold for the New York quarantine, it
> is definitely trending down, and as we all know, we're still
> quite some time from this December 2nd trial date . . . . I
> would propose . . . that we keep the trial date for now; we see
> how things develop.   Perhaps the quarantine for Illinois
> residents won't be in place by the time of our trial.

(Tr., Sept. 17, 2020, at 6.)  The Court asked, "What should we set as a control date for another conference . . . to say that's the last possible date that we can decide and still give everyone a fair chance to do their final preparations for trial?"  (*Id.*)  Defense counsel replied, "I would think

---

[2]    *See* "Illinois Added to New York's List of States Requiring Quarantine," NBC News Chicago (July 28, 2020), *available at* https://www.nbcchicago.com/news/local/illinois-added-to-new-yorks-list-of-states-requiring-quarantine/2312628/.

that it would make sense to reconvene sometime in mid-October to see whether there's greater clarity."  (*Id.* at 7.)  The Court set the next conference for October 15, 2020.  (*Id.* at 11.)

### Update on COVID-19 in Illinois

Under New York State guidelines, a state has "significant community spread" of COVID-19 and therefore qualifies as a Restricted State when it has "a positive test rate higher than 10 per 100,000 residents over a seven-day rolling average."[3]

On July 28, 2020, when Illinois was added to the quarantine list, there was a 7-day average of 1,436 new cases per day,[4] equivalent to roughly **11.33** per 100,000 residents.[5]  On September 17, 2020, when the parties appeared for the last conference, there was a 7-day average of 1,828 new cases per day in Illinois,[6] equivalent to roughly **14.42** per 100,000 residents.  As of today, the 7-day average is 2,881,[7] equivalent to roughly **22.73** per 100,000 residents.  There has thus been a clear upward trend in Illinois's positive test rate since it was designated a Restricted State in July, as depicted in the following graph:[8]

---

[3]    *See* "Interim Guidance for Quarantine Restrictions on Travelers Arriving in New York State Following Out of State Travel," *available at* https://coronavirus.health.ny.gov/system/files/documents/2020/06/interimguidance_traveladvisory.pdf.  A state can also qualify if it has a testing positivity rate of higher than a 10% over a seven-day rolling average.  *Id.*

[4]    *See* https://www.nytimes.com/interactive/2020/us/illinois-coronavirus-cases.html#cases.

[5]    This calculation is based on a total population of 12,671,821.  *See* U.S. Census, Illinois QuickFacts, *available at* https://www.census.gov/quickfacts/IL.

[6]    *See supra*, note 4.

[7]    *Id.*

[8]    *See* "Where Illinois Stands: Daily Coronavirus Numbers, Charts and Stats," NBC Chicago, *available at* https://www.nbcchicago.com/news/local/coronavirus-tracker-daily-updates-on-cases-deaths-in-illinois-indiana/2270783/.



Thus, the positive test rate in Illinois is trending in a very concerning direction, providing no reason to expect that Illinois will be removed from the quarantine list in the next 30 days,[9] which is when witnesses would need to begin quarantining assuming a December 2 trial date.

**Discussion**

At the September 17th conference, the Court determined that it was premature to adjourn the trial date, deferring a decision to October 15th and noting that the intervening weeks would allow the parties and Court to "see how things develop" and evaluate the likelihood that "the quarantine for Illinois residents won't be in place by the time of our trial." (Tr., Sept. 17, 2020, at 6.) Defense counsel agreed, noting that by mid-October, we may have "greater clarity" on the pandemic. (*Id.* at 11.) As set forth above, we do now have greater clarity: The COVID-19 conditions continue to deteriorate throughout the Midwest, including in Illinois where the positive test rate has steadily climbed since late July, when Illinois was added to the New York State quarantine list. Although the course of the pandemic is inherently difficult to predict, it seems clear that in all likelihood, Illinois will remain a Restricted State in early December.

---

[9]    In fact, recent reporting indicates that the infection rate in Illinois may be even higher than has been publicly disclosed to date. *See* "Confidential coronavirus outbreak data shows thousands of undisclosed incidents across Illinois," USA Today (Oct. 12, 2020), *available at* https://www.usatoday.com/story/news/investigations/2020/10/12/confidential-coronavirus-data-shows-undisclosed-outbreaks-illinois/5965846002/.

As set forth in Mr. Andalman's letter, the requirements imposed by this District's protocol would be severely disruptive to his clients and virtually impossible for at least certain of them to comply with given their childcare obligations, in-person work obligations, and health conditions.[10]  *See* Ex. A.   Under the most recent version of the protocol, such individuals will not be permitted to enter the courthouse unless they (1) quarantine at home for 14 days immediately prior to traveling to New York, (2) travel to New York City at least two days before they need to enter the courthouse, (3) travel in compliance with the various requirements imposed on "essential workers," including monitoring their temperature and avoiding, to the extent possible, contact with strangers and large congregate settings, (4) upon arriving in New York City, enter a medical facility and submit to an authorized COVID-19 test, and (5) quarantine until obtaining a negative test result.

