

October 13, 2020

**BY EMAIL (PAUL.MONTELEONI@USDOJ.GOV)**

Paul Monteleoni
Assistant U.S. Attorney
United States Attorney's Office
Southern District of New York
New York, New York

      Re:    Chicago-based Witnesses in *United States v. Calk*

Mr. Monteleoni:

      I am writing concerning my clients ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ each of whom live and work in Chicago and each of whom have been subpoenaed to testify in New York in the *United States v. Calk* matter, currently set for trial on December 2, 2020. I ask that the government seek a continuance of the trial or otherwise accommodate these witnesses so that travel to New York is not required of them. Otherwise, in light of their personal circumstances, the exigencies of the COVID-19 pandemic, applicable New York State law, as well as the S.D.N.Y. Protocol for Witnesses Traveling from Restricted States in Criminal Cases (the "SDNY Protocol"), my clients each strongly object their subpoenas, as further explained below.

      Each of my above client-witnesses works and lives in the Chicago, Illinois metro area. As such, Governor Cuomo's Executive Order 205 would require them to quarantine in New York for 14 days from the date of any travel from Illinois to New York. I understand that the SDNY Protocol treats witnesses in criminal cases as "essential workers" pursuant to Executive Order 205. Even assuming that the witnesses fit this definition, the SDNY Protocol requires them to quarantine for 14 days in their home states prior to travel, then expose themselves to airports, airplanes and public transportation, before landing in New York where they are to go to a public COVID testing center and then quarantine further until those test results are received. Either of these options – quarantine pursuant to Executive Order 2015 or pursuant to the SDNY Protocol – is unreasonably burdensome and risky for each of the witnesses.

      ▮▮▮▮▮▮▮▮▮▮ is 62-years old, placing him at higher risk of COVID complications should he become infected. He suffers from asthma and high blood pressure, which are additional risk factors. ▮▮▮▮▮▮▮ lives with his wife and son. He is a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ has been primarily working remotely, but his responsibilities do require site visitations. He would not be able to do that job quarantined, whether in Illinois or New York.





        █████ is younger than █████████, but also suffers from high blood pressure and he is obese and pre-diabetic. His job at the Federal Savings Bank requires ████████████████ ████████████████████████ – and so he is required to physically be in the office.

        █████████ lives with his wife and four children, all of whom are in school in-person every day. Both he and his wife work. He is currently working three days in the office and two days at home each week. On days when he is home, he is required to pick up and drop off the children at school and extracurriculars. █████████ is in good health, but his wife suffers from multiple sclerosis and is at high risk. Her condition further mandates his assistance and availability. Currently, because of low interest rates, █████████ work obligations are overwhelming, requiring significant work at night and on weekends. The Federal Savings Bank is hiring additional staff to assist with this work and █████████ is required to be available to train those individuals.

        █████ is the President of the Federal Savings Bank at a time when the bank is hiring new employees to address demand (as noted) and he is required to be in the office leading the business. It would be an extraordinary burden on the Bank as a whole were █████████ required to quarantine, whether in New York or Chicago. He lives with his wife and daughter. His daughter is in high school and attending classes in person part time.

        In addition to these witness-specific issues, my clients would expect me to accompany them to New York and to negotiate with the Government the terms of their testimony, including the issue of immunity that we have yet to discuss. I am the lead partner in a 5-lawyer firm and also share parenting responsibilities of my two high school boys with my wife. She works full time teaching at a school that requires her in-person presence from 8am to 4pm every day. I also have care-taking responsibilities for my 89-year old mother. Quarantine would be a significant hardship on me and my firm, too.

        Layered onto the above hardships is the fact that, to comply with the SDNY Protocol, quarantine would have to begin no later than November 13, 2020 and would extend over the Thanksgiving Holiday, interfering with plans and family obligations of each of the witnesses and myself. The other impact of the SDNY Protocol is that the trial subpoenas do not just require presence of the witnesses at the time and place of trial, but further demand self-quarantine at home, presence at a New York City testing site, and quarantine at a different location in New York pending results of that test, all well before December 2. These requirements go well beyond the established limits of what Fed. R. Crim. P. 17 empowers the subpoena power to mandate.

        I would hope that you are successful moving the trial date to a time when these additional impositions are not required – or else that you are otherwise able to accommodate the witnesses through video testimony or the like. However, at this juncture, on the witnesses' behalf, we object to the current subpoenas.

        Thank you for your attention to this matter.



Paul Monteleoni
Assistant U.S. Attorney
October 13, 2020
Page 2

Sincerely,

Robert Andalman



Paul Monteleoni
Assistant U.S. Attorney
October 13, 2020
Page 2