UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                           :

    UNITED STATES OF AMERICA,         :

                                        :      Case No. 19 Cr. 366 (LGS)

         - against -            :

                                        :

    STEPHEN M. CALK,               :

                                        :

              *Defendant*.         :

                                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT STEPHEN M. CALK'S RENEWED MOTION TO TRANSFER VENUE

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ..........................................................................................................1

    I.      Defendant's Original Motion to Transfer Venue.....................................................1

    II.     Trial is Set for September 3, 2020 ........................................................................2

    III.    The Government's Requests and Adjournment to 2021 .........................................3

    IV.    The October 15, 2020 Conference ........................................................................5

    V.     Current Conditions................................................................................................5

    VI.    Location of Witnesses...........................................................................................7

ARGUMENT .................................................................................................................7

CONCLUSION..............................................................................................................10

KL3 3318229.1

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Platt v. Minn. Mining & Mfg. Co.*,
  376 U.S. 240 (1964)............................................................................................7, 8

*United States v. Alter*,
  81 F.R.D. 524 (S.D.N.Y. 1979) ...................................................................9

*United States v. Campestrini*,
  993 F. Supp. 2d 69 (D.P.R. 2014)...............................................................9

*United States v. Layne*,
  No. 05-cr-87 (HB), 2005 WL 1009765 (S.D.N.Y. May 2, 2005)...........................9

*United States v. Russell*,
  582 F. Supp. 660 (S.D.N.Y. 1984) ....................................................8 n.3

*United States v. Spy Factory, Inc.*,
  951 F. Supp. 450 (S.D.N.Y. 1997) ...................................................8

**Rules**

Fed. R. Crim. P. 21(b)............................................................................ *passim*

**Regulations**

N.Y. Exec. Order No. 205.2..................................................................6

Emergency Travel Order, City of Chicago (Nov. 10, 2020) ........................................6

## PRELIMINARY STATEMENT

Defendant Stephen M. Calk respectfully submits this memorandum of law in support of his renewed motion to transfer this case to the Northern District of Illinois pursuant to Federal Rule of Criminal Procedure 21(b).

We file this renewed motion for transfer in light of the government's assertion that it is highly unlikely that critical Chicago-based witnesses in its case against Mr. Calk can be compelled to appear in person in New York in the foreseeable future due to the COVID-19 pandemic.  The government has said that when the February 16, 2021 trial date arrives certain of those witnesses will be unwilling to comply with travel restrictions that are likely to be in effect and that, even without quarantine rules, certain witnesses will refuse to travel based on pre-existing health concerns.  Under these circumstances, Mr. Calk would rather take his place in line for a trial in Chicago than wait for the day that he can confront his accusers in New York.

Accordingly, the defendant respectfully requests that the Court exercise its discretion and transfer this case to the Northern District of Illinois.

## BACKGROUND

### I.     Defendant's Original Motion to Transfer Venue

In a motion filed on November 8, 2019, Mr. Calk sought to transfer this case to the Northern District of Illinois.  (*See* Dkt. Nos. 33, 34).  Mr. Calk argued that this was the rare case, "in which the sole defendant, the sole victim, the majority of trial witnesses and the mass of the alleged offense conduct share one location," the Northern District of Illinois.  (Dkt. No. 34 at 1).  On December 12, 2019, the government filed its opposition, arguing, *inter alia*, that with respect to the location of witnesses who are likely to be called at trial, the factor did not weigh in favor of transfer as the defendant did "not show, as required, that any Government or defense

witness would be unable to attend trial in this District. . . ."  (Dkt. No. 38 at 45; *see also id*. at 46).

On February 12, 2020, the Court denied defendant's prior motion to transfer venue.  With respect to witness location, the Court held that it was the "Defendant's burden is to show specific examples of witnesses' testimony and their inability to testify because of the location of the trial."  (Dkt. No. 55 at 7 (internal quotations omitted)).  The Court then observed that "Defendant does not allege that any of the prospective witnesses will be unable to testify in this District or even that they would be significantly inconvenienced by such testimony . . . [and therefore] his factor does not weigh in favor of transfer."  (*Id*. at 7).

One month later, the COVID-19 pandemic caused New York City to shut down.

