UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-x
                                                        :
UNITED STATES OF AMERICA                                :
                                                        :
                    -v.-                                :        19 Cr. 366 (LGS)
                                                        :
STEPHEN M. CALK,                                        :
                                                        :
                            Defendant.                  :
                                                        :
\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-x

## MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO RECONSIDER THE COURT'S DENIAL OF HIS MOTION TO TRANSFER VENUE

AUDREY STRAUSS
Acting United States Attorney
One St. Andrew's Plaza
New York, New York 10007

Paul M. Monteleoni
Douglas S. Zolkind
Benet J. Kearney
Assistant United States Attorneys
- Of Counsel -

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................... 1

BACKGROUND ..................................................................................................... 2

        A.    The Original Motion and the Court's Decision Denying Transfer ............. 2

        B.    The Adjournment of Trial and the Renewed Motion................................. 3

        C.    Pandemic Conditions in New York and Illinois ........................................ 3

        D.    The Government's Anticipated Witnesses.................................................. 6

ARGUMENT ............................................................................................................ 7

   I.    THERE IS NO BASIS TO RECONSIDER THE COURT'S DECISION
       DENYING TRANSFER ............................................................................... 7

        A.    Legal Standards.......................................................................................... 7

             1.    Motions for Reconsideration............................................................ 7

             2.    Motions for Change of Venue........................................................... 9

        B.    Discussion ................................................................................................ 10

             1.    The Court Should Deny the Defendant's Motion For
                 Reconsideration............................................................................... 10

             2.    The Defendant Cannot Carry His Burden of Demonstrating that
                 Transfer is Justified........................................................................ 11

CONCLUSION ....................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Analytical Surveys, Inc. v. Tonga Partners*, L.P., 684 F.3d 36 (2d Cir. 2012) .............................. 8

*In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613 (S.D.N.Y. 2000) .......................... 8

*Parrish v. Sollecito*, 253 F. Supp. 2d 713 (S.D.N.Y. 2003) .................................................... 8, 10

*Platt* v. *Minnesota Mining & Mfg. Co.*, 376 U.S. 240 (1964) ............................................... passim

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) ........................................................ 8

*United States v. Blakstad*, No. 19 Cr. 486 (ER), 2020 WL 5992347 (S.D.N.Y. Oct. 9, 2020) .... 16

*United States v. Canale*, No. 14 Cr. 713 (KBF), 2015 WL 3767147 (S.D.N.Y. June 17, 2015) . 13

*United States v. Carollo*, No. 10 Cr. 654, 2011 WL 5023241 (S.D.N.Y. Oct. 20, 2011) ............. 8

*United States v. Delvi*, No. S12 01 Cr. 74, 2004 WL 235211 (S.D.N.Y. Feb. 6, 2004) ................ 8

*United States v. Keuylian*, 602 F.2d 1033 (2d Cir. 1979) ........................................................ 13

*United States* v. *Kirk Tang Yuk*, 885 F.3d 57 (2d Cir. 2018) ............................................ 9, 11, 12

*United States v. Leaver*, 358 F. Supp. 2d 273 (S.D.N.Y. 2005) ................................................. 8

*United States v. Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) ......... 8

*United States* v. *Maldonado-Rivera*, 922 F.2d 934 (2d Cir. 1990) ............................................. 9

*United States v. Pastore*, No. 17 Cr. 343 (NSR), 2018 WL 395490 (S.D.N.Y. Jan. 11, 2018) ... 13

*United States* v. *Posner*, 549 F. Supp. 475 (S.D.N.Y. 1982) .................................................... 9

*United States* v. *Spy Factory, Inc.*, 951 F. Supp. 450 (S.D.N.Y. 1997) ....................... 9, 11, 12, 17

*United States v. Stein*, 429 F. Supp. 2d 633 (S.D.N.Y. 2006) .................................................. 13

*United States* v. *Williams*, 437 F. Supp. 1047 (W.D.N.Y. 1977) ................................................ 9

*United States v. Yates*, No. 19 Cr. 266 (AWT), 2020 WL 3316053 (D. Conn. June 18, 2020) .. 13, 16

*United States v. Yousef*, No. S3 08 Cr. 1213, 2012 WL 691400 (S.D.N.Y. Mar. 5, 2012) ............ 8

**Rules**

Fed. R. Crim. P. 21(b) ............................................................................................................... 9

SDNY Local Civil Rule 6.3 .................................................................................................... 7, 8

SDNY Local Criminal Rule 49.1(d) .......................................................................................... 8

## INTRODUCTION

Supposedly to expedite trial, the defendant once again proposes to transfer this case from this District, which is currently conducting jury trials and experiencing comparatively favorable COVID-19 conditions amid a backdrop of rising case rates around the country, to the Northern District of Illinois, where jury trials are currently suspended indefinitely amid one of the worst pandemic outbreaks in the nation. The defendant's proposition is factually illogical and legally baseless, and should be rejected.

