

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 10, 2021

**BY ECF**

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

  Re:  *United States v. Stephen M. Calk*, 19 Cr. 366 (LGS)

Dear Judge Schofield:

  The Government writes, on behalf of the parties, pursuant to the Court's January 27 Order (Dkt. 159) to provide proposed limiting instructions as to the testimony of Government witnesses Joseph Belanger and Blake Paulson, as well as limitations on such testimony as discussed at the January 26, 2021 conference. As detailed herein, while the parties have reached agreement on certain issues, they have been unable to agree on others.

## I.  Limitations on the Scope of Belanger Testimony

  The parties agree that, as a result of the Court's preclusion of Catherine Aguirre's testimony in the January 27, 2021 Order, the defense shall not cross-examine the Government's expert witness Joseph Belanger in a manner that suggests that the loans to Paul Manafort were not downgraded, or that the OCC, in reviewing the loans in July 2017, found them to merit a Pass rating.

  The parties differ as to whether there should be any further limitations on the cross-examination of Belanger.

### A. *The Government's Position*

  In order to avoid the Government being prejudiced by the preclusion of the testimony of Aguirre, who was not retained, the Government respectfully requests that the defense not be permitted to cross-examine Belanger based on his compensation or to otherwise suggest that his retention as an expert gives him a bias.  In order to avoid prejudicing the defense or suggesting that only certain experts were compensated, the Government is willing to apply this limitation to all retained experts, including the defense expert Dr. Andrew Carron.

The Government makes this request to avoid the manifest unfairness that would result from precluding Aguirre on the grounds that she is effectively too credible, and then allowing the defense to argue that the remaining witness on this issue is too biased to credit. (*See* Tr., Jan. 26, 2021, at 24-25, 28 (Government noting Aguirre's lack of arguable bias as advantage compared to Belanger)). Doing so would allow the defense to create the misleading impression that only a biased individual would conclude that the loans were unsound, when in fact the opposite is true. If the Court is disinclined to impose this limitation, then the Government respectfully requests the opportunity to revisit the preclusion of Aguirre once the cross-examination of Belanger is complete, to avoid the unfairness of forcing the Government to present only an arguably biased witness when the Government seeks to offer an unbiased one.[1]

### B.   *Mr. Calk's Position*

The defense cannot agree to forego cross-examination relating to Belanger's compensation or to other matters probative of the witness's bias. It appears that the Government does not intend to limit Belanger's testimony to an explication of banking regulations or basic banking concepts. If it did, cross-examination as to Belanger's bias might be unnecessary. However, it appears that the Government remains intent on eliciting opinions from Belanger about industry standards and practices, and to do so in a way that conveys his opinion that Mr. Calk acted inappropriately in connection with the Manafort loans. The defense strongly disagrees with these conclusions and must retain the ability to call Belanger's credibility into question through cross-examination.

The amount of compensation received by a paid expert is a standard avenue of cross-examination, and the Government will not suffer "manifest unfairness," as it claims, should the defense be permitted to pursue it here. The defense expert, Dr. Carron, will be subject to cross-examination on the same ground. The Government's complaint that cross-examination of Belanger on this topic is unfair in light of the Court's preclusion of OCC examiner Aguirre is not well-founded. Aguirre was not precluded because her testimony "is effectively too credible." Her testimony (which concerned the ratings downgrade in July 2017 and was based on information that Mr. Calk did not know, as well as on mistakes she concluded that the Bank's underwriting department also made on loans unrelated to Manafort) was precluded because it had little, if any, relevance to Mr. Calk's state of mind, and carried a high risk of undue prejudice and juror confusion, given her status as an employee of the Bank's regulator. (Tr., Jan. 26, 2021, at 26-29).

The Government has not yet disclosed its compensation arrangements with Belanger, who was to testify regardless of whether Aguirre was precluded. Judging from his report, it appears that Belanger spent significant time working on this matter and likely received very significant compensation. The Government should disclose Belanger's compensation, and any other impeachment information in its possession, before asking the defense to waive its right to use of that information at trial.

---

[1] The Government will disclose Belanger's compensation well in advance of trial as part of its rolling production of 3500 material, and notes that the defense has not yet made comparable disclosures for Dr. Carron despite the Government's request for Rule 26.2 material.

