UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 19 Cr. 366 (LGS) |
| - against - | : | |
| | : | |
| STEPHEN M. CALK, | : | |
| | : | |
| *Defendant.* | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT STEPHEN M. CALK'S MOTION TO PRECLUDE EVIDENCE OBTAINED BY IMPROPER GRAND JURY SUBPOENA SERVED ON RANDALL RIGBY

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND .................................................................................................................2

ARGUMENT .......................................................................................................................7

      I.      The Government's Use Of A Grand Jury Subpoena Was Improper .......................7

      II.     The Government Should Be Precluded From Calling Rigby As A Trial
           Witness....................................................................................................................11

CONCLUSION..................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*,
   767 F.2d 26 (2d Cir. 1985)............................................................................................8, 10, 11

*United States v. Bergstein*,
   302 F. Supp. 3d 580 (S.D.N.Y. 2018).............................................................................8, 9, 10

*United States v. Kovaleski*,
   406 F. Supp. 267 (E.D. Mich. 1976)..................................................................................9, 11

*United States v. Punn*,
   737 F.3d 1 (2d Cir. 2013) ...............................................................................................11, 12

*United States v. Raphael*,
   786 F. Supp. 355 (S.D.N.Y. 1992)......................................................................................8, 9

**Statutes**

18 U.S.C. § 215............................................................................................................................2

18 U.S.C. § 371.........................................................................................................................2, 4

Defendant Stephen M. Calk respectfully submits this memorandum of law in support of his motion to preclude the government from calling Randall Rigby as a trial witness, or otherwise using at trial any evidence obtained, directly or indirectly, from the grand jury subpoena served on Rigby.

**PRELIMINARY STATEMENT**

The law is clear that the government cannot use a grand jury subpoena for the dominant purpose of preparing for trial. Yet that is precisely what the government has done here. Retired Lieutenant General Randall Rigby is a former director of The Federal Savings Bank. The government has considered Rigby to be a potential trial witness since at least a year ago, when it first served him with a trial subpoena, and has served Rigby with trial subpoenas in advance of each of the four trial dates that have been set in this case. After the government failed three times to persuade Rigby to meet voluntarily in advance of trial, it decided to force Rigby's hand by serving him, on February 12, 2021, with a grand jury subpoena. When Rigby, through counsel, objected to appearing in person and the defense raised questions regarding the propriety of the government's use of a grand jury subpoena for this purpose, the government filed an *ex parte* letter, since unsealed. In the letter, the government claimed that, notwithstanding its highly suspicious timing, the subpoena was proper because it had been issued in connection with the grand jury's "ongoing investigation" of a conspiracy to violate the bank bribery statute charged in the initial indictment. On March 4, 2021, Rigby testified by video before the grand jury.

Last week, the government disclosed the transcript of Rigby's grand jury testimony. The government's questioning in the grand jury makes clear that it did not subpoena Rigby for the principal purpose of gathering evidence to support a conspiracy charge. Rigby's

testimony has nothing to do with a conspiracy charge.  The government did not ask a single question addressed towards identifying alleged coconspirators or establishing a conspiracy. Twelve minutes after Rigby concluded his testimony, the government presented to the grand jury, through an FBI agent, a previously prepared PowerPoint presentation entitled "Grand Jury Presentation – Proposed Superseding Indictment."  Neither the PowerPoint nor the agent made any reference to Rigby's testimony.  That same day, the grand jury returned a superseding indictment, adding a conspiracy count pursuant to 18 U.S.C. § 371.  As the government described it to the Court, the count "charges Calk with conspiring to commit the same crime (financial institution bribery) with the same persons, based on the same course of events, already charged substantively in Count One."  According to the government, it has not collected any additional discoverable evidence in connection with the charge.

In other words, everything about the grand jury subpoena served on Rigby – its timing and context, the testimony obtained, the questions asked, and Rigby's irrelevance to the government's subsequent presentation – indicates that the government used the subpoena for the primary purpose of compelling Rigby to meet with it in advance of trial and learning what his testimony would be.  This is improper and an abuse of the grand jury process.  The Court should accordingly preclude the government from calling Rigby as a trial witness and from presenting any other testimony or evidence derived, directly or indirectly, from Rigby's grand jury testimony.

