UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                   :

UNITED STATES OF AMERICA         :

          -v.-                :       S1 19 Cr. 366 (LGS)

STEPHEN M. CALK,               :

                   Defendant.    :

------------------------------------------------------------x

# MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO PRECLUDE THE TESTIMONY OF RANDALL RIGBY

 

AUDREY STRAUSS
United States Attorney
One St. Andrew's Plaza
New York, New York 10007

Paul M. Monteleoni
Hagan Scotten
Alexandra N. Rothman
Assistant United States Attorneys
- Of Counsel -

i

## INTRODUCTION

The Government respectfully submits this opposition to the defendant's motion to preclude retired Lieutenant General Randall Rigby from testifying against him, arguing that General Rigby was improperly served with a grand jury subpoena. The motion should be denied for at least two reasons: *First*, the defendant ignores the fact that the grand jury returned a superseding indictment *after* hearing General Rigby's testimony, and cites no case in which a subpoena that precedes a superseding indictment has been found to be an abuse of the grand jury. *Second*, the questions posed to General Rigby in the grand jury plainly bore on the superseding indictment later returned by the grand jury, further showing a proper use of the grand jury.

## FACTUAL BACKGROUND

On February 12, 2021, the grand jury issued a subpoena (the "Subpoena") to General Rigby to testify about possible violations of 18 U.S.C. §§ 215, 371, and 2. (*See* Ex. A, Monteleoni Aff. ¶ 6). The purpose of this subpoena was to obtain General Rigby's testimony as part of the grand jury's investigation in contemplation of returning a superseding indictment in this case. (*Id.* ¶ 6). After litigation and negotiation, General Rigby testified before the grand jury by video on March 4, 2021. (*Id.* ¶ 7). Later that same day, the grand jury returned the current superseding indictment in this case. (Dkt. 175).

At various points prior to subpoenaing General Rigby, the Government had contemplated seeking a superseding indictment in this case. (Monteleoni Aff. ¶ 3). On or about January 5, 2021, the Government drafted a possible superseding indictment, but decided not to then pursue it with the grand jury, because, among other reasons, the Government was concerned that such an indictment would engender arguments about undue delay of the trial, which was then set for February 17, 2021. (*Id.* ¶ 4; *see* Dkts. 138, 154). After this Court set a June 28, 2021 trial date

on January 26, 2021 (Dkt. 159), the Government again began contemplating investigating and seeking a superseding indictment. (Monteleoni Aff. ¶ 5). The Subpoena was issued as part of that investigation. (*Id.* ¶ 6).

## APPLICABLE LAW

A presumption of regularity and proper purpose attaches to grand jury proceedings. *See, e.g.*, *United States v. Salameh*, 152 F.3d 88, 109 (2d Cir. 1998) ("A grand jury subpoena is presumed to have a proper purpose, and the defendant bears the burden of showing that the grand jury has exceeded its legal powers." (citing *United States v. R. Enters.*, 498 U.S. 292, 300-01 (1991))); *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994); *United States v. Sasso*, 59 F.3d 341, 352 (2d Cir. 1995) ("There is a presumption that a subpoena had a proper purpose."). To overcome this presumption, the burden is on the defendant to show that a grand jury subpoena was issued for an improper purpose. *See, e.g.*, *United States v. Punn*, 737 F.3d 1, 6 (2d Cir. 2013) ("The defendant has the burden of proving that the grand jury subpoenas were issued for an improper purpose, as the subpoenas are otherwise presumed to have a proper purpose."). To satisfy this burden, the defendant "must present particularized proof of an improper purpose." *Id.* (quoting *Salameh*, 152 F.3d at 109).

A "grand jury investigation 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.'" *Branzburg v. Hayes*, 408 U.S. 665, 701 (1972) (quoting *United States v. Stone*, 429 F.2d 138, 140 (2d Cir. 1970)). For that reason, the "grand jury's investigative power does not end when it indicts a defendant. Instead, 'post-indictment action is permitted to . . . prepare superseding indictments against persons already charged.'" *United States v. Meregildo*,

2

876 F. Supp. 2d 445, 448-49 (S.D.N.Y. 2012) (quoting *United States v. Jones*, 129 F.3d 718, 723 (2d Cir. 1997)).  "It is, of course, improper for the Government to use the grand jury for the sole or dominant purpose of preparing for trial under a pending indictment.  But where the grand jury investigation is not primarily motivated by this improper purpose, evidence obtained pursuant to the investigation may be offered at the trial on the initial charges."  *Leung*, 40 F.3d at 581.

