

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 9, 2021

**BY ECF AND ELECTRONIC MAIL**

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *United States* v. *Stephen M. Calk*, S1 19 Cr. 366 (LGS)

Dear Judge Schofield:

    The Government respectfully writes, pursuant to the Court's Order of March 25, 2021 (Dkt. 189), to apprise the Court of the parties' proposed redactions to filings in connection with the defendant's motion to preclude the testimony of Randall Rigby. The parties are in agreement that certain designated portions of the exhibits submitted can be unsealed, and that the remainder should be filed under seal.

    Regarding the exhibits to the Declaration of Paul Schoeman, Esq. submitted by the defendant in support of his motion, the parties jointly propose a series of redactions which, as set forth below, pertain to material that has been deemed highly confidential pursuant to the Court's previously entered protective order in this case (Dkt. 14)—and thus are supported by that Order—and, in any event, apply to portions of grand jury testimony and exhibits that the parties do not cite with specificity in their motion papers. The full set of redactions are indicated in the attached document.[1]

    **I.**    **Applicable Law**

    A.    *The Common Law Right of Access*

    The Supreme Court has recognized a common law right of public access to judicial documents. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-98 (1978). However, "the

---

[1] The Government is filing this letter by ECF in accordance with the Court's March 25, 2021 Order. The attached document with the proposed redactions is being emailed to Chambers with a copy of this letter, and the Government respectfully requests that it be maintained under seal for all of the reasons supporting the redactions set forth herein.

mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *United States v. Amodeo* ("*Amodeo I*"), 44 F.3d 141, 145 (2d Cir. 1995). "[T]he item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." *Id.*

The common law right of access attaches with different weight depending on two factors: (a) "the role of the material at issue in the exercise of Article III judicial power" and (b) "the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo* ("*Amodeo II*"), 71 F.3d 1044, 1049 (2d Cir. 1995). "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* "Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Id.* at 1050.

After determining the weight afforded to the presumptive right of access, the common-law right is balanced against countervailing interests favoring secrecy. "[T]he fact that a document is a judicial record does not mean that access to it cannot be restricted." *Amodeo I*, 44 F.3d at 146. Noting that it is difficult to "identify all the factors to be weighed in determining whether access is appropriate," the Supreme Court has further observed that "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 598-99.

The Second Circuit has recognized certain categories of countervailing factors to be balanced against the presumption of access, including: (i) the danger of impairing law enforcement or judicial efficiency and (ii) the need to protect privacy interests. *Amodeo I*, 44 F.3d at 147. The Circuit has identified the law enforcement privilege as an interest worthy of protection, noting that the privilege is designed:

> to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.

*Id.* (citing *In re Dep't of Investigation*, 856 F.2d 481 (2d Cir. 1988)). In addition, the court in *Amodeo II* found that the voluntary cooperation of persons who may want or need confidentiality "is also often essential to judicial efficiency." 71 F.3d at 1050. Thus, "[i]f release [of a judicial document] is likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access." *Id.*

The Second Circuit has also held that "[t]he privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure. . . should weigh heavily in a court's balancing equation." *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987); *see also In re Newsday, Inc.*, 895 F.2d 74, 79-80 (2d Cir. 1990) (holding that the "common law right of access is qualified by recognition of the privacy rights of the persons whose intimate relations may thereby be disclosed"). The Circuit has identified such interests as "a venerable common law

exception to the presumption of access." *Amodeo II*, 71 F.3d at 1051. "In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public." *Id.* (listing "[f]inancial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters" as weighing more heavily against access than conduct affecting a substantial portion of the public); *see also In re Newsday, Inc.*, 895 F.2d at 79 (holding that disclosure of "intimate relations" qualifies the common law right of access). "The nature and degree of injury must also be weighed." *Amodeo II*, 71 F.3d at 1051. Finally, in balancing the qualified right of public access against privacy interests, courts must consider "the sensitivity of the information and the subject," and whether "there is a fair opportunity for the subject to respond to any accusations contained therein." *Id.*

B. *The First Amendment Right of Access*

The First Amendment presumptive right of access applies to civil and criminal proceedings and "protects the public against the government's arbitrary interference with access to important information." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.* ("*NYCTA*"), 684 F.3d 286, 298 (2d Cir. 2012) (internal quotation marks omitted).

The Circuit has applied two different approaches when deciding whether the First Amendment right applies to particular material. The "experience-and-logic" approach asks "both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (internal quotation marks omitted). The second approach—employed when analyzing judicial documents related to judicial proceedings covered by the First Amendment right—asks whether the documents at issue "are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Id.* (internal quotation marks and alteration omitted).

Even when it applies, however, the First Amendment right creates only a presumptive right of access. "What offends the First Amendment is the attempt to [exclude the public] without sufficient justification," *NYCTA*, 684 F.3d at 296, not the simple act of exclusion itself. Thus, the presumptive right of access may be overcome by "specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124.

C. *Redactions*

Once a document is subject to either the common-law or First Amendment right of access, it may still be subject to appropriate redactions. Indeed, "it is proper for a district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document." *Amodeo I*, 44 F.3d at 147; *see also, e.g.*, *In re Providence Journal*, 293 F.3d 1, 15 (1st Cir. 2002) ("Redaction constitutes a time-tested means of minimizing any intrusion on [First Amendment right of access]" (citing *Amodeo I*)).

## II.  Discussion

The Government, with the consent of the defendant, seeks the redaction of the portions of the grand jury material (testimony and an exhibit) that the parties do not refer to, or refer to only in highly general terms, in their motion papers.  As such, the Government respectfully submits that the proposed redactions will have no meaningful impact on the public's ability to understand the performance of the judicial function.

