

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 14, 2021

**BY ECF AND ELECTRONIC MAIL**

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

     Re:    *United States v. Stephen M. Calk*, S1 19 Cr. 366 (LGS)

Dear Judge Schofield:

     The Government submits this letter following the June 10, 2021 final pretrial conference (the "Conference"), concerning (a) GXs 610 and 611, which the Government has redacted in light of the Court's ruling, and (b) GX 285, on which the Court did not rule.

     With respect to GXs 610 and 611, the Government submits this letter to respectfully request that the Court clarify its ruling regarding their admissibility in light of proposed redactions made by the Government. While the Government understands the Court's ruling that certain statements of Anthony Scaramucci in these exhibits are hearsay and thus inadmissible, the Government seeks to admit redacted versions of GX 610 and 611, which contain no hearsay of Scaramucci and are otherwise admissible and highly probative of the charged quid pro quo between Paul Manafort and Stephen Calk. As redacted, the exhibits consist entirely of (a) questions, requests or commands, which are not assertions and thus not hearsay; (b) one statement by Scaramucci offered for its nonhearsay effect on the state of mind of Manafort and Calk; and (c) one statement by Manafort offered as a coconspirator statement. Thus, the Government respectfully requests that the Court rule that GXs 610 and 611, as redacted, are admissible—conditionally as to the statement by Manafort—once authenticated by Scaramucci.

     With respect to GX 285, on which the Court did not rule, the Government writes to seek admission of this exhibit due to the direct supervisory agency relationship between Calk, the defendant, and Brennan, the declarant, on the subject of the declarant's statements.

     **I.**     **GXs 610 and 611**

     A.   *Background*

     GXs 610 and 611 consist of a series of text messages exchanged between Scaramucci and Manafort beginning on December 14, 2016, and continuing until December 27, 2016. Manafort's

words appear on the left side of the screen in gray bubbles, while Scaramucci's words appear on the right side of the screen in blue bubbles. GX 610 is a continuation of the text message chain in GX 611, with the last page of GX 611 overlapping with the first page of GX 610.[1] At trial, the Government intends to call Scaramucci to authenticate these exhibits and to explain, among other things, that Manafort asked him to get Calk an interview for the position of Secretary of the Army, and that he complied with the request despite believing that Calk was not qualified for the position.

In the parties' joint letter with objections to proposed exhibits, the defense objected to the admissibility of both exhibits on authenticity and hearsay grounds. The Government responded that Scaramucci would authenticate the exhibits and that the exhibits were being offered for non-hearsay purposes. The Government further noted, in a footnote, that Manafort's statements would also be admissible as co-conspirator statements. (*See* Dkt. 197 at 7-8 & n.8).

At the Conference, the Court ruled that GX 610 was admissible because it contained no statements other than those by Calk, which were admissible, but that Scaramucci's statements in GX 611 were hearsay and thus inadmissible. (Tr. 47-48).[2] The following day, the Court issued an order correcting the Court's oral ruling and holding that GX 610 was excluded based on the defendant's hearsay objection. (Dkt. 207). The Government now seeks clarification of these rulings in light of the Government's proposed redactions to GXs 610 and 611.

B. *Discussion*

The Government respectfully submits that, as redacted to give effect to the Court's order at the Conference, GXs 610 and 611 are admissible and highly probative of the quid pro quo between Calk and Manafort.

1. Texts from Scaramucci

Scaramucci's texts in the redacted version of GX 611 are either questions (which are not hearsay), or, in one case, a statement with a paradigm nonhearsay use, and as such should be admitted, with a limiting instruction if requested. At the Conference, the Court ruled that the statements of Scaramucci "are hearsay," Tr. at 47, and that they could be used "to refresh recollection or past recollection recorded," *id.* at 47-48. The Government, in compliance with this

---

[1] The Government has now redacted the first page of GX 610, so that the messages in GX 611 (with time stamps) appear only once.

