**Kramer Levin**

Paul H. Schoeman
Partner
T 212.715.9264
F 212.715.8064
PSchoeman@kramerlevin.com

1177 Avenue of the Americas
New York, NY 10036
T 212.715.9100
F 212.715.8000

**June 18, 2021**

**Via ECF**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    <u>United States v. Stephen M. Calk</u>, S1 19 Cr. 366 (LGS)

Dear Judge Schofield:

      We respectfully submit this letter to request a conference with the Court on Monday, June 21, 2021, in advance of jury selection scheduled for the following day. The defense requests this conference to address the highly improper and prejudicial "summary witness" testimony that the government apparently intends to elicit from one of its very first witnesses. As of the filing of this letter, the government has refused multiple defense requests to disclose the order of its witnesses (or even which witnesses it expects to testify at the outset of trial), but the defense believes, based on recent disclosures of exhibits, that the government may intend to call its improper summary witness as early as the first day of trial.

      The Court's pre-trial procedures were clearly intended to prevent unfair surprises. The government was required to provide its exhibit and witness lists to the defense on January 13, 2021, five weeks before the then-existing trial date. *See* Dkt. No. 95. The defense was required to disclose its list two weeks later. *See id.* On March 25, 2021, the Court ordered the parties to provide their exhibit lists to the Court and to indicate each side's objections. The Court then ordered the parties to engage in the meticulous process of conferring on all their objections and submitting a lengthy joint letter briefing evidentiary objections. *See* Dkt. No. 185. At the pre-trial conference on June 10, the Court addressed the parties' objections, ruling on most and reserving on some.

      The government did not provide the defense with any summary charts prior to the pre-trial conference, although it had referenced a summary witness on its witness list. The only indication of the content of that witness's testimony came in response to the defense's objection to the blanket admission of thousands of pages of telephone records. Dkt. No. 197 at 9. The government said there merely that it "will prepare a chart summarizing the relevant portion of these records . . . as is routinely done under Federal Rule of Evidence 1006." *Id.* At the June 10, 2021, pre-trial conference, the Court inquired as to the status of the charts, to which the government said:

      MR. MONTELEONI: This is Paul Monteleoni for the
      government. We have a draft of the bulk of the summary chart.

The Honorable Lorna G. Schofield
June 18, 2021



> There's a portion of it that we are still verifying and cross-checking so we're not producing a serial amount of drafts, but we think it is going to be a manageable set of things to check, essentially consisting of several dozen phone calls, under a hundred phone calls, and then just a count of the total number of phone calls and certain date ranges. So we hope to provide it within a couple of days, but we don't think these are going to be incredibly voluminous.

Tr. 48:14-23. The government promised to produce the summary charts on the following Monday, June 13, 2021. It did so that evening. Those charts were essentially what they were expected to be, a few pages summarizing telephone records as well as a chart of the terms of the Manafort loans. However, in its cover email, the government stated, for the first time, that the government was "working on a few timeline summary exhibits." Those exhibits were produced yesterday.

      The government has totally sandbagged the defense. The purported "timeline summary exhibits" are in no way "summary charts" within the meaning of Federal Rule of Evidence 1006. They are eight highly detailed charts and timelines presenting a substantial portion of the documentary evidence in the case. (The exhibits, which are marked GX 2104 – 2111, are included in the set of exhibits that the government is providing to the Court). They are exactly the kind one might expect to see only in a closing argument (provided that closing argument was permitted to be several hours long). Recently disclosed 3500 material reveals that the charts were created by the prosecutors themselves and merely checked for accuracy by an FBI Agent who will be the government's "summary witness." The government apparently intends to call the agent as one of its first witnesses, essentially to present the government's version of all the facts in the case even before the first percipient witness is called. The government's intention appears to be to present each timeline and then walk through the entries and potentially have the agent read from exhibits that the charts reference. Since the agent has no personal knowledge of any of the facts of the case, the agent will simply be used as a stage prop to assist the government in a pseudo examination in which, in substance, the only question that the government will be asking is, "What does the prosecution want the jury know? What else? What else?" This is closing argument masquerading as testimony.

      The unfair prejudice to the defense is compounded by the fact that the witness is an FBI agent. Having a federal agent present the government's summation from the witness stand improperly conveys to the jury that the FBI has concluded that the facts the government elicits are the truth and that the FBI has reached the conclusion that the defendant is guilty – thus making the rest of the trial superfluous. The use of a government agent as "overview" witness of this kind is highly improper and prejudicial to the defense. *See United States v. Flores-De-Jesus*, 569 F.3d 8, 18 (1st Cir. 2009) ("The overview testimony of a law enforcement official is not simply a repetition (at best) of other evidence. It is also, in effect, an endorsement of the veracity of the testimony that will follow."); *United States v. Moore*, 651 F.3d 30, 56 (D.C. Cir. 2011) (noting the danger that "the jury might treat the summary evidence as additional or corroborative evidence that unfairly strengthens the government's case" and that "a summary witness might permit the government to have an extra closing argument"); *see also United States v. Garcia*,

The Honorable Lorna G. Schofield
June 18, 2021



413 F.3d 201, 214 (2d Cir. 2005) ("[I]t is generally viewed as 'improper . . . for a party to open its case with an overview witness who summarizes evidence that has not yet been presented to the jury.'" (quoting 6 Weinstein's Federal Evidence § 1006.04[3] (2d ed. 2004))).