As Mr. Andalman explains, given the unique circumstances facing his clients, these requirements are "unreasonably burdensome and risky for each of the witnesses." Ex. A at 1. One witness is 62 years old, suffers from asthma and high blood pressure, and has important job functions requiring in-person site visitations, which he cannot do while quarantining. *Id.* Another witness is obese and pre-diabetic, suffers from high blood pressure, and also has important job functions requiring that he be physically present in the office. *Id.* at 2.  A third witness has four school-age children, for whom he performs critical childcare services that he cannot do under quarantine, and also needs to assist his wife, who suffers from multiple sclerosis. *Id.*  A fourth witness is the President of TFSB, "is required to be in the office leading the business," and it would place "an extraordinary burden on the Bank as a whole were [he] required to quarantine, whether in New York or Chicago." *Id.*  Mr. Andalman himself would also be severely burdened by the quarantine requirement due to his responsibilities to his 5-lawyer firm, and his childcare and eldercare obligations. *Id.*  Further, "[l]ayered onto the above hardships is the fact that, to comply with the SDNY Protocol, quarantine would have to begin no later than November 13, 2020 and would extend over the Thanksgiving Holiday, interfering with plans and family obligations of each of the witnesses and [Mr. Andalman]." *Id.*

The Government has also spoken with counsel to six current or former employees of the Office of the Comptroller of the Currency ("OCC"), at least some of whom would be critical trial witnesses, and five of whom live in Illinois and one of whom lives in Virginia (also a Restricted State).  OCC counsel has advised the Government that quarantining for 14 days – whether in New York or at their home – would adversely impact OCC operations, as at least one key witnesses is the second most senior official at the OCC and is required to attend regular in-person meetings.  Another key OCC witness has four children between the ages of 2 and 16 and would be unable to meet her childcare responsibilities if she had to quarantine.  Multiple OCC witnesses have travel plans over Thanksgiving, some of which are already booked and paid for, which would need to be cancelled in the event of a 14-day quarantine.  Certain witnesses have family members planning to visit during the holiday season, which would be prohibited if they had to quarantine.  As the Government has previously noted, OCC witnesses are employed by the Treasury Department and, like TFSB employees, are not part of the prosecution team in this

---

[10]   It bears noting that the protocol applies not only to numerous witnesses likely to be called by the Government, but also likely defense witnesses, as well as the defendant himself and certain of his counsel, who reside in Illinois.

case and have no agreement with the Government requiring them to cooperate in the trial of this case.

Furthermore, as the Government noted in its September 11 letter, the mandatory quarantine rule could also cause significant disruptions and delays during trial. For example, if the defense realizes mid-trial that they wish to call an out-of-state witness who has not yet quarantined, the trial might need to be adjourned while the witness quarantines. Alternatively, the witness could testify by video, although, as noted above, to date, the defense has made clear that they do not intend to consent to video testimony, at least for key witnesses. (*See* Tr., Sept. 17, 2020, at 5.) Similarly, it would be essentially impossible for the Government to identify any potential rebuttal witnesses weeks before the defendant begins putting on his case. Again, since the defense has made clear that they will not consent *ex ante* to such a witness testifying via video, the risk of a mid-trial adjournment is significant.

It is also critical to note that many of these witnesses will be testifying pursuant to subpoena and some pursuant to Court-ordered immunity. It is, at best, an untested legal question whether either party or the Court has the power to compel witnesses who reside in Restricted States to quarantine in their homes for 14 days, or to travel to a medical testing facility, or to submit to a COVID-19 test, or to follow any other part of this District's protocol prior to appearing in court on the date indicated on their subpoenas. Indeed, Mr. Andalman has already asserted his view that his clients' compliance with this District's witness protocols cannot be compelled. *See* Ex. A at 2.

Thus, to the extent that witnesses refuse to comply with the District's protocol, the subpoenaing party would likely be forced to resort to complex collateral proceedings to attempt to enforce compliance (involving significant litigation risk at the trial and appellate level) and might, as a practical matter, have no option but to forgo the witness's testimony altogether. Needless to say, such a result would have a severely damaging impact on the trial and would undermine the interests of justice.[11]

The Government has conferred with the defense and understands that the defendant continues to wish to proceed to trial as soon as possible. The defense also continues to object to key witnesses in Restricted States testifying via video. But while the defendant's twin demands – for a December trial and for live in-person testimony – are understandable, they cannot both be

---

[11] Accordingly, while this District's protocol for Restricted State witnesses undoubtedly facilitates the ability of certain trials to proceed – for instance, trials with relatively few witnesses from Restricted States, or trials with witnesses who feel a particular obligation to appear (*e.g.*, because they have agreements with the Government or are victims of the crime on trial) – it cannot make an in-person trial feasible in every case.

accommodated at this time given the extraordinary circumstances posed by the pandemic.  A modest adjournment of the trial will not prejudice the defendant in any way.

**Conclusion**

For the foregoing reasons, the Government respectfully submits that the trial date should be adjourned to at least late January or February 2021.  Such an adjournment would be sufficiently brief as to more than satisfy the defendant's interest in proceeding to trial as soon as possible, but would also provide additional time during which the pandemic conditions might improve to the point that Illinois is removed from the quarantine list.  An adjournment would also avoid the late November-December holiday and school-break season, which is a particularly burdensome time of year to require witnesses to quarantine for extended periods of time.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

by: /s/
Paul M. Monteleoni
Douglas S. Zolkind
Benet J. Kearney
Assistant United States Attorneys
(212) 637-2219/2418/2260

cc: Counsel of Record (via ECF)