## II.     Trial is Set for September 3, 2020

The first status conference in this case occurred on April 23, 2020.  At that time, the Court set a trial date of September 3, 2020, which was consistent with the defendant's wish to move expeditiously to trial.   On June 25, 2020, the government filed a letter requesting an adjournment of the September 3 trial date.  In the letter, the government indicated that "counsel for five current or former employees of the [FSB]—*including some of the most important witnesses in the case*," had communicated their concerns about flying to New York City, taking public transportation, and staying at a hotel.  (Dkt. No. 89) (emphasis added).  The witnesses to whom the government was specifically referring all reside in the Chicago area.  (*Id*. at 2).  At a subsequent status conference on July 2, 2020, the government cited New York Governor Cuomo's list of states whose residents must quarantine upon arrival in New York, and noted that while "Illinois, where a number of the *critical witnesses* reside," was not yet one of those states, it might soon be added to the list, as COVID-19 cases were on the rise.  (July 2, 2020 Tr. 6:16-

KL3 3318229.1

7:13) (emphasis added).  At the conclusion of the conference, the Court tentatively scheduled the trial for December 1.

### III.    The Government's Requests and Adjournment to 2021

On September 4, 2020, the Court issued an order confirming the trial date for December 2, 2020.  (Dkt. No. 99).  A week later, on September 11, 2020, the government again wrote to the Court to outline the difficulties that the December trial date would pose for its Chicago-based witnesses.  (Dkt. No. 101).  The government wrote that it "presently expects to call *at least five – and potentially as many as 12 –* fact witnesses *who reside in Illinois*, including a number of employees of The Federal Savings Bank."  (*Id.* (emphasis added))  The government then cited to Illinois' addition to the list of states for which travelers are required to quarantine upon arriving in New York.  "Given that a significant number of critical witnesses," the government wrote, "as well as the defendant and certain of his counsel, are located in Illinois and other states subject to the quarantine rule," the trial likely could not go forward as scheduled. (*Id.*).

The Court convened a status conference on September 17, 2020 to address trial scheduling.  At that time, the government emphasized that New York's quarantine rules were not the only impediment to a trial in December.  As the government explained:

> [O]ne *critical witness, who lives in Illinois, has a preexisting health condition*, and he expressed that he'd be very nervous about getting on an airplane and traveling here and testifying in a live courtroom, regardless of whether Illinois is on the quarantine list.  And there may be other witnesses that have similar health concerns. . . . And so we understand the idea of not adjourning the trial yet because Illinois might come off the restricted list, *but we don't think that that will really solve the logistical difficulties with a December trial date*, just given the *number of out-of-state witnesses* and given that, from everything we're reading, it certainly seems inevitable that the pandemic will still be with us in a very serious way in December. . . ."

(Sept. 17, 2020 Tr. 8:12-9:23) (emphasis added).

Consistent with the defendant's position, the Court initially declined to postpone the trial at that time and instead scheduled a follow-up conference for October 15, 2020. On October 14, 2020, the government again wrote to the Court, this time to explicitly request an adjournment of the trial to 2021. (Dkt. No. 112). The government attached to its request a letter from Robert Andalman, Esq., counsel to several of the Chicago-based employees of The Federal Savings Bank whom the government "expected to be key witnesses at trial." (Dkt. No. 112; *see also* Dkt. No. 114.1). As detailed in Mr. Andalman's letter, the objections raised by these witnesses are not limited to the hardships of a 14-day quarantine. For example, a key witness to the underwriting of the loan is "62-years old, placing him at higher risk of COVID complications should he become infected. He suffers from asthma and high blood pressure, which are additional risk factors. . . ." (Dkt. No. 114-1 at 1). Another witness, similarly critical to the question of the loan underwriting "also suffers from high blood pressure and he is obese and pre-diabetic. . . ." (Dkt. No. 114-1 at 2). A third witness, again, relevant to the underwriting, has a wife who "suffers from multiple sclerosis and is at high risk. Her condition further mandates his assistance and availability." (Dkt. No. 114-1 at 2). Mr. Andalman himself has "care-taking responsibilities for [his] 89-year old mother." (Dkt. No. 114-1 at 2).

The government expressed doubt in its October 14 letter that the Chicago-based witnesses could be compelled to appear in person at a trial in New York. "It is," the government wrote, "at best, an untested legal question whether either party or the Court has the power to compel witnesses who reside in Restricted States to . . .[follow this] District's protocol prior to appearing in court on the date indicated on their subpoenas." The government also observed that Mr. Andalman "has already asserted his view that his clients' compliance with this District's witness protocols cannot be compelled. . . . Thus, to the extent that witnesses refuse to comply

4

with the District's protocol, the subpoenaing party would likely be forced to resort to complex collateral proceedings . . . and might, as a practical matter, have no option but to forgo the witness's testimony altogether."  (Dkt. No. 112 at 6).