This Court has, of course already denied a prior motion to transfer the case to the Northern District of Illinois, and nothing that has taken place since the Court denied that prior motion justifies reversing that decision. The pandemic has undoubtedly caused significant obstacles to this and many other trials scheduled in this District, but transferring this case to a location suffering a considerably more severe outbreak will neither address nor ameliorate those obstacles, particularly given the current conditions in the Northern District of Illinois and the need for multiple witnesses to travel from out of state regardless of whether the trial is held in New York or Chicago. And apart from the pandemic, the rationale for retaining this prosecution in this District is clearer than ever, as the Court has devoted considerable resources to familiarizing itself with the case, pretrial and discovery motions have been decided, and motions *in limine* have been fully briefed.

By contrast, the primary basis for the defendant's motion is speculation—speculation that transfer to a new district where jury trials are currently suspended will somehow vault his case to the front of the line and allow his trial to proceed sooner than in this District, and speculation that the difficulties involved in calling out-of-state witnesses will somehow evaporate in the Northern District of Illinois before they can be surmounted in this District. This sort of speculation is

simply not a basis for granting reconsideration of the Court's decision and not a ground for transferring venue.  The defendant's motion should again be denied.

## BACKGROUND

### A.    The Original Motion and the Court's Decision Denying Transfer

On November 8, 2019, the defendant moved to transfer this case from this District to the Northern District of Illinois.  (Dkt. 34).  The original motion relied on the defendant's residence in the Northern District of Illinois (at the time, the defendant's sole residence was in that district (*id.* at 1)) (*id.* at 5-6); the location of the Bank in that district (*id.* at 5-6); the location of the majority of likely trial witnesses in that district (*id.* at 6-8); the alleged location of events in that district (*id.* at 8); the location of some of the defendant's counsel in that district (*id.* at 9-10); claims of expense in retaining the case in the Southern District of New York (*id.* at 10-11); claims that the business of the Bank would be disrupted by a trial in New York (*id.* at 11); and the timeliness of the motion (*id.* at 11-12).

On February 12, 2020, this Court issued an Opinion and Order denying the original motion.  This Court found that while the defendant's residence weighed in favor of transfer (Dkt. 55 at 6), none of the other factors did (*id.* at 10).  In particular, the Court found that the defendant had not shown that "any of the prospective witnesses will be unable to testify in this District or even that they would be significantly inconvenienced by such testimony" (*id.* at 7); that the disruptions to the Bank and its personnel would likewise be minor (*id.* at 10); that a significant portion of the conduct occurred in the Southern District of New York, such that "the location of events does not weigh in favor of transferring the case" (*id.* at 8); that the location of defense counsel in New York as well as Chicago did not weigh in favor of transfer (*id.* at 8-9); and that

the defendant had not shown that any additional expense of a trial in New York would be

"unduly onerous" or that he would be "unable to bear such expenses" (*id.* at 9-10).

### B. The Adjournment of Trial and the Renewed Motion

On April 23, 2020, the Court set a trial date for September 2020.  On June 25, 2020, the

Government wrote to the Court conveying both parties' joint request for an adjournment of trial.

(Dkt. 89).  In the letter, the Government noted the concerns that several critical Bank witnesses

had with traveling to New York during the pandemic.  (*Id.* at 1-2).  At a July 2, 2020 conference,

and based in part on those concerns, trial was adjourned and tentatively set for December 2020.

In September 2020, the Government wrote to advise the Court of certain difficulties

presented by holding a December trial, including the fact that Illinois, where both the defendant

and a number of key witnesses reside, had been added to the list of states subject to mandatory

quarantine.  (Dkt. 101).

On October 14, 2020, in light of the deterioration of conditions in Illinois and in other

locations, and in light of the impact of this District's quarantine and testing requirements on

travelers from restricted states, the Government sought an adjournment of trial.  (Dkt. 112).  At

the conference on October 15, the Court granted that request for an adjournment over the

defendant's objection.  (Tr., Oct. 15, 2020 at 11-12).  The Court then set trial for February 16,

2021.  (Dkt. 115, 116).

### C. Pandemic Conditions in New York and Illinois

Since the October 15, 2020 conference, the pandemic conditions have worsened in

Illinois, New York, and almost every state in the country.  While there have been news reports

suggesting two possible vaccines could be approved and initial distributions made as early as this

year, the prospects for wide distribution appear to still be at least several months away.  *See* N.Y.

Times, *Pfizer Applies for Emergency F.D.A. Approval for Covid-19 Vaccine* (Nov. 20, 2020),

*available at* https://www.nytimes.com/2020/11/20/health/pfizer-covid-vaccine.html.