## II.      Limitations on the Scope of Paulson Testimony

The parties have conferred but have been unable to reach agreement as to a limitation on the scope of Paulson's testimony.

### A.  *The Government's Position*

The Government does not believe that the Court need order any limitations on the scope of Paulson's testimony regarding the importance of the relevant OCC regulations, given that the Government has already indicated its intention to elicit limited testimony on the subject, and the Court has already indicated its agreement that it would be "appropriate" for the Government to do so.

At the oral argument, the Court heard a proffer of Paulson's testimony regarding the OCC's supervisory framework (Tr., Jan. 26, 2021, at 11), the manner in which that framework might be helpful to allow the jury to assess Calk's intent (*id.* at 12-15)—though Paulson will not offer any opinion regarding the loans or Calk's intent (*id.* at 19-20)—and some brief discussion of the rationale for the OCC's pertinent regulations and the importance those regulations to the functions of the OCC (id. at 18-19).  After hearing that proffer, the Court denied the defense motion to preclude Mr. Paulson's testimony (*id.* at 29).

With respect to the last component of that anticipated testimony—*i.e.*, testimony regarding the importance of certain OCC regulations—the Court directed the parties to confer regarding the scope and extent of such testimony.  In doing so, the Court indicated that it would be inappropriate for Mr. Paulson to create the impression that the OCC's regulatory scheme, and the case against Calk, are critical to the health and well-being of the economy (*id.* at 30), but that it did not believe the Government intended to create the inappropriate impression that the regulations or the case were critical to the well-being of the economy, and that it would be "appropriate" for the Government to introduce some evidence that the regulations "are not trivial and therefore Mr. Calk should have or likely would have known about them" (*id.* at 30).

In discussions with defense counsel, defense counsel maintained its objection to *any* testimony regarding the significance of the regulations, a position this Court has already considered and rejected given the obvious relevance of the limited testimony in this regard the Government intends to elicit.  (Tr., Jan. 26, 2021, at 30).  For substantially the reasons set forth at oral argument and in its briefing on the motion to preclude (Dkt. 133 at 30 & n.18), the Government continues to believe it should be permitted to establish through Paulson that the OCC places importance on the regulations in question and that bankers are aware that it does so.  Indeed, this is in keeping with the Court's holding at the January 27 conference that it was "appropriate" for the Government to introduce some evidence that the regulations "are not trivial and therefore Mr. Calk should have or likely would have known about them" (Tr., Jan. 26, 2021, at 30).

### B.  *Mr. Calk's Position*

The defense's position, in light of the parties' in limine motions and the Court's comments at oral argument on January 26, 2021, is that the testimony of Blake Paulson, who is currently the Acting Comptroller of the Currency (i.e., the #1 official at the OCC), should be limited to (i) a general description of the OCC, Paulson's position at the OCC, and background information regarding the regulatory framework governing banks; and (ii) his personal recollection of alleged comments by Mr. Calk at a July 2018 meeting, referenced in paragraph 29 of the indictment.  Paulson should not comment on the facts of this case, offer any opinion, or otherwise suggest that Mr. Calk violated any regulation or duty.  Paulson should not offer his views about the "importance" or "benefits" of the OCC's regulations to the banking system, the economy, or any other matter.  Nor should Paulson be permitted to testify, as the Government urges, that "bankers are aware" that "the OCC places importance on the regulations in question."  In addition to being irrelevant, this proposed testimony as to what "bankers" are aware of is simply improper hearsay.

The defense does not agree that the Court has "already indicated that it would be 'appropriate' for the Government" to elicit testimony from Paulson about the "importance" of OCC regulations.  At the January 26 conference, the Court expressed concern that the jury not be given "the impression that the Government's case has the imprimatur of people at the highest levels in the regulatory agency that [is] overseeing the bank."  (Tr. Jan. 26, 2021, at 15).  The Court further found that "it seems to me that suggesting that this regulatory scheme and therefore the case are somehow critical to the health and well-being of the economy is a bit much" and agreed "that shouldn't be a part of the case."  (Tr. Jan. 26, 2021, at 30).

While the Court indicated that it understood the Government's argument that regulations at issue are not "trivial" and that Mr. Calk likely would have known about them (Tr. Jan 26, 2021, at 30), the defense has made clear to the Government that it will not argue or otherwise suggest that OCC regulations are trivial.  Permitting the lead official at the OCC to testify about their importance, and allowing the Government to wrap its case in the flag in this manner, will leave the jury with the misleading and highly prejudicial impression that it has a civic obligation to convict Mr. Calk.