## BACKGROUND

Two years ago, in May 2019, the grand jury returned the initial indictment in this case, charging a single count of bank bribery under 18 U.S.C. § 215.  (Dkt No. 2).  Since then, as a result of the Covid-19 pandemic, three trial dates have been set and adjourned – the first in September 2020, the second in December 2020, and the third in February 2021.  (*See* Dkt Nos.

93, 115, 154).  In advance of each of those dates, the government served trial subpoenas on retired Lt. General Randall Rigby, who was a member of the board of directors of The Federal Savings Bank during the period relevant to the indictment.  (*See* Dkt No. 170 at 2).  The government also twice asked Rigby to meet with it as part of its trial preparations.  (*Id*.).  Both times, Rigby, through his counsel, declined to do so.

On January 13, 2021, in accordance with the Court-ordered deadline, the government disclosed its list of trial witnesses, which included Rigby.  On January 26, 2021, the Court held a conference to discuss the then-pending February 19, 2021 trial date.  During that conference, the government did not note any intention to supersede the pending indictment (nor had it done so any time during the more than 18 months the case had been pending).  Following a discussion with the parties, the Court adjourned the February date and set the current June 22, 2021 trial date.  (Dkt No. 159).  The government, which had again requested a pretrial interview with Rigby, served another trial subpoena on him.  (Dkt No. 170 at 2).  For a third time, Rigby, through his counsel, declined the government's invitation to meet.  (*Id*. at 2-3).

The government then served Rigby with a grand jury subpoena, seeking to compel his testimony less than one week later.  (*Id*. at 3).  Rigby's counsel moved to quash or modify the subpoena so that he could testify by video rather than travel to New York.  (*Id*.).  The motion detailed the government's pursuit of Rigby as a trial witness and the government's many unsuccessful requests to meet with Rigby to prepare his testimony.  (*Id*.).  On February 22, 2021, the defense filed a letter noting the impropriety of the government's tactics and requesting that the Court set a briefing schedule that would allow it to be heard on the matter.  (Dkt No. 168).  Later that day, the government filed a letter opposing the defense's application.  (Dkt No. 169).  According to the government, Rigby's motion was moot because it had agreed to take his grand

3

jury testimony by video.  Further, while denying any impropriety, the government argued that, even assuming it had abused the grand jury process, "the defendant would be able to seek an appropriate remedy before trial."  (*Id*. at 1).  The government cited a case noting that the defense would have the "opportunity at or before trial to challenge the admissibility of any evidence obtained through enforcement of the allegedly improper grand jury subpoenas," and urged the Court to await the development of the factual record.  (*Id*. (citation omitted)).

The government also filed an *ex parte* letter.[1]  In its letter, the government advised the Court that the "subpoena received by third party Randall Rigby has been issued in connection with the grand jury's ongoing investigation of whether, in addition to the substantive bank bribery count alleged in the current indictment, the defendant conspired with others to commit the same in violation of 18 U.S.C. § 371."  (Dkt No. 178-1 at 1).  According to the government, there was a need for a "speedy resolution" of Rigby's motion to quash, because the government hoped "to ask the grand jury to consider Rigby's testimony and potentially vote on a superseding indictment in this case as expeditiously as possible," giving the impression Rigby possessed information important to the grand jury's determination.  (*Id*.).

On February 24, 2021, in light of the government's representations, the Court issued an order denying as moot Rigby's motion to quash and the defense's request to be heard on the motion.  (Dkt No. 172).  The Court further directed the defense to submit by May 19, 2021 any motion regarding evidence it believes to have been obtained improperly through the enforcement of the grand jury subpoena served on Rigby.  (*Id*.).

---

[1] The government's letter was unsealed on March 5, 2021, following the return of the superseding indictment.  (*See* Dkt Nos. 177, 178).

On March 5, the government filed a letter advising that the grand jury had returned a superseding indictment the prior day.  (Dkt No. 176).  According to the government, the "only material change between the S1 and the original indictment is the addition of Count Two, which charges Calk with conspiring to commit the same crime (financial institution bribery) with the same persons, based on the same course of events, already charged substantively in Count One."  (*Id*.).  In other words, the superseding indictment does not allege that there were any additional people or events involved in the alleged scheme; it simply characterizes the same set of events and persons referenced in Count One as being part of the conspiracy charged in Count Two.