## DISCUSSION

There can be no dispute that returning a superseding indictment constitutes a proper use of a grand jury.  Here, the grand jury did return a superseding indictment after subpoenaing General Rigby and receiving his testimony.  This should have obviated the need for the current motion.  (*See* Dkt. 178-1).  Instead, the defendant has nonetheless pursued it, leaving him in the same shoes as other defendants who brought meritless challenges to subpoenas that preceded indictments.  Courts have readily rejected such baseless claims.  *See, e.g.*, *United States v. Jones*, 129 F.3d 718, 723 (2d Cir. 1997) ("By bringing a superseding indictment against Brown and his co-defendants, the government here was not preparing an already pending indictment for trial.  Rather, it was ensuring that it could try at the same time before the same jury all the crimes relating to" the original charges (alterations and internal quotation marks omitted)); *United States v. Vanwort*, 887 F.2d 375, 387 (2d Cir. 1989) (finding "no improper use of the grand jury subpoena" where subpoena issued "prior to the return of the last superseding indictment"); *United States v. Ohle*, 678 F. Supp. 2d 215, 234 (S.D.N.Y. 2010) (rejecting challenge to grand jury subpoenas issued prior to return of superseding indictments).

The defendant's motion relies principally on two cases where the grand jury indicted a defendant, then issued additional subpoenas shortly before trial.  (*See* Mot. 7-9 (discussing *Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26, 29 (2d Cir. 1985) (hereinafter

3

"*Simels*") and *United States v. Bergstein*, 302 F. Supp. 3d 580, 582-83 (S.D.N.Y. 2018))).  But he ignores the glaring distinction that the subpoenas in those cases did not result in superseding indictments.  *See United States v. LaPorta*, 46 F.3d 152, 161 (2d Cir. 1994) (finding *Simels* and other grand jury abuse cases inapposite where grand jury returned superseding indictment).  Indeed, the defendant has not cited any case applying *Simels* where the challenged subpoena led to a superseding indictment.

That distinction is dispositive.  In some cases where the challenged subpoena did not lead to an indictment, courts have found that the subpoena's timing, coupled with other aggravating factors, suggested that it was instead geared toward trial preparation.  *See Simels*, 767 F.2d at 29; *Bergstein*, 302 F. Supp. 3d at 582-83.[1]  To be sure, the lack of a superseding indictment is not sufficient to show suspicious timing.  *See, e.g.*, *Leung*, 40 F.3d at 581-82 (finding post-indictment subpoenas that did not result in additional charges proper); *Salameh*, 152 F.3d at 109-10 (same).  But it does appear to be necessary.  After all, a subpoena that was issued before a grand jury returned an indictment in that case inherently lacks suspicious timing.  *See Vanwort*, 887 F.2d at 387 ("The subpoena was authorized in November 1987, prior to the return of the last superseding indictment in December 1987. Additionally, [the defendant] was not arraigned on the last superseding indictment until January 28, 1988, which was after the

---

[1]  The defendant also cites *United States v. Kovaleski*, 406 F. Supp. 267, 271 (E.D. Mich. 1976).  Calk does not, however, substantively rely on that out-of-circuit case, perhaps because it contradicts Circuit precedent.  *Compare Kovaleski*, 406 F. Supp. at 271 ("The only practical solution is to put the burden on the prosecution to persuade the Court that its 'dominating purpose' is proper.") *with Punn*, 737 F.3d at 6 ("The defendant has the burden of proving that the grand jury subpoenas were issued for an improper purpose, as the subpoenas are otherwise presumed to have a proper purpose.").  In any event, even *Kovaleski* did not appear to involve the return of a superseding indictment following the challenged process.

4

original return date of the subpoena. Thus, there is no justification for an argument that the subpoena was used to prepare an already pending case for trial."); *Ohle*, 678 F.2d at 234 ("Ohle argues that the timing in the instant case is suspicious because Grand Jury subpoenas were issued after the initial Indictment. But what Ohle fails to acknowledge is that subsequent superseding indictments were filed. Since the filing of the Second Superseding Indictment on August 11, 2009, not a single Grand Jury subpoena has been issued.").

Ignoring that difference, the defendant attempts to analogize the timing of the subpoena here to the timing in cases where no indictment was returned. For the reasons just given, the return of an indictment alone renders that effort futile. But it also fails even on its own terms. As the defendant acknowledges, the Government issued General Rigby a trial subpoena before every trial date in this case, and he consistently refused to meet with the Government before trial. (*See* Mot. 10). Yet no grand jury subpoena was issued before the first three trial dates, even though each of those dates was adjourned relatively close to trial—meaning that the Government was perfectly ready to go to trial on the original indictment without ever interviewing General Rigby. (*See* Dkts. 93, 115, and 154 (adjourning previous trial dates approximately two months, six weeks, and five weeks before trial was to commence)). Then in January of this year, this Court issued a much lengthier adjournment of the trial date (*see* Dkts. 154, 159), which had the effect of allowing the grand jury time to investigate and return a superseding indictment without creating any reasonable basis to delay trial. (*See* Monteleoni Aff. ¶ 8).[2] The Subpoena then

---

[2] That the Government did not mention its intention to seek a superseding indictment in court—as Calk now complains (Mot. 3)—has no relevance. The Government has no obligation to announce its intent to seek further charges, and did not disclose its intent to supersede in open court in order to avoid any accusation that it breached Federal Rule of Criminal Procedure 6(e).

5

followed, allowing the grand jury to receive General Rigby's testimony before returning a new indictment, as well as more than three months before trial on that new indictment. There is thus no inference of suspicious timing.