Certain portions of the grand jury testimony are cited specifically by line number, and the parties do not propose to redact those portions.  Instead, the proposed redactions cover those statements that are *not* analyzed or cited with specificity in the parties' motion papers.

As to these statements, the balancing of interests strongly favors redaction in order to protect the integrity of law enforcement and judicial proceedings, as well as to protect the potential witnesses' privacy interests.  As an initial matter, and as noted above, since none of the redacted statements are being relied on with specificity by the parties in their papers, they are arguably not even judicial documents at all, and would likely not constitute judicial documents even under the common-law test were they set forth in physically separate documents from those containing the statements the parties were citing.  *See Amodeo I*, 44 F.3d at 145 ("the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access.").  And the portions not used in the proceedings are by definition not "a necessary corollary of the capacity to attend the relevant proceedings" implicating the First Amendment right of access.  *Lugosch*, 435 F.3d at 120; *see also In re Motion for Civil Contempt by John Doe*, No. 12 Misc. 557 (BMC), 2016 WL 3460368, at *3 (E.D.N.Y. June 22, 2016) (in civil contempt proceeding, noting that under *Lugosch* test "[o]nly the documents necessary to understand the merits" of the proceeding are covered under the First Amendment).[2]  Thus even accepting for the purposes of this submission that these statements are analyzed as judicial documents, they occupy the lowest end of the continuum of relevance to Article III duties and are subject to the weakest presumption of public access.  *See Amodeo II*, 71 F.3d at 1050.

To the extent that some of the redactions concern subjects referred to in general terms by the defense, the public interest in examining the redacted material is nevertheless de minimis.  These statements were referred to by broad subject matter by the defense and without citation to page numbers. (*See, e.g.*, Dkt. 191 at 5-6 (describing general subject matter of testimony, not citing page numbers); *id.* at 6-7 (same)).[3]  Given that the parties only sought the Court's consideration of these materials in such general terms, the examination of the particulars of testimony will do little to shed light on the judicial function.  This is doubly so given the lack of page number citations to the redacted material; it is hard to see how pages of grand jury testimony to which the

---

[2] Even if the documents were considered within the First Amendment's protection, redaction from them of information *not* intended to be relied on in the proceedings would not in any way impair First Amendment interests since it would not diminish public access to the proceedings.

[3] The Government is not seeking to seal the page and line numbers cited on page 6 and 7 of the defendant's memorandum of law.

parties did not draw the Court's attention could be necessary to understand the Court's exercise of the judicial function in deciding this motion.

Moreover, the public interest in disclosure of these statements is further diminished by the nature of the defendant's motion, which is not dispositive but instead far more narrow in scope, concerning the requested suppression of the results of a single subpoena and preclusion of the testimony of a single witness. While a dispositive motion (which the defendant did not file) is entitled to a heightened presumption of publicity, motions relating to the Court's control of evidence (i.e., precisely the motions at issue here) are entitled only to a lower presumption of public access. *See Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019) ("Although a court's authority to oversee discovery and control the evidence introduced at trial surely constitutes an exercise of judicial power, we note that this authority is ancillary to the court's core role in adjudicating a case. Accordingly, the presumption of public access in filings submitted in connection with discovery disputes or motions *in limine* is somewhat lower than the presumption applied to material introduced at trial, or in connection with dispositive motions such as motions for dismissal or summary judgment.").

Against this minimal interest in public access, the interests in redaction are substantial. As all of these materials were put before and actually considered by the grand jury, the longstanding interest in grand jury secrecy alone provides overwhelming reason for redaction. *See, e.g.*, *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 n.9 (1979) ("Since the 17th century, grand jury proceedings have been closed to the public; and records of such proceedings have been kept from the public eye. The rule of grand jury secrecy . . . is an integral part of our criminal justice system."). And in the shadow of an upcoming trial, any potential witness statement concerning matters that may be the subject of trial may influence or affect the testimony of other witnesses to those facts, affect the jury pool, or otherwise prejudice the course of the trial. *See, e.g.*, *United States v. Cohen*, 366 F. Supp. 3d 612, 623 (S.D.N.Y. 2019) (noting that information related to "the full volume and nature of the evidence gathered thus far, and the sources of information provided to the Government," could if disclosed in an ongoing investigation "enable uncharged individuals to coordinate or tailor their testimony," citing *In re Sealed Search Warrants Issued June 4 and 5, 2008*, No. 08 Misc. 208 (DRH), 2008 WL 5667021, at *4 (N.D.N.Y. July 14, 2008)). This is why it is common to seal such details about the progress of ongoing investigations, and the same rationale applies to the details of potential witness statements in advance of trial. *See, e.g.*, *Cohen*, 366 F. Supp. 3d at 623; *In re Sealed Search Warrants*, 2008 WL 5667021, at *4.

The balance of interests thus strongly favors redaction of this limited grand jury material. The Government does not seek to seal or redact testimony actually relied on by the parties with specificity in their motion papers. But as to the other testimony and documentary material—i.e., the material subject to the proposed redactions—the interests in grand jury secrecy and the integrity of judicial proceedings should not be compromised simply because they were referred to in the broadest of terms without even citation to any relevant page numbers.

Accordingly, the Government respectfully requests, with the consent of the defendant, that the proposed redactions in the attached document be approved.

>Respectfully submitted,
>
>AUDREY STRAUSS
>United States Attorney
>
>by: /s/ Paul M. Monteleoni
>Paul M. Monteleoni
>Hagan Scotten
>Alexandra N. Rothman
>Assistant United States Attorneys
>(212) 637-2219/2410/2580

cc: Paul H. Schoeman, Esq.
*Counsel for Stephen M. Calk*