[2] At the Conference, the Court admitted "Exhibit 610," on the grounds that it contained "no affirmative statement except by Mr. Calk." (Tr. 47). The Government believes that the Court may have in fact intended this ruling to apply to GX 609, because GX 609 contains statements by Calk, whereas GX 610 does not, and the Court subsequently issued an order addressing the statements by declarants other than Calk in GX 610 (*See* Dkt. 207). The Government therefore believes that the Court has admitted GX 609 but excluded the unredacted version of GX 610. Accordingly, the Government has redacted GX 610 to give effect to the Court's ruling, as discussed in this letter, and is making unrelated redactions to GX 609 (in order to remove material from a later time period) and will include it in the full set of exhibits submitted on June 17, 2021.

ruling, will not offer any Scaramucci statements for their truth, but respectfully seeks clarification as to whether the nonhearsay use of proving Manafort and Calk's state of mind is another permissible use for the statements of Scaramucci, in addition to those the Court mentioned. As set forth below, the Government respectfully submits that the redacted GXs 610 and 611 can be permissibly admitted without offering any Scaramucci statements for a hearsay purpose.

Going text by text, Scaramucci writes "Would he [referring to Calk] take under. Secretary of the Army? Are we double sure[?]" This is a question and not hearsay. *See United States v. Oguns*, 921 F.2d 442, 449 (2d Cir. 1990) ("An inquiry is not an 'assertion,' and accordingly is not and cannot be a hearsay statement.").

Scaramucci then writes "If so, I think we can get it done[.]" This statement is not being offered for the truth that Scaramucci could actually get Calk the position (and the Government has no objection to a limiting instruction to that effect). Indeed, the evidence at trial will indicate that it was not in fact true that Scaramucci believed he could get Calk the position (although the evidence, separate from this text, will show that Scaramucci did get Calk an interview for it). Rather, this statement is being offered for its effect on Manafort and, as discussed below, Calk. Given that Manafort is a coconspirator whose state of mind the Government must prove as to Count Two, the use of the statement to show its effect on Manafort's state of mind alone is itself a nonhearsay use. *See, e.g.*, *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("[A] statement offered to show its effect on the listener is not hearsay."); *McEvoy v. Fairfield Univ.*, 2019 WL 5579375, at *2 n.2 (D. Conn. Oct. 29, 2019) (finding nonhearsay use for statement by nonparty to show its effect on nonparty where that individual's state of mind was relevant).

Beyond the statement's clear relevance to showing Manafort's state of mind, there is compelling evidence that it was transmitted to Calk and is thus admissible for the additional nonhearsay use of showing its effect on Calk. *See Dupree*, 706 F.3d at 136. The evidence at trial will show that, within minutes of Scaramucci sending this text message to Manafort, Manafort spoke by phone with Calk for 11 minutes and 25 seconds. (*See* GX 901-A-14).[3] Then, minutes after that phone call, Manafort responded to Scaramucci, "Yes he will def take it." (GX 611 at 3 (8:15 PM text)).[4] In this context, the inference that the messages "Would he [referring to Calk] take under. Secretary of the Army? Are we double sure[?] If so I think we can get it done" were conveyed to Calk in this phone conversation, producing Manafort's response that "he will def take it," is compelling.[5] Accordingly, the message "If so I think we can get it done" is straightforwardly admissible for its effect on Calk.

---

[3] When converted from UTC to EST—which was 5 hours behind UTC in December 2016—the second line, or item 103655, shows a 12/21/16 7:49 PM ET call from Calk to Manafort lasting 11 minutes and 25 seconds. This call will be explained to the jury through a summary witness, and through demonstratives to be shared with the defense on June 14, in accordance with the Court's ruling at the Conference.

[4] The Government addresses the admissibility of this statement in section I.B.2, below.

[5] It is certainly more than "sufficient to support a finding that" this message was communicated to Calk, which is the standard for relevance under Rule 104(b).

Indeed, the effect this statement had on Calk was considerable, and the significance of these messages to his state of mind is accordingly great, as shown by further evidence after the texts. The evidence at trial will show that Calk and Manafort also discussed The Federal Saving Bank's pending loan to Manafort for the 377 Union Street property during the same December 21, 2016 phone call. The evidence will show that, *prior* to these texts on the evening of December 21, 2016, it was unclear if the Bank would make the second loan to Manafort, and that Calk was resisting Manafort's attorney's attempts to schedule a closing. (*See* GX 295 (Calk to Manafort's attorney at 1:35 PM EST: "[W]e are in no way scheduling a closing until this loan is fully structured, underwritten and approved.")). However, on December 22, 2016—*i.e.*, *after* Scaramucci's nonhearsay statement and the 11 minute and 25 second phone call on the evening of December 21, in which Manafort and Calk discussed the position of Under Secretary of the Army and Manafort conveyed to Calk the words of Scaramucci that "I think we can get it done"—Calk emailed the term sheet for the loan to Manafort, with the message "Attached is the term sheet we discussed *last evening*," (GX 299 (emphasis added)), a reference to that very phone call.[6] Given that Calk sent this term sheet with his first unequivocal offer to extend the $6.5 million loan (GX 299 ("Our plan is to close this next week if I get this executed document back today by 5pm CST")), the jury is entitled to conclude that the effect of Scaramucci's statement on Calk was great, pushing him to finally commit to the approval of the $6.5 million loan. Thus, Scaramucci's texts in GX 611—completely apart from the truth of any assertions within them—are important proof that Calk approved the second loan to Manafort because Calk believed he would be considered for the Under Secretary of the Army position.