The Federal Rules of Evidence do not permit the government to do what it intends to do here. Summary witnesses, although not specifically provided for in the rules, are often permitted to testify about summaries that comply with Federal Rule of Evidence 1006. Rule 1006, permits the use of "a summary chart or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Although the underlying documents may be introduced into evidence, the summary is offered as a substitute for the underlying documents because the documents themselves are too difficult to review. *See Walker v. Time Life Films, Inc.*, 784 F.2d 44, 52 (2d Cir. 1986) ("The Rule is designed to deal with the problem of writings, recordings, or photographs which cannot conveniently be examined in court by allowing them to be presented in chart or summary form." (internal quotation marks and alteration omitted)); *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998) ("[G]iven Rule 1006's provision that the underlying documents need not themselves be in evidence . . . it is plain that a summary admitted under Rule 1006 is itself the evidence that the trier of fact should consider."). The government's use of summaries to present evidence from the thousands of pages of telephone records is an appropriate and paradigmatic use of the rule.

The timelines and charts that the government has prepared to marshal its evidence are not summaries of documents too voluminous to be examined in Court. On the contrary, it is everyone's expectation that all of the exhibits referenced on the timelines, which are mostly emails from percipient witnesses, will be extensively examined in Court during witness direct and cross examination. That is what the trial will consist of. Having an agent at the start of the case organize and read to the jury excerpts from emails and documents that will be the subject of subsequent witness examinations is totally contrary to the plain text of Rule 1006. *See United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997) ("We therefore believe that Fed. R. Evid. 1006 does not allow for the admission of a summary such as the one contested by [defendant], that is, one that was prepared by a lawyer trying the case and that restates and distills other properly admitted exhibits. In fact, we believe that such a summary is a written argument.").

Nor can the testimony of a summary witness be bootstrapped into evidence on the theory that the charts are demonstratives that will aid the jury in understanding the witness's testimony. That is the basis on which timelines, floor plans, glossaries, diagrams and other such matter can be shown to the jury during witness testimony (but are not admitted into evidence). Here, however, the charts are not an aid to the witness's otherwise admissible testimony. The testimony is an aid to presenting the prosecutors' otherwise inadmissible demonstratives. Since the witness has no personal knowledge, there is nothing that the witness can say other than that the events selected by the prosecution appear on the chart or that the exhibits favored by the prosecutor are in evidence – which is what a prosecutor does himself or herself in closing argument.

The Honorable Lorna G. Schofield
June 18, 2021



   The prosecution's attempt to start the trial by marshalling email evidence in the guise of a summary witness is highly unusual and, in the defense's collective experience, unprecedented.  In most trials, it would be impossible for the government to attempt a quasi-summation at the beginning of trial because emails and documents referenced in the charts would not come into evidence until admitted in connection with the testimony of a witness with personal knowledge who was subject to cross examination.  The use of summation demonstratives during witness testimony would still be improper at the end of a trial, but it is a tactic the government is less likely to pursue because it risks boring the jury with the cumulative presentation of evidence and the inherent bias of the government's summary would be more transparent based on the facts already elicited from percipient witnesses.

   Here, the government is taking advantage of the Court's pre-trial procedures in order to start its case with a summary of all of the prosecution's evidence.  Had the defense been aware that the government was planning to subvert the trial process in this way, its approach to the admissibility of exhibits would have been different.  If the government had produced these purported summary exhibits in January, when they were due to be produced, or at any point prior to the pre-trial conference, the defense would have raised an objection with the Court.  The defense would also have objected to the pre-admission of exhibits prior to the testimony of a witness with personal knowledge or other adequate evidentiary foundation.  The defense had understood that the Court's pre-trial procedures were intended to streamline actual witness examinations and limit sidebars by anticipating the way that evidentiary issues would play out during the trial.  We did not believe, and still do not believe, that the Court intended to facilitate the presentation of every fact that the government wants to highlight through an FBI agent on the first day of trial.

   Finally, we note that the government's belatedly produced "summary" timelines are dense and detailed.  The defense has not had adequate time to review them, check them for accuracy, and prepare an effective cross-examination if this witness is in fact to testify during the first week of trial.

   For the foregoing reasons, we respectfully request a conference with the Court on Monday, June 21, so that the status of the government's summary witness can be addressed prior to opening statements.

Respectfully submitted,

/s/ Paul H. Schoeman

Paul H. Schoeman
Darren A. LaVerne

cc: All counsel (via ECF)