## IV.     The October 15, 2020 Conference

When the parties convened for a status conference, case counts in Illinois were on the rise and it remained on New York's restricted list.  The government again highlighted that the Illinois bank employee witnesses were "among the most important witnesses in the case."  The government also explained that although it "completely understands and appreciates why the defendant wants a December trial and why he wants in-person testimony as to key witnesses. . . . [B]oth of those requests simply cannot be accommodated right now."  (Oct. 15, 2020 Tr. 8:1-12).

The Court then asked the government what would happen if the trial was adjourned to February 2021 and the prevailing conditions had not changed.  In response, the government observed that the witnesses had a "multitude of other concerns, including childcare obligations, and some serious health issues that would not necessarily be addressed if, say, in February [if] Illinois continues to be a restricted state."  (Oct. 15, 2020 Tr. 10:10-14).  The government also continued to express doubt that it could compel the witnesses to travel.  "[I]t is," the government reiterated, "at best, a complex untested question whether we can or the Court can compel a witness who's refusing to comply with this protocol to do so.  So I cannot promise that the government will be in a different position come February, if Illinois remains a restricted state."  (Oct. 15, 2020 Tr. 10:15-22).

## V.     Current Conditions

Trial is currently scheduled to begin on February 16, 2021.  Case counts in Illinois and in in almost every other state are rising and it is difficult to predict what restrictions will be in place come February.  As of this writing, the following rules are in effect:

KL3 3318229.1

New York:  On October 31, 2020 New York has announced revised restrictions under which travelers from restricted states could test out of the 14-day quarantine requirement. Such travelers would be required to take a test within three days of departure from the restricted stated, quarantine for three days upon arrival in New York, and take a test on the fourth day.  The traveler may exit quarantine if both tests comes back negative.  (N.Y. Exec. Order No. 205.2). This Court also requires domestic travelers to take a test on day five after arrival in New York and to submit proof of negative test results at the entrance to the courthouse.  (S.D.N.Y. Protocol for Domestic Travelers, Nov. 12, 2020).

Illinois:  The State of Illinois has not imposed travel restrictions.  However, Chicago has imposed a 14-day quarantine requirement on states with average daily case counts greater than 60 per 100,000, and requires visitors from states with average daily case counts between 15-60 per 100,000 to obtain a negative COVID-19 test result no more than 72 hours prior to arrival in Chicago and avoid in-person gatherings, or quarantine for a 14-day period (or the duration of their time in Chicago, whichever is shorter).  (Emergency Travel Order, City of Chicago (Nov. 10, 2020), https://www.chicago.gov/city/en/sites/covid-19/home/emergency-travel-order.html.  At present, states that are below this threshold and therefore not on the restricted list include New York, California and Washington D.C., among others.  By order dated October 30, the United States District Court for the Northern District of Illinois suspended all criminal jury trials until January 26, 2021.  (Seventh Amended General Order 20-0012, In re: Coronavirus COVID-19 Public Emergency (Oct. 29, 2020)).

KL3 3318229.1

## VI.    Location of Witnesses

While the government has not provided its witness list to the defense, based on other disclosures it has made, we believe the following individuals are likely to be the government's most significant witnesses at trial:

> **CURRENT TFSB EMPLOYEES**
> James Brennan (Chicago area)
> Thomas Horn (Chicago area)
> Matthew McDonald (Chicago area)
> Javier Ubarri (Chicago area)
>
> **FORMER TFSB EMPLOYEES**
> Dennis Raico (New York City area)
>
> **OCC WITNESSES**
> Catherine Aguirre (Chicago area)
> Potential Additional OCC witnesses (4 in Chicago area, 1 in Virginia)[1]
>
> **RETAINED EXPERTS**
> Joseph P. Belanger (Massachusetts)
> Jeff McCutcheon (Florida)

The government has also stated that other "likely Government witnesses" live in California and Arizona, but has not identified them.  (Dkt. No. 101 at 2).  As, the government has recognized, the defendant and other likely defense witnesses reside in the Chicago area.[2]

## ARGUMENT

This Court is already thoroughly familiar with the legal standards governing a motion for change of venue under Federal Rule of Criminal Procedure 21(b), including the application the factors set forth in *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240

---

[1] The government's October 14, 2020 letter stated that out of six possible OCC witnesses, there are five in Illinois and one in Virginia.  (Dkt. 112).