Moreover, conditions have been significantly worse in Illinois than in New York.  Illinois

was added to New York State's quarantine list on July 28, 2020, based on case counts that were

at the time substantially higher than New York State's even in absolute terms, and higher still as

a share of population.[1]  Since then Illinois has consistently displayed case counts higher than

New York's in both relative and absolute terms.[2]  Accordingly, Illinois has consistently had

significantly worse conditions than New York for over three and a half months.

Indeed, not merely the state of Illinois but also the Chicago metropolitan area has been

experiencing an alarming surge in virus cases.  *See* N.Y. Times, *Covid-19 Live Updates:*

*Chicago Confronts a Coronavirus Surge as the Midwest Fails to Curb Infections* (Nov. 17,

2020), *available at* https://www.nytimes.com/live/2020/11/17/world/covid-19-

coronavirus#chicago-confronts-a-coronavirus-surge-as-the-midwest-fails-to-curb-infections

---

[1] On that date, the 7-day average number of new cases per day in Illinois was 1,436 cases per day, equivalent to roughly **11.33** cases per 100,000 residents.  *See* N.Y. Times, *Illinois Covid Map & Case Count* ("Illinois Case Count"), https://www.nytimes.com/interactive/2020/us/illinois-coronavirus-cases.html (new cases per day);U.S. Census, Illinois QuickFacts, https://www.census.gov/quickfacts/IL (estimating Illinois's population to be 12,671,821 on July 1, 2019).  By contrast, on that same date, the 7-day average number of new cases per day in New York was 672, equivalent to roughly **3.45** cases per 100,000 residents.  *See* N.Y. Times, *New York Covid Map & Case Count* ("New York Case Count"), https://www.nytimes.com/interactive/2020/us/new-york-coronavirus-cases.html (new cases per day); U.S. Census, New York QuickFacts, https://www.census.gov/quickfacts/NY (estimating New York's population to be 19,453,561 on July 1, 2019).

[2] The interactive case count calculators demonstrate that Illinois has had substantially worse conditions than New York continuously throughout this period.   For example, on November 17, 2020, the 7-day average number of new cases in Illinois was 12,381, equivalent to roughly **97.70** cases per 100,000 residents.  On that day, the 7-day average number of new cases in New York was 4,664, equivalent to roughly **23.98** cases per 100,000 residents.

("More than 8,700 new cases are appearing on an average day in the Chicago metro area—more than *any whole state* other than Illinois, California or Texas" (emphasis added)).  There is little basis to expect that the situation will improve in the near term.  *See id.* ("'We're in for a very difficult next few months,' said Gov. J.B. Pritzker, who has warned that a mandatory stay-at-home order could be issued soon if conditions don't improve.").

In the Northern District of Illinois, jury trials are suspended indefinitely.  The current standing order suspends jury trials "until further order of th[e] Court," with a provision that the Court will "vacate, amend, or extend" the order no later than January 25, 2021.  *See* Eighth Amended General Order 20-0012, *In re Coronavirus COVID-19 Public Emergency* (N.D. Ill. Nov. 13, 2020) (attached hereto as Exhibit A).

The City of Chicago imposes a tiered quarantine on visitors from other states.  Visitors from states with fewer than 15 daily cases per 100,000 residents are not required to quarantine, but visitors from states with between 15 and 85 daily cases per 100,000 residents are subject to an intermediate tier of restriction, and are required to either undergo a 14-day quarantine or obtain a negative COVID-19 test no more than 72 hours prior to arrival.  *See* City of Chicago, *Emergency Travel Order* ("Chicago Travel Order"), https://www.chicago.gov/city/en/sites/covid-19/home/emergency-travel-order.html.  Visitors from states with over 85 daily cases per 100,000 residents are subject to a higher tier of retriction, requiring a 14-day quarantine.  *Id.*  While New York was not on a restricted tier based on the most recent published statistics at the time of the defendant's motion, it is currently, as of the November 17, 2020 statistics, on the intermediate tier of restriction.  *See id.*

Conditions in New York, by contrast, have for several months been comparatively favorable, although there has been a recent increase in cases in New York as in almost every other state.  Criminal jury trials have been taking place in the Southern District of New York starting in October 2020, and are currently still taking place.  This District has instituted protocols for entry into the courthouse that require visitors from most states to obtain a negative COVID-19 test result five days after arriving in New York.[3]

### D.   The Government's Anticipated Witnesses

Although many of the Government's critical witnesses reside in Illinois, a number—including several of the most important witnesses in the case—reside in other states, all of which are currently subject to the Chicago travel order's intermediate or higher tier of restriction. Among the Government's most significant likely non-law-enforcement witnesses, three current Bank employees reside in Illinois, one resides in Indiana, one former Bank employee and one presidential transition team witness reside in New York, four Office of Comptroller of Currency ("OCC") personnel reside in Illinois, one OCC official resides in Virginia, one expert witness resides in Massachusetts and one resides in Florida.