### III.    Jury Instructions Regarding Paulson and Belanger's Testimony

The Court also directed the parties to confer regarding limiting instructions for the testimony of Paulson and Belanger.  While the parties are in agreement regarding an instruction intended to prevent the jury from giving undue weight to the testimony of Government officials

such as Paulson, the parties have been unable to agree on limiting instructions as to Belanger's testimony.

The parties agree that the jury should be instructed that the testimony of Government employees should not be given any more or less weight than that of any other witness, as set forth in the parties' joint requests to charge (Dkt. 156 at 24).

As to Paulson, the parties also agree to the following instruction:

> You are about to hear testimony from an employee of the Office of the Comptroller of the Currency (the OCC) regarding the OCC and its regulation of the banking industry. This testimony is admissible to provide you with background to allow you to understand this witness's role in the events at issue and to allow you to interpret other evidence in the case. You are not to infer from this testimony that the OCC does or does not have any particular view of the loans in question or of Mr. Calk. I further instruct you that any such view would not be relevant to this case.

## A.   *The Government's Position*

As to both Paulson and Belanger, the Government believes that the following limiting instruction is appropriate:

> You have heard evidence regarding various banking regulations, duties, and industry practices. I instruct you that a violation of or deviation from any of these regulations, duties or practices, should you find any to have occurred, is not a crime in and of itself. You cannot find the defendant guilty merely because you believe he violated or deviated from any such regulation, duty, or practice. The evidence regarding these regulations, duties, and practices was admitted simply as background to allow you to assess the defendant's state of mind, and you should consider it only insofar as you determine that it bears on the defendant's state of mind. It is up to you what, if any, weight you give any evidence regarding any banking regulations, duties, or industry practices.[2]

The Government would also consent to this instruction (as well as the instruction on Government employees discussed above) being given, if desired by the defendant, at the time each witness testifies. If it is given prior to the final instructions, the Government does not object to providing the further instruction "At the end of the trial, I will instruct you on the elements of the crime charged in the indictment. You may only find Mr. Calk guilty of the crime

---

[2] Adapted from the jury charge of the Hon. Alison J. Nathan in *United States v. Lebedev & Gross*, No. 15 Cr. 769 (AJN), and of the Hon. Valerie E. Caproni in *United States v. Silver*, No. 15 Cr. 93 (VEC).

charged if you find that the government has proven each and every element of that crime beyond a reasonable doubt."

The Government objects to the defense's additional proposed instruction on Belanger, set forth below, as providing an inaccurate and unbalanced definition of relevance.  As an initial matter, listing ways in which the jury can find a matter not relevant but no ways in which a jury can find a matter relevant would be inherently unbalanced and prejudicial even if the language was accurate.  But more fundamentally, the contention that a matter can only be relevant to a person's state of mind if the person was aware of it is not an accurate statement of Rule 401's broad standard of relevance.  *See, e.g.*, *United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010) ("To be relevant, evidence need not itself be sufficient to prove a fact in issue, much less prove it beyond a reasonable doubt."); *Russell v. Pallito*, No. 15 Civ. 126 (GWC) (JMC), 2019 WL 6271358, at *3-4 (D. Vt. Nov. 25, 2019) (admitting evidence of Islamic dietary requirements in general as only slightly probative of sincerity of particular individual's religious belief but "at least relevant under Rule 401's liberal standard").  Moreover, the further claim that a regulation can only be relevant to Calk's state of mind if he was aware of that particular regulation is even more inaccurate.  By comparison, even for the very different mental state of willfulness (which is not at issue here), all that is necessary is an understanding of the generally unlawful nature of a person's actions, not knowledge of a specific law or rule.  *See, e.g.*, *United States v. George*, 386 F.3d 383, 391-95 (2d Cir. 2004).

The defense does not defend the accuracy of its relevance language or refute the contrary authority cited above,[3] but seeks to include this language to prevent a jury from applying a negligence standard.  But providing an incorrect definition of relevance is not the proper way to convey the mens rea for the offense; the proper way is to correctly define that mens rea and to make clear—as the Government's proposed instruction does—that the defendant cannot be convicted for conduct not meeting that standard.