On March 8, 2021, the defense asked the government to produce, by March 22, any additional 3500 material, including Rigby's grand jury testimony, and any Rule 16 or *Brady* material, including any materials obtained by or presented to the grand jury that returned the superseding indictment.  The government subsequently advised that it would not produce Rigby's transcript, or any other 3500 material, for another two months, until May 11, 2021.  It further advised that it did not have any other discoverable materials to produce, notwithstanding the "ongoing" grand jury investigation referenced in its *ex parte* letter two weeks earlier.

On May 11, 2021, the government finally produced Rigby's grand jury transcript. (*See* Randall Rigby Grand Jury Testimony (attached hereto as Exhibit A to the Declaration of Paul H. Schoeman, Esq. (hereinafter "Schoeman Decl.")).  Per that transcript, Rigby was in the grand jury on March 4, 2021, from 2:15 p.m. until 3:14 p.m.  After asking Rigby about his background and establishing that he had been a director at The Federal Savings Bank between January 2014 and May 2017, the government asked a series of questions about Mr. Calk, the Board's duties, the types of information the Board received, and Rigby's eventual resignation

from the Board.  The questions then focused on how much information Mr. Calk had disclosed to Rigby and the Board regarding the loans with Manafort and Mr. Calk's efforts to serve in the Trump administration.  The government asked about conversations that Rigby and other board members had with Mr. Calk after an article about the Bank's loans to Manafort appeared in *The Wall Street Journal* in March 2017.  Finally, the government asked Rigby whether he been in communication with Mr. Calk's counsel in this matter, and for the substance of those communications.  (*See id*. at Tr. 35:8-36:4).  The government further inquired whether Rigby had spoken to Mr. Calk's attorneys since the government had served him with the subpoena.  (*Id*. at Tr. 36:5-7).

        In short, the government's questions were designed to learn what Rigby had to say about the events charged in the initial indictment, determine whether Rigby would be useful to the government as a trial witness, and find out whether Rigby had been in touch with defense counsel.  Nothing in the questioning even attempted to elicit information about the existence of conspiracy or the identities of co-conspirators, and Rigby had absolutely no knowledge that would bear on those issues.  On the contrary, the questioning was clearly intended to establish that Rigby had no recollection of knowing about the bank's loans to Manafort until the loans were the subject of media reports after the fact.  Many of the questions simply elicited Rigby's hindsight and speculation – what he would have thought had he had known something he does not recall knowing – and would be inadmissible for any proper purpose.  None of the questions appears motivated by a good-faith desire to ascertain or collect evidence regarding the additional count to be charged in the superseding indictment.

        This is further confirmed by the sequence of events immediately following Rigby's appearance in the grand jury.  Twelve minutes after Rigby finished his testimony, the

government called FBI Special Agent James Hilliard as a witness.  (*See* Special Agent James
Hilliard Grand Jury Testimony (Schoeman Decl. Ex. B).  The government used Hilliard as a
summary witness to go through a previously prepared series of PowerPoint slides entitled
"Grand Jury Presentation – Proposed Superseding Indictment."  (*See id*; "Grand Jury
Presentation – Proposed Superseding Indictment" (March 4, 2021) (Schoeman Decl. Ex. C)).
The slides contained no reference to Rigby, and neither Hilliard nor the government made any
reference to Rigby or the information it had obtained from him.  Instead, they focused on the
timeline of the loans and the election, and a particular communication between Manafort, his
son-in-law, and his lawyer.  Hilliard's presentation lasted ten minutes.  (*See* Schoeman Decl. Ex.
B at Tr. 2:2-3, 11:24-25).  That same day, the grand jury returned the superseding indictment.
(*See* Dkt No. 175).

## ARGUMENT

### I.   The Government's Use Of A Grand Jury Subpoena Was Improper

There is a presumption of regularity with regard to grand jury proceedings, but
there are important limits on the government's use of the substantial power those proceedings
allow it to wield.  Here, the government has breached those limits in an effort to gain an
improper advantage at trial.  Its claim that it subpoenaed Rigby primarily in connection with an
"ongoing" conspiracy investigation is plainly a fiction.  The prosecution's obvious purpose, as
revealed by its conduct in the grand jury, was to learn what Rigby's trial testimony would be
after he repeatedly declined to provide that information voluntarily, and to compel disclosure of
any communications between Rigby and defense counsel.