Moreover, those cases in which courts in this Circuit have suspected improper motives have involved suspicious circumstances well beyond issuance of a post-indictment subpoena that did not lead to a superseding indictment. For example, *Simels* involved a grand jury subpoena that "was issued to replace a trial subpoena which had requested the same information," and is thus "easy to distinguish" from other cases involving allegations of abuse of the grand jury, because "the government's improper purpose was patently obvious from the series of events." *United States v. Bin Laden*, 116 F. Supp. 2d 489, 492 (S.D.N.Y. 2000). That such aggravating factors are absent here is an additional reason this motion should fail. *See id.* at 492 (in distinguishing *Simels*, noting that "less compelling forms of circumstantial proof have been dismissed by the court as insufficient evidence of improper government conduct").

The defendant also attempts to manufacture an appearance of impropriety by selectively parsing the 18 U.S.C. § 3500 material that resulted from the grand jury's investigation. To start, the defendant simply ignores questions aimed to elicit evidence that the defendant conspired with Manafort. For example, the Government asked General Rigby whether the defendant had ever discussed Manafort's ability to help him obtain positions with the Trump administration, whether Calk had admitted seeking assistance from Manafort, whether Calk had discussed the appearance

---

(Monteleoni Aff. ¶ 8); *see, e.g.*, *In re Freeman*, 1987 WL 13738, at *1 (S.D.N.Y. July 9, 1987) (rejecting defense argument that discussing proposed superseding indictment in court violated Rule 6(e)).

of impropriety created by the Manafort loans, and whether General Rigby had ever had any independent contact with Manafort. (*See* Def. Ex. A, at 26:11-17; 27:15-28:14; 37:7-9; 37:23-38:2). That these questions did not produce direct evidence of a meeting between the minds of Calk and Manafort does not mean that testimony as a whole did not elicit evidence the Government expects to use to prove the conspiracy charge, and in any event suggests no improper purpose: Because General Rigby had not previously spoken with the Government, the only way to ascertain what he knew was to ask—exactly as one does in an investigation. *See, e.g.*, *R. Enters.*, 498 U.S. at 297 ("As a necessary consequence of its investigatory function, the grand jury paints with a broad brush."). But given that General Rigby was the sole outside member of the Bank's Board of Directors whom the defendant did not identify as a friend, there was good reason to believe he might be willing to share whatever the defendant had confided to the Board about his relationship with Manafort. (*See* Monteleoni Aff. ¶ 6).

The defendant also wrongly suggests that certain questions posed in the grand jury must have been geared toward trial preparation, when logic and law show otherwise. (*See* Mot. 5-6). General Rigby's testimony provided evidence with respect to both the conspiracy and substantive charge. Whether Calk disclosed his relationship with Manafort to the Board, what he said about the Manafort loans after they came under media scrutiny, and whether Calk attempted to discuss this matter with General Rigby after the first indictment (*id.*), all potentially bear on the defendant's consciousness of wrongdoing, a concern relevant to the charges in both the original and superseding indictments. (*See* Dkt. 186 at 41-43 (parties' proposed charge on *mens rea* with respect to substantive count of superseding indictment); *id.* at 50 (same with respect to conspiracy count)). These legitimate grounds for inquiry in connection with a conspiracy charge

7

fall comfortably within the wide latitude afforded the grand jury. *See R. Enters.*, 498 U.S. at 301 (noting that grand jury subpoena duces tecum must be upheld unless "there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation").

The defendant's complaints about Special Agent Hillard's testimony stray even further afield. According to Calk, because Agent Hillard, and the slide presentation he used in aid of his testimony, did not discuss General Rigby's testimony, General Rigby's testimony must not have borne on the superseding indictment. (*See* Mot. 10-11). But there is an obvious reason that Agent Hillard did not discuss General Rigby's testimony: The grand jury had just heard that testimony themselves. Moreover, due to the rules governing grand jury secrecy, Agent Hillard had *not* heard that testimony. *See* Fed R. Crim. P. 6(e). It would have been absurd for Agent Hillard to summarize for the grand jurors testimony that they they had just sat through, but from which the agent himself had been excluded. Calk's attempt to imply an improper purpose from this makes equally little sense.

Finally, the defendant's motion seems to imply that if the Government believed it had sufficient evidence to seek the superseding indictment regardless of what General Rigby said, then subpoenaing him was improper. That misstates the nature of a grand jury investigation. Although mere probable cause suffices to return an indictment, the "grand jury investigation is not fully carried out until every available clue has been run down." *Branzburg*, 408 U .S. 665 at 701 (internal quotation marks omitted). The grand jury was well within its authority, and its duty, to determine what evidence General Rigby possessed on the charges in the superseding indictment it was then investigating. *See Marc Rich & Co. v. United States*, 707 F.2d 663, 665

8

(2d Cir. 1983) ("a grand jury has both the right and the duty to inquire into the existence of possible criminal conduct").

## **CONCLUSION**

For the reasons set forth above, the defendant's motion should be denied.

Dated: New York, New York
June 2, 2021

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By:   /s/
Paul M. Monteleoni
Hagan Scotten
Alexandra N. Rothman
Assistant United States Attorneys
Tel.: (212) 637-2219/2410/2580