Should the Court disagree that Scaramucci's statement may be admitted for its nonhearsay effect on Manafort and Calk, the Government respectfully requests, in the alternative, that it be permitted to redact Scaramucci's statement (*i.e.*, "If so I think we can get it done") subject to its use to refresh recollection or as past recollection recorded, but leave the remainder of Scaramucci's question to Manafort, and, for the reasons outlined in this letter, admit the balance of the texts in the redacted GXs 610 and 611.

Accordingly, Scaramucci's messages to Manafort are either questions or, in the case of the one statement the Government offers, a statement with a textbook nonhearsay purpose that is highly important in the context of the other evidence in the case.

2. Texts from Manafort

Manafort's texts consist of a number of nonassertions, and one statement that is admissible (conditionally at this time) as a coconspirator statement. The bulk of Manafort's texts consist of questions or commands and thus are not hearsay. (E.g., "Call me on this number;" "Pls call me tonight;" "Stephen Calk Cell [] Undersecretary of Army…;" "Any progress on Stephen Calk?" "Let me know if I need to do anything on him;" "Is Steve Gu g to be called in to meet").

The only statement by Manafort being offered is his statement to Scaramucci that, "Yes he will def take it," referring to Calk's willingness to accept the position of Under Secretary of the

---

[6] The evidence will show the only other call between Manafort and Calk that evening was a 28-second phone call prior to the 11 minute and 25 second call at issue.

Army, a step down from the position of Secretary of the Army, which he originally wanted. This statement is admissible as a co-conspirator statement under Rule 801(d)(2)(E), consistent with the Court's ruling at the Conference with respect to GX 1152. (Tr. 62).[7] The first two requirements for co-conspirator statements are easily satisfied—the Court has conditionally accepted the proffered evidence, much of which is now admitted, that Manafort was a co-conspirator of Calk's, and this statement, made on December 21, 2016, was made during the time period of the conspiracy. The third requirement—that the statement be made in furtherance of the conspiracy— is satisfied for largely the same reasons that Manafort's forwarding of the text messages from Calk to Baldinger and Yohai in GX 1152 was in furtherance of the conspiracy, as even defense counsel has acknowledged. (*See* Tr. at 61 (defense counsel acknowledging that a statement by Manafort might "actually further the quid pro quo" if it "went to somebody on the political side, Calk for Army secretary.")). By telling Scaramucci that Calk would accept the position of Under Secretary of the Army, Manafort was holding up his end of the bargain, and thus furthering the conspiracy, by getting Calk an interview for the position he wanted. (*See* Tr. 57 (citing *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994))). Thus, this statement should also be conditionally admitted at trial as a co-conspirator statement.

II.     **GX 285**

At the Conference, the Court did not rule on the admissibility of GX 285, because that exhibit was a voicemail to which the Court's attention had not previously been directed. (Tr. 45-46). The Government therefore now respectfully submits that consistent with the Court's ruling at the Conference, this exhibit should also be admitted.[8]

GX 285 is an email notification to Javier Ubarri, the Bank's president, that he had received a voicemail. GX 285-1[9] is the attached voicemail to Ubarri from Jim Brennan, in which Brennan states:

---

[7] This statement would also be admissible for the nonhearsay use of proving Manafort and Calk's state of mind, by providing evidence of what was discussed in the 11 minute and 25 second phone call discussed in Section I.B.1, above. *See, e.g.*, *Smith v. Duncan*, 411 F.3d 340, 346 n.4 (2d Cir. 2005) ("'The mere utterance of a statement, without regard to its truth, may indicate circumstantially the state of mind…of the declarant' and is not hearsay…." (citation omitted)).