[2] Mr. Calk has begun splitting time between Chicago and Florida.  He intends to continue to spend significant time in Chicago, where he maintains a home and where his children, over whom he shares custody, reside.

KL3 3318229.1

(1964).[3]  (*See* Dkt. 55).  The crucial factor that has changed here is that the government itself

has repeatedly stated that several key witnesses who reside in the Chicago area will not willingly

appear to testify in person if the trial goes forward in New York in February.  Some will be

unwilling or unable to comply with quarantine rules that will likely be in effect for those coming

to New York or returning to Chicago.  Others have reasons to refuse to come even if they are not

required to quarantine.  The best we can hope for is litigation of motions to quash in this Court

(and likely in interlocutory appeals).  These motions, as the government indicated, raise novel

legal questions regarding the extent of the Court's subpoena power.  If the witnesses do not

appear as required, the government may seek permission to call several critical fact witnesses by

video – an unprecedented procedure in a criminal case to which the defense would strongly

object.

Mr. Calk respectfully submits that the likely unavailability of live witnesses in

New York, when combined with the other Platt factors previously reviewed by the Court in

connection with Mr. Calk's initial motion for transfer, tips the balance in favor of a change of

venue.  Based on the government's own submissions, there is now ample evidence in the record

of "specific examples of witnesses' testimony and their inability to testify because of the location

of the trial."  *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 456 (S.D.N.Y. 1997).  Even if

those witnesses could ultimately be compelled by order of this Court to travel to New York, the

---

[3]  The *Platt* factors include: (1) location of the defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business if the case is not transferred; (6) expenses of the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket conditions of each potential district; and (10) any other special elements which might affect the transfer.  *Id*. at 243-44.  Other special elements include, for example, the timeliness of moving to transfer.  *See, e.g.*, *United States v. Russell*, 582 F. Supp. 660, 663 (S.D.N.Y. 1984).  Although not enumerated in *Platt,* the convenience of the alleged victim (in this case, TFSB), is also specifically referenced in Rule 21(b).  Fed. R. Crim. P. 21(b), Comm. Notes on Rules—2010 Amend. (2010).

significant inconvenience to those witnesses is enough to justify transfer. *See, e.g.*, *United States v. Layne*, No. 05-cr-87 (HB), 2005 WL 1009765, at *3 (S.D.N.Y. May 2, 2005) (granting transfer motion in part based on the fact that "fewer witnesses will be inconvenienced by a Florida trial"); *United States v. Alter*, 81 F.R.D. 524, 527 (S.D.N.Y. 1979) (granting motion to transfer and explaining in relevant part that "the majority of witnesses for both government and defendants reside in the Southern District of Florida or outside of this district and that the factor of convenience of witnesses strongly tilts in favor of a transfer"); *United States v. Campestrini*, 993 F. Supp. 2d 69, 72 (D.P.R. 2014) (granting transfer motion and holding that "[t]he location of possible witnesses in the more readily accessible venue of southern Florida also heavily weighs in favor of transfer").

Mr. Calk recognizes that if this case is transferred to the North District of Illinois there will be uncertainty about when it can proceed to trial.  It is possible that a trial in Chicago would not occur until after February 16, 2021.  Nonetheless, Mr. Calk believes he will ultimately receive a speedier trial in Chicago than in New York, especially if he joins the queue of defendants awaiting trial in the Northern District as soon as possible.

## CONCLUSION

For the foregoing reasons, Mr. Calk respectfully requests that the Court transfer this case to the Northern District of Illinois so that he may proceed expeditiously to trial in that district when circumstances permit.

Dated:   New York, New York                Respectfully submitted,
         November 13, 2020

                                           KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                           By:  */s/ Paul H. Schoeman*
                                                Paul H. Schoeman
                                                Darren A. LaVerne
                                                1177 Avenue of the Americas
                                                New York, NY 10036
                                                Telephone: 212.715.9100

                                           LOEB & LOEB LLP

                                                Jeremy Margolis
                                                Joseph J. Duffy
                                                321 N. Clark Street
                                                Chicago, IL 60654
                                                Telephone: 312.464.3100

                                           *Attorneys for Defendant Stephen M. Calk*

KL3 3318229.1