All of these states other than Illinois are currently subject to the intermediate tier of restriction in Chicago—with the exception of Indiana, which is subject to the higher tier of restriction—meaning that each of these witnesses would be subject to requirements that they

---

[3] Such out-of-state visitors are required to quarantine in New York until obtaining their negative test result.  Further, travelers who have been in restricted states for more than 24 hours must also obtain a negative test result within three days prior to departure from the restricted state.  *See SDNY Protocol for Domestic Travelers*, https://www.nysd.uscourts.gov/sites/default/files/2020-11/Protocol%20for%20domestic%20travelers.pdf.

obtain a COVID-19 test shortly before traveling or quarantine for 14 days upon arrival.

However, current trends in each of these states show case counts increasing, in some cases

sharply, which may cause them to be subject to the higher tier of restriction in the near future.[4]

## ARGUMENT

### I.   THERE IS NO BASIS TO RECONSIDER THE COURT'S DECISION DENYING TRANSFER

While the pandemic has unquestionably changed the way in which trials are being

scheduled and conducted all over the country, the defendant identifies neither a basis for

reconsidering the Court's decision or for transferring the case to Illinois.  Each of the relevant

factors the Court has previously considered continue to weigh in favor of transfer, and the

defendant's proffered bases for reconsidering this decision are easily refuted.  In particular, the

defendant identifies no non-speculative reason to believe that transfer to the Northern District of

Illinois would increase the likelihood of a near-term trial with live in-person witnesses, nor that

doing so would resolve the issues that have prompted this Court to adjourn the existing trial date,

including the risks and problems that arise from having out-of-state witnesses and the parties

travel.  As such, the motion should be denied.

#### A.   Legal Standards

##### *1.   Motions for Reconsideration*

Local Civil Rule 6.3 governs motions for reconsideration in civil cases, and is routinely

applied in criminal cases.  *See, e.g.*, *United States v. Yousef*, No. S3 08 Cr. 1213, 2012 WL

---

[4] Case counts can be accessed for any U.S. states by selecting those states from consolidated
tracking databases such as those maintained by the New York Times.  *See* N.Y. Times, *Covid in
the U.S.: Latest Map and Case Count*,
https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.

691400, at *2 (S.D.N.Y. Mar. 5, 2012); *United States v. Carollo*, No. 10 Cr. 654, 2011 WL

5023241, at *2 (S.D.N.Y. Oct. 20, 2011); *see also United States v. Lisi*, No. 15 Cr. 457 (KPF),

2020 WL 1331955, at *2 (S.D.N.Y. Mar. 23, 2020) ("The standards for reconsideration among

the civil and criminal rules are largely the same").  This rule requires a party seeking

reconsideration to file "a memorandum setting forth concisely the matters or controlling

decisions which counsel believes the Court has overlooked."  SDNY Local Civil Rule 6.3.  Local

Criminal Rule 49.1 also requires that, when seeking reconsideration, the movant "shall" file "a

memorandum setting forth concisely the matters or controlling decisions which counsel believes

the Court has overlooked."  SDNY Local Criminal Rule 49.1(d).

 Local Civil Rule 6.3 is "narrowly construed and strictly applied so as to avoid repetitive

arguments on issues that have been considered fully by the Court."  *United States v. Delvi*, No.

S12 01 Cr. 74, 2004 WL 235211, at *1 (S.D.N.Y. Feb. 6, 2004) (internal quotations omitted).

Reconsideration of a decision is an "'extraordinary remedy to be employed sparingly in the

interests of finality and conservation of scarce judicial resources.'"  *Parrish v. Sollecito*, 253 F.

Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F.

Supp. 2d 613, 614 (S.D.N.Y. 2000)).  Accordingly, a motion for reconsideration should be

denied unless the moving party "can point to controlling decisions or data that the court

overlooked—matters, in other words, that might reasonably be expected to alter the conclusion

reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  As the

Second Circuit has explained, a motion for reconsideration is not a "vehicle for relitigating old

issues, presenting the case under new theories . . . or otherwise taking a second bite at the apple."

*Analytical Surveys, Inc. v. Tonga Partners*, L.P., 684 F.3d 36, 52 (2d Cir. 2012).