### B.  *Mr. Calk's Position*

The defense requests that the following instruction be given in connection with Belanger's testimony:

> You are about to hear testimony from this witness regarding certain banking regulations, duties, and industry practices.  This evidence is admissible simply as background and you should consider it only insofar as you determine that it bears on Mr. Calk's state of mind, if at all.  A fact can be relevant to Mr. Calk's state of mind only if he was aware of that fact.  Therefore, a regulation, duty or industry practice is not relevant to Mr. Calk's state of mind if he was not aware of that particular regulation, duty or industry practice. I further instruct you that a failure to follow banking regulations,

---

[3] The defense's claim that those cases approved of appropriate limiting instructions obviously does not justify a limiting instruction that—as the defense's language would—misstates the substantive law by incorrectly instructing the jury that certain facts are not relevant.

> duties, or industry practices is not a crime.  At the end of the trial, I
> will instruct you on the elements of the crime charged in the
> indictment.  You may only find Mr. Calk guilty of the crime charged
> if you find that the government has proven each and every element
> of that crime beyond a reasonable doubt.

The defense's overarching concern with Belanger's potential testimony is that it will confuse and mislead the jury into believing that Mr. Calk can and should be convicted if he or TFSB violated a regulation, failed to follow "industry practice," or otherwise acted negligently. The Government must concede that this is not the case.  Nonetheless, the Government's proposed instruction, and its objection to the defense's proposal, indicate that the Government would prefer confusion over clarity.  The defense's proposed instruction is a very substantial improvement over the Government's proposal in two important respects:

First, the Government resists a clear instruction that matters of which Mr. Calk was unaware are not relevant to the jury's consideration of Mr. Calk's state of mind.  The issue here is that Mr. Calk's lack of awareness of regulations or industry practices could be relevant to a determination of negligent conduct, but not intentional conduct.  An instruction inviting the jury to consider regulations and industry practices as they might relate to Mr. Calk's state of mind should take every precaution to prevent the jury from misplacing its focus on what Mr. Calk "should have known."  The defense's proposed instruction addresses this issue head on by clearly instructing the jury that the existence of a regulation or practice is only relevant to Mr. Calk's state of mind in this case if he knew about it.  The Government's reliance on case law with respect to the evidentiary standard for "relevance" is misplaced, since the issue here is not admissibility but, rather, the appropriate limiting instruction.  Both of the cases cited by the Government make the defense's point that tangentially relevant but potentially confusing and unduly prejudicial evidence should be accompanied by a clear limiting instruction of the kind we propose.  *See United States v. Abu-Jihaad*, 630 F.3d 102, 133 (2d Cir. 2010) (affirming conviction where defendant did not challenge the adequacy of limiting instructions); *Russell v. Pallito*, No. 15 Civ. 126 (GWC) (JMC), 2019 WL 6271358, at *3-4 (D. Vt. Nov. 25, 2019) ("the proper remedy for Russell's concern is not wholesale exclusion of Al-khatib's testimony, but rather, use of appropriate safeguards to guide the jury in the proper use of this testimony, including vigorous cross-examination, presentation of contrasting evidence, and a request for limiting instructions.").  Similarly, the Government's citation to *United States v. George*, 386 F.3d 383, 391-95 (2d Cir. 2004), misses the point.  The standard for "willfulness" in a criminal statute is not at issue here.  The Government's burden here is to prove that Mr. Calk acted "corruptly" and with the "intent to be influenced" by certain alleged benefits received from Manafort.  It is crucial that the jury not mistake that "state of mind" with an unknowing but potentially negligent failure – by Mr. Calk or someone else at TFSB – to comply with regulations and best practices in underwriting.

Second, the Government's instruction refers to a "violation" of industry practices.  The defense does not agree that an industry practice imposes a duty or that a practice can be "violated."  The Government's formulation is, therefore, misleading.  Moreover, the defense's formulation is neutral and descriptive and does not implicitly bolster the Government's arguments.

\* \* \*

Accordingly, the parties respectfully request that, at the appropriate time, the Court rule on the outstanding disputed issues described herein.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

by: /s/  Paul M. Monteleoni
Paul M. Monteleoni
Hagan C. Scotten
Benet J. Kearney
Assistant United States Attorneys
(212) 637-2219/2410/2260

cc: Counsel of Record (via ECF)