The purpose of the grand jury is to gather and consider evidence that it may
eventually rely on to return an indictment.  The government may not use the grand jury to collect
evidence used to bolster an already pending indictment, or to otherwise help it prepare for trial.

Accordingly, courts have long held that "[i]t is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial." *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26, 29 (2d Cir. 1985) (hereinafter "*Simels*") (internal quotation marks omitted). A court need not take the government's "word that the dominant purpose of the Grand Jury proceedings is proper," where there is an "indicative sequence of events demonstrating an irregularity," *United States v. Raphael*, 786 F. Supp. 355, 358 (S.D.N.Y. 1992). Particularly important is the timing of a subpoena, which the Second Circuit has found "casts significant light on its purposes" in this context. *Simels*, 767 F.3d at 29; *see also United States v. Bergstein*, 302 F. Supp. 3d 580, 582-83 (S.D.N.Y. 2018) (citing *Simels*).

In *Simels*, for example, the Second Circuit held that the government improperly used a grand jury subpoena with the dominant purposes of obtaining evidence for an upcoming trial. In advance of a narcotics trial, the government served a trial subpoena on the defendant's attorney seeking records of payments made by the defendant. After defense counsel objected, the government withdrew the trial subpoena and served instead a grand jury subpoena seeking the same material. Defense counsel again objected, arguing that the subpoena "constituted an abuse of process because its sole or dominant purpose is to obtain evidence for use at trial." *Simels*, 767 F.2d at 28 (internal quotation marks omitted). The district court upheld the subpoena, accepting the government's representation that there was still a grand jury investigation in progress when the subpoena issued and concluding that the grand jury was entitled to seek information relating to forfeiture and co-conspirators. On appeal, the Second Circuit reversed. The court rejected the government's claim that "the grand jury desired Simels' evidence as part of an active investigation," noting that not a single witness was called to the grand jury between the return of the prior indictment and the issuance of the subpoena. *Id*. at 30.

8

Moreover, the fact that the subpoena had first been issued as a trial subpoena, and defended by the government as such, called into question its subsequent claim that, as a grand jury subpoena, it was being served to gather evidence for further investigation. *Id*. at 29. The court concluded that the subpoena should be quashed, noting that in other circumstances "it may be appropriate to enforce the rule against using a grand jury subpoena predominately for trial preparation simply by barring use at trial of evidence obtained pursuant to the subpoena." *Id*. at 30.

Similarly, in *United States v. Bergstein*, the district court considered the sequence of events leading to the issuance of a grand jury subpoena, and rejected the government's claim that it had been properly issued. 302 F. Supp. 3d at 580. More than a year after indictment, and two months prior to the start of a securities-fraud trial, the government served a grand jury subpoena on the defendant's accountant, seeking the defendant's tax returns. The government denied the accountant's request for a 30-day adjournment, requesting instead that he comply within two weeks. After the accountant moved to quash, the government asked to Court to rule promptly, prior to trial. While the government claimed there was an active grand jury investigation into "other conduct and actors," the court found that the timing of the subpoena and the government's refusal to grant an adjournment "points to the government's dominant purpose as an improper effort to obtain trial evidence." *Id*. at 582-83. To thwart that improper purpose and prevent the government from "improperly bolster[ing] its trial evidence," the court ordered that the return date on the subpoena be adjourned until after the trial had concluded. *Id*. at 583 *See Raphael*, 786 F. Supp. at 359 (ordering government to submit grand jury transcripts for *in camera* review to determine dominant purpose of proceedings, where, in advance of a second retrial, government served grand jury subpoenas on defense witnesses from prior trial); *United States v. Kovaleski*, 406 F. Supp. 267, 271 (E.D. Mich. 1976) (precluding government from

calling at trial a witness that it had served with grand jury subpoena, where dominant purpose of subpoena was trial preparation).

As in *Simels* and *Bergstein*, the timing of the Rigby grand jury subpoena is highly suspicious and, standing alone, strongly indicates an ulterior motive. The government had been trying, unsuccessfully, for several months to convince Rigby to speak with it and help it prepare for trial. He was on the government's witness list and the government had served him with three trial subpoenas, one for each of the adjourned dates. Shortly after the Court set a new trial date for June 2021, the government, which had for a third time asked Rigby to meet, again served him with a trial subpoena. Again, Rigby declined. It was only at that point, nearly 20 months into the pendency of this case, with a fourth and firm trial date looming, that the government decided to serve a grand jury subpoena compelling Rigby to answer its questions ahead of trial. The timing of the subpoena in this case is at least as suspicious as in *Simels* and *Bergstein*.