[8] At the Conference, the Government indicated that GX 285 did not contain assertions and was not offered for its truth. (Tr. 45-46). Upon re-examining GX 285-1, which is the substantive portion of the exhibit, the Government agrees that it contains assertions, as was originally indicated by its placement in the joint letter. (*See* Dkt. 197, at 4).

[9] In its May 6, 2021 production to the Court, the Government included this voice message as "Attachment A.wav" within a folder titled "285" within the "100 Series – TFSB Emails" folder. Subsequently, in order to avoid confusion, the Government has reorganized certain exhibits to dispense with these internal folders, and has thus included GX 285 and GX 285-1 as exhibits within the "100 to 300 Series – TFSB Emails" folder. The Government is providing to chambers with this letter copies of GXs 285 and 285-1, along with the proposed redacted GXs 610 and 611. The

> Hey Javier, it's Jim. Give me a call, uh, at 6081. I need to go over some stuff on Manafort and Yohai. Um, I'll try and reach out to Jim Norini, the other member of the loan committee that's apparently not party to these conversations. Talk to you later, bye.

The Bank's loan committee (sometimes also referred to as the credit committee) had three members: Ubarri, Norini, and the defendant. The defendant was the senior, presiding member of the committee. Brennan served as the committee's secretary, meaning that he had no vote, but organized the committee's business, kept its members informed, and signed various documents, such as the credit memos compiled after the committee decided to issue a loan.

The Government offers this message to show that Calk was closely involved with the Manafort loans, to a degree that the other two loan committee members were not. Because Brennan is calling one member of the committee, Ubarri, to inform him about the Manafort loans, and describes a second member of the committee, Norini, as "the other member of the loan committee that's apparently not party" to conversations about the loans, the necessary implication is that only Calk—the third and final member of the committee—was involved in the conversations about the Manafort loans.

At the Conference, this Court admitted the statements of Dennis Raico against the defendant under Rule 801(d)(2)(D), based on a finding that Raico acted as Calk's agent on the general subject matter of Raico's statements. (Tr. 43-44). Brennan is similarly Calk's agent with respect to the subject of this conversation, the loan committee's consideration of the Manafort loans. Brennan is the committee's secretary and Calk its presiding member, as Brennan and other witnesses will testify. Here, Brennan is seeking to apprise the other members of the committee of information already known to Calk and Brennan.

Moreover, Calk closely and personally supervised Brennan, including in the extension of the Manafort loans, as shown by a number of exhibits admitted by the Court. (*See, e.g.*, GX 236 (Calk telling Brennan he had erred in documenting the interest rate for the first loan to Manafort); GX 318 (Calk telling Brennan to delay funding the second loan to Manafort until "Manafort advises"); GX 248 (Calk telling Brennan he is personally responsible for ensuring the Manafort loans are fully documented)). This evidence more than satisfies even the most restrictive standards urged by the defense in the joint letter for the application of this hearsay exception. (See Dkt. 197 at 2 n.2 (defense citing cases acknowledging hearsay exception applies where "the declarant 'is directly responsible to the defendant,' 'reports directly to the defendant who owns an overwhelming majority of stock in the company,' 'was hired by the defendant and worked on matters in which the defendant was actively involved,' or was directed by the defendant 'on a continuing basis.'"); *see also id.* (defense urging consideration of cases acknowledging hearsay exception applies where "the defendant 'controlled the daily performance' of the employee or 'directed [the employee's] work on a continuing basis.'")). Thus, given Calk's close and personal

---

Government will submit a complete hyperlinked set of the updated and reorganized exhibits, along with updated exhibit lists, on Thursday June 17, 2021.

supervision of Brennan on the subject matter of the voice message, this message is admissible under Rule 801(d)(2)(D).

\* \* \*

In sum, the Government has redacted the hearsay statements of Scaramucci from GX 610 and 611, consistent with the Court's rulings. With those redactions, the Government respectfully submits that the remaining messages within GX 611 and 610 are admissible either as non-hearsay, or as a co-conspirator statement by Manafort, are highly probative of the charged quid pro quo, and thus should be admitted at trial, once authenticated by Scaramucci. The Government respectfully submits that the statements by Brennan in GX 285 are admissible under Rule 801(d)(2)(D) given the agency relationship between Calk and Brennan on the subject matter of Brennan's statements.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

by: s/   Alexandra N. Rothman
Paul M. Monteleoni
Hagan Scotten
Alexandra N. Rothman
Assistant United States Attorneys
(212) 637-2219/2410/2580