8

2.      *Motions for Change of Venue*

"As a general rule a criminal prosecution should be retained in the original district" where the case was charged.  *United States v. Posner*, 549 F. Supp. 475, 477 (S.D.N.Y. 1982) (internal quotation marks omitted); *accord United States v. Kirk Tang Yuk*, 885 F.3d 57, 74 n.5 (2d Cir. 2018).  The Federal Rules provide that "for the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant or any one or more of the counts thereof to another district."  Fed. R. Crim. P. 21(b).  The "burden is on the moving defendant to justify a transfer under Rule 21(b)."  *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 464 (S.D.N.Y. 1997) (Sotomayor, J.) (quotation marks omitted).  Furthermore, the moving party must provide "factual substantiation" for his contentions that a transfer is in the interests of justice.  *United States v. Williams*, 437 F. Supp. 1047, 1051 (W.D.N.Y. 1977); *see also Spy Factory*, 951 F. Supp. at 456 ("the court must rely on 'concrete demonstrations'" of witness testimony justifying transfer).

In *Platt v. Minnesota Mining and Manufacturing Co.*, the Supreme Court delineated a list of factors that courts routinely consider in analyzing a defendant's motion to transfer venue: (1) location of defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district involved; and (10) any other special elements which might affect the transfer.  376 U.S. 240, 243-44 (1964).  "No one of these considerations is dispositive, and it remains for the court to try to strike a balance and determine which factors are of greatest importance."  *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990) (quotation marks and brackets omitted).

9

B.    **Discussion**

1.    *The Court Should Deny the Defendant's Motion For Reconsideration*

The defendant has failed to meet his burden of showing that the "extraordinary remedy" of reconsideration of the Court's decision is warranted. *Parrish*, 253 F. Supp. 2d at 715 (internal quotation marks omitted).

Few of the factors justifying the Court's original decision have even arguably changed, much less to his benefit. The location of the defendant—the only factor the Court found to weigh in favor of transfer (Dkt. 55 at 6)—has arguably weakened, since the defendant has "begun splitting time between Chicago and Florida" (Def. Mem. 7 n.2), but is certainly no stronger than it was when the Court denied his initial motion. The location of events—which the Court found not to favor transfer given the significant New York conduct (Dkt. 55 at 8)—is unchanged. The location of counsel—which the Court found not to favor transfer given the number of New York counsel representing both parties (Dkt. 55 at 8-9)—has not changed, except that one additional New York defense lawyer has noticed her appearance as counsel of record for the defense (Dkt. 73).[5] The expense to the parties, which the Court found not to favor transfer (Dkt. 55 at 9-10) has not changed in favor of the motion.[6] And finally, the defendant does not contend that the convenience for the victim or impact on the defendant's business—

---

[5] To the extent that the pandemic renders travel more burdensome or hazardous, it weighs further against transfer given that all of the Government's counsel, and the majority of the defendant's counsel of record, are based in New York.

[6] If anything, the transfer of trial to a location with higher COVID-19 incidence might necessitate additional expense for precautionary measures, further counseling against transfer. But at a minimum, this factor has not changed to the defendant's benefit.

which the Court found not to favor transfer (Dkt. 55 at 10)—have changed.[7]

As to the location of the witnesses—which the Court previously found not to favor transfer (Dkt. 55 at 7, 10)—it is, of course, true that the pandemic has impacted the ability of witnesses and the parties alike to freely travel around the country.  However as discussed in detail below, those challenges would remain even if the motion were granted, and the defendant provides nothing aside from speculation to suggest transferring the case would in any way ameliorate, let alone obviate, those concerns.  Because speculation is an insufficient basis to warrant reconsideration, the motion can and should be denied on this basis alone.

          2.     *The Defendant Cannot Carry His Burden of Demonstrating that Transfer is Justified*

Even if the defendant had carried his burden in demonstrating that he is entitled to reconsideration of the Court's decision, his motion would nonetheless fail on the merits.  In order to overcome "the general rule that a criminal prosecution should be retained in the original district," *Kirk Tang Yuk*, 885 F.3d at 74 n.5 (internal quotation marks omitted), the "burden is on the moving defendant," *Spy Factory*, 951 F. Supp. at 464, and must be met by "concrete demonstrations," *id.* at 456 (internal quotation marks omitted).

Nothing in the defendant's renewed motion justifies overthrowing the Court's denial of his initial motion.  Far from "concrete demonstrations," *id.*, the defendant offers mere speculation: that a trial in the Northern District of Illinois would, contrary to all indications and

---

[7] The Court originally concluded that two other *Platt* factors—the location of documents and relative accessibility of the districts—were not relevant to the analysis (Dkt. 55 at 10).  This remains true as to the documents.  Illinois's more severe pandemic conditions may be seen as bearing on the relative accessibility of the districts, but the Government believes these issues are better viewed in terms of witness availability, *see* Section I.B.2.b, *infra*.

common sense, take place before it could this District, and that the applicable quarantine requirements at the time of trial would develop so that the numerous out-of-state witnesses to be called in either location would be less burdened in Illinois than in New York.  Such speculation is hardly the sort of "concrete demonstration[]" that warrants transfer, *id.*, and it does not justify discarding the "general rule" favoring the "original district," *Kirk Tang Yuk*, 885 F.3d at 74 n.5 (internal quotation marks omitted), or this Court's careful balancing of the relevant factors in denying the defendant's original motion.  Each of the bases of the defendant's renewed motion are nothing more than rank speculation and are easily refuted.