Here, however, there is even more evidence of impropriety. The government has acknowledged that the conspiracy it claims to have been "investigating" is simply a repackaging in different legal wrapping of the same facts and persons involved in the bribery scheme alleged two years ago in Count One. The "investigation" by the grand jury did not involve the collection of new evidence – rather, the government sought a superseding indictment based on the same information and a 10-minute PowerPoint presentation by Special Agent Hilliard that commenced very shortly after Rigby left the grand jury. That presentation had been fully conceived and composed prior to Rigby's testimony, which – contrary to the government's *ex parte* representation to the Court that it hoped "to ask the grand jury to consider Rigby's testimony and potentially vote on a superseding indictment," (Dkt No. 178-1 at 1) – had nothing to do with the superseding indictment. Finally, the substance of the questions the government put to Rigby

makes clear that it was interested principally in his potential trial testimony and any contact he may have had with defense counsel.

All of the relevant indicia point to the impropriety of the Rigby subpoena and the implausibility of the government's claim that it was served to investigate the conspiracy charge. Accordingly, we respectfully submit that the government has improperly used a grand jury subpoena to assist its trial preparations and to gain a litigation advantage over Mr. Calk.

## II.    The Government Should Be Precluded From Calling Rigby As A Trial Witness

To remedy the government's misuse of the grand jury, the Court should preclude the government from calling Rigby as a trial witness and from using any evidence otherwise derived, directly or indirectly, from his grand jury testimony.  In *Simels*, the Second Circuit recognized that precluding the use of evidence improperly obtained by grand jury subpoena can be an appropriate remedy.  *See* 767 F.2d at 30; *see also United States v. Punn*, 737 F.3d 1, 13-14 (2d Cir. 2013) ("As we recognized even in *Simels*, '[i]n some circumstances, it may be appropriate to enforce the rule against using a grand jury subpoena predominantly for trial preparation simply by barring use at trial of evidence obtained pursuant to the subpoena, thereby leaving the grand jury's access to the evidence unimpaired.'" (quoting *Simels*, 767 F.2d at 30)). In *Kovaleski*, the court in fact imposed that remedy, barring the government from calling at trial a witness it had improperly subpoenaed to testify before the grand jury.  *See* 406 F. Supp. at 271.

Such a remedy is particularly appropriate here given the egregiousness of the government's misuse of the grand jury, and as the defense put the government on notice prior to Rigby's testimony that it questioned the propriety of the government's conduct.  Indeed, after the defense sought to be heard on Rigby's motion to quash, the government urged the Court not to hear the motion, stating that, if any abuse had occurred, "the defendant would be able to seek an appropriate remedy before trial."  (Dkt No. 169 at 1).  The government was well aware that it

was risking preclusion of Rigby's testimony; in its letter, it cited *United States v. Punn* for the proposition that "a defendant alleging subpoenas to a third party are an abuse of the grand jury has an opportunity at or before trial to challenge the admissibility of any evidence obtained through enforcement of the allegedly improper grand jury subpoenas."  (*Id.* (internal quotation marks omitted)).  Knowing precisely what it was risking, the government decided nonetheless to press forward with Rigby's testimony.  It should not be permitted now to benefit from that decision.

## CONCLUSION

For the foregoing reasons, Mr. Calk respectfully requests that the Court preclude the government from calling Randall Rigby as a trial witness, or otherwise using at trial any evidence obtained, directly or indirectly, from the grand jury subpoena served on Rigby.


Dated:   New York, New York          Respectfully submitted,
         May 19, 2021

                                     KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                     By: /s/ Paul H. Schoeman
                                         Paul H. Schoeman
                                         Darren A. LaVerne
                                         1177 Avenue of the Americas
                                         New York, NY 10036
                                         Telephone: 212.715.9100

                                     LOEB & LOEB LLP

                                         Jeremy Margolis
                                         321 N. Clark Street
                                         Chicago, IL 60654
                                         Telephone: 312.464.3100

                                     *Attorneys for Defendant Stephen M. Calk*