> a)  Transfer to the Northern District of Illinois Would Not Increase the Likelihood of a Near-Term Trial with In-Person Testimony

There is no concrete—as opposed to speculative—reason to believe that transferring this case to the Northern District of Illinois will improve the odds of this case proceeding to trial in the near future with all significant witnesses appearing in person.  The defendant's "belie[f]" that "he will ultimately receive a speedier trial in Chicago than in New York" (Def. Mem. 9), is convenient but baseless.

The "docket condition[s]" of this District and the Northern District of Illinois provide no reason to imagine that this trial could happen in the near term if a transfer was granted.  *Platt*, 376 U.S. at 244.  First, there is no question that even absent the pandemic, a transfer of this case—after the Court has familiarized itself with the case, pretrial motions have been decided, and motions *in limine* have been briefed—to a new court with a new judge unfamiliar with this case would greatly delay proceedings.  It is commonplace for courts to deny motions to transfer venue coming after motions have been decided and trial dates have been set, precisely because of the delay that transfer would engender.  *See, e.g.*, *United States v. Keuylian*, 602 F.2d 1033,

1038-39 (2d Cir. 1979) (affirming denial of transfer in light of the "serious danger of delay" where a case on the eve of trial "would then have had to be placed at the end of some other district court's busy criminal docket"); *United States v. Pastore*, No. 17 Cr. 343 (NSR), 2018 WL 395490, at *5 (S.D.N.Y. Jan. 11, 2018) (finding transfer would disserve judicial economy); *United States v. Canale*, No. 14 Cr. 713 (KBF), 2015 WL 3767147, at *4 (S.D.N.Y. June 17, 2015) (denying transfer and noting that transfer would likely result in delay given that "th[e] Court ha[d] already made itself available, familiarized itself with th[e] case, and scheduled a trial date that is convenient for both parties," citing *United States v. Stein*, 429 F. Supp. 2d 633, 645 (S.D.N.Y. 2006)); *United States v. Yates*, No. 19 Cr. 266 (AWT), 2020 WL 3316053, at *7 (D. Conn. June 18, 2020) (denying transfer during pandemic given that trial date was set, concluding that "[t]ransfer of th[e] case would likely result in a later trial date").

The pandemic conditions plainly make it more, not less, likely that a transfer to the Northern District of Illinois would engender additional delay. Illinois has persistently—for a period of months longer than the amount of time remaining before the scheduled trial date—had substantially higher COVID-19 case rates than New York, and there is no reason to believe this will change in the upcoming months. Indeed—unlike in this District—all jury trials are currently suspended in the Northern District of Illinois pending further order of the Court. (*See* Ex. A at 1). It is nonsensical to believe that transferring this case from a jurisdiction with fewer cases, a slower rate of spread, and open courts to one with more cases, a faster rate of spread, and closed courts could possibly lead to an earlier trial date. Presumably there are many other defendants, including incarcerated defendants, who have had their trials adjourned in the Northern District of Illinois, and there is no reason to believe that the defendant will be able to jump that line. It is, in

13

short, hard to conceive of a district that could have a less favorable "docket condition," *Platt*, 376 U.S. at 244, than one in which all trials are suspended *sine die*.

The defendant all but admits this likelihood of delay, recognizing "uncertainty" about the possible trial date and acknowledging (with considerable understatement) that it is "possible" a trial in Chicago would not occur until after the currently scheduled trial date in this District. (Def. Mem. 9). In the face of these facts, the defendant resorts to his subjective belief that "he will ultimately receive a speedier trial in Chicago" (Def. Mem. 9), but offers literally no argument in support of his belief, which is facially implausible.

           b)      Burdens on Witnesses Would Likely Be at Least as Severe if the Case Were Transferred

The crux of the defendant's argument—that transferring the case would ameliorate the impact of the pandemic upon witnesses—is wrong because transferring the case would merely push that burden from some witnesses to other witnesses. Although a number of critical witnesses reside in Illinois, multiple witnesses—including one of the most important witnesses in the case—reside outside that state. In all likelihood, by the time of trial the pandemic would either have abated (thus removing the entire premise for this motion) or, if the Northern District of Illinois is able to open its courts during intensive pandemic conditions, non-Illinois witnesses would be subject to at least as onerous testing and screening requirements to enter federal court in Chicago as the non-New York witnesses face to enter this District. But even leaving aside the burdens caused by quarantine, the fact that Illinois has persistently had significantly higher incidence of COVID-19 than New York necessarily imposes substantial burdens on all of the

witnesses who would be required to attend trial in Illinois.  Accordingly, the "location of

witnesses" continues not to weigh in favor of transfer.  *Platt*, 376 U.S. at 244.[8]

The current quarantine requirements for travelers into Chicago are also not a reason to

move the trial to Chicago.  While the defendant emphasizes that (at least as of November 10)

there was no quarantine requirement for visitors from New York to Chicago as detailed above,

that statement is already outdated, as New York has, since the filing of the defense motion, been

added to Chicago's restricted list, rendering travelers subject to a requirement that they either

quarantine or obtain a negative test result in advance of traveling to the city.  Moreover, even if

travelers from New York were not subject to the quarantine, similar witness issues would afflict

a trial in the Northern District of Illinois.  In addition to witnesses from Illinois and New York,

the Government is likely to call witnesses from Virginia, Florida, Indiana, Massachusetts, and

Florida, and may call witnesses from other states as well.  See Background Section D, *supra*.

Each of these states is currently under the intermediate tier of restriction in Chicago, except for

Indiana, which is under the higher tier of restriction.  The likelihood that conditions in all of

those states will be such that the witnesses will not be subject to mandatory quarantine is thus

very low.  There is thus no reason to suspect that quarantine rules will pose materially less of an

obstacle to trial in Illinois than in New York.

Thus, though the defendant notes the obstacles the pandemic poses to a number of

Illinois-based witnesses (Def. Mem. 4 (citing Government letter)), it seems highly likely that

were the case transferred to Illinois, similar issues would recur for non-Illinois-based witnesses

---

[8] To the extent this factor could be viewed as bearing on the "relative accessibility" of the places
of trial, *id.*, it does not favor transfer for the same reasons.

(and perhaps even Illinois-based witnesses with health concerns).  In situations such as this, where some participants will necessarily have to travel to attend trial in either venue, courts have found the COVID-19 pandemic not to weigh in favor of transfer.  *See Yates*, 2020 WL 3316053, at *7 (denying motion for transfer of venue, where either venue would require travel for "a good number of participants" during the COVID-19 pandemic and the defendant had not demonstrated that his preferred venue would result in less overall travel); *cf. United States v. Blakstad*, No. 19 Cr. 486 (ER), 2020 WL 5992347, at *5-6 (S.D.N.Y. Oct. 9, 2020) (denying motion to transfer venue when both potential districts had roughly comparable numbers of COVID-19 cases).

There is thus no ground to believe that the transfer of this case to the Northern District of Illinois would ameliorate any of the undoubted difficulties the pandemic is causing regarding the availability of witnesses.

> c)   Uncertainty Regarding the Course of the Pandemic Shows that the Defendant Has Not Carried His Burden of Justifying Transfer

There remains considerable uncertainty regarding the progress of the pandemic in the months to come.  For example, it is possible that, if transfer were granted, trial would not be held until the pandemic conditions improved significantly, such as through wide distribution of a vaccine.  But in the absence of any reason to believe that this would happen in Illinois before New York, this possibility does not justify transfer.  *Cf. Yates*, 2020 WL 3316053, at *7 (denying transfer of venue during pandemic when "the trial will not be able to proceed, whether it is here or in California, until the safety of airline passengers can be reasonably assured"); *Blakstad*, 2020 WL 5992347, at *6 (rejecting pandemic concerns as reason for transfer of venue, when they amounted to "an argument against holding any trial at all, rather than *where* to hold the trial" (emphasis in original)).

16

More fundamentally, to the extent there is uncertainty regarding the pandemic conditions, that weighs in favor of retaining the case in this District, not transferring it.  The persistence of New York's more favorable conditions over Illinois has been striking, and prudence certainly dictates assuming that Illinois's particularly severe conditions will continue for some time.  But to the extent there is uncertainty about that or any other prediction regarding the pandemic, that underscores that the defendant has failed to meet his burden of justifying a transfer of venue.  *See Spy Factory*, 951 F. Supp. at 464.  Certainly to assume, as the defendant must to prevail, that the Northern District of Illinois's suspension of jury trials will lift due to some change in conditions, but that the screening procedures employed in those changed conditions will pose less of an obstacle than in this District, is the purest speculation and utterly insufficient to carry the defendant's burden.

In sum, the pandemic continues to impose enormous logistical burdens on trials nationwide, and the defendant is correct that, unfortunately, there is no way for the Government to presently guarantee that all of its key witnesses, including those based in Chicago, will be able or willing to appear for live, in-person testimony in this District in mid-February.  But there is equally no way to guarantee that a trial with live, in-person testimony will be able to take place in the Northern District of Illinois in the near term, and there are substantial reasons to doubt that a trial in the defendant's preferred venue will be feasible prior to a trial in this District given the deteriorating conditions in Chicago and throughout Illinois and the Midwest, and given the number of important witnesses who reside in states other than Illinois.  The defendant has failed to carry his steep burden on a motion for reconsideration, and even if he had, the factors the

17

Court is required to consider in granting a transfer motion continue to weigh strongly in favor of denying the defendant's motion.

## **<u>CONCLUSION</u>**

For the reasons set forth above, the defendant's motion to reconsider the Court's denial of his motion to transfer venue should be denied.

Dated:  New York, New York
        November 20, 2020

                             Respectfully submitted,

                             AUDREY STRAUSS
                             Acting United States Attorney

                    By:    /s/
                           _____
                           Paul M. Monteleoni
                           Douglas S. Zolkind
                           Benet J. Kearney
                           Assistant United States Attorneys
                           Tel.: (212) 637-2219/2418/2260
                           E-mail: paul.monteleoni@usdoj.gov
                                   douglas.zolkind@usdoj.gov
                                   benet.kearney@usdoj.gov

Exhibit A

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EIGHTH AMENDED GENERAL ORDER 20-0012

### November 13, 2020

### IN RE: CORONAVIRUS COVID-19 PUBLIC EMERGENCY

Given the public health emergency arising from the COVID-19 pandemic and consistent with guidance and orders from federal executive authorities, the State of Illinois, and local governments, it is hereby ORDERED:

### Court Remains Open

1. This Court remains open and accessible, subject to the limitations and procedures set forth below.

### Suspension of In-Person Proceedings

2. All civil and criminal jury trials are suspended until further order of this Court.

3. All civil hearings, including bench trials, shall be conducted by means of remote telephone or video conference unless an in-person hearing is required by law.

4. Criminal case procedures remain governed by General Order 20-0022 and its amendments.

### Suspension of Local Rules 5.2(f) and 5.3(b)

5. The Court suspends Local Rule 5.2(f), which requires in many instances that paper courtesy copies of filings be delivered to the judge. No courtesy copies may be submitted for filings unless the parties receive case-specific requests for copies from the presiding judge.

6. The Court suspends Local Rule 5.3(b), which otherwise requires that all motions be noticed for presentment. **No motions may be noticed for in-person presentment**; the presiding judge will notify parties of the need, if any, for a hearing by electronic means or in-court proceeding.

**E-mail Filing Option for Pro Se Parties**

7.   The Court suspends the prohibition against pro se parties emailing their filings to the Clerk's Office. The Court will accept filings from pro se litigants via email that comply with these requirements: (a) the filing must be in PDF format; (b) the filing must be signed s/ [filer's name] or bear a handwritten signature; (c) the email must be sent to Temporary_E-Filing@ilnd.uscourts.gov; (d) the email must state the party's name, address, and phone number; (e) for existing cases, the email's subject line must read: "Pro Se Filing [Insert Your Case Number]", and for new cases, the email's subject line must read: "Pro Se Filing in New Case". E-mails that do not comply with these requirements will not be reviewed and will not be considered a proper filing.

**Clerk's Office Operations**

8.   The Clerk's Office is open during normal business hours by telephone and email. Filings may be: (a) electronically filed via CM/ECF; (b) deposited during business hours in the drop-box in the lobby of the Dirksen Courthouse for Eastern Division filings or in the drop box located on the 2nd floor of the Roszkowski United States Courthouse for Western Division filings; or (c) mailed to the U.S. District Court Clerk's Office, 219 South Dearborn Street, 20th Floor, Chicago, IL 60604 for Eastern Division filings or to U.S. District Court Clerk's Office, 327 South Church Street, Rockford, IL 61101 for Western Division filings.  If a filing is mailed by a prisoner, the traditional "mail box" rule shall govern its filing date. If a filing is mailed by a non-prisoner, the filing date shall be deemed to be the postmark date, subject to any party's right to move that a different date be used. No in-person deliveries of any kind may be made to a judge's chambers.

**Suspension of Public Gatherings**

9. All public gatherings are suspended at both the Everett McKinley Dirksen U.S. Courthouse in Chicago and the Stanley J. Roszkowski U.S. Courthouse in Rockford, unless specifically authorized by the Chief Judge and until further order of this Court.

**Additional Provisions**

10. This Eighth Amended General Order does not affect the authority of judges to enter orders in any civil or criminal cases.

11. The Court will vacate, amend, or extend this Eighth Amended General Order no later than January 25, 2021.

12. The Clerk of Court shall distribute this Eighth Amended General Order by electronically posting the Order on the Court's public website.

ENTER:

FOR THE COURT:

_____
Chief Judge

Dated at Chicago, Illinois this 13th day of November 2020