

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 18, 2021

**BY ECF**
The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

   Re: *United States v. Stephen M. Calk*, S1 19 Cr. 366 (LGS)

Dear Judge Schofield:

  Pursuant to the Court's order to raise any evidentiary issues at least two days in advance of presenting the evidence in question at trial (*See* June 10, 2021 Tr. at 49), the Government respectfully submits this briefing to (i) admit GXs 701, 702, 704, and 719; and (ii) preclude evidence or argument regarding the post-hoc performance of the loans made to Paul Manafort.

  **I.** **GXs 701, 702, 704, and 719**

  During the testimony of Blake Paulson, the Government intends to offer Government Exhibits 701, 702, 704, and 719, which are publications that the Office of the Comptroller of the Currency ("OCC") sent to bank CEOs, including the defendant. Specifically, GX 702 is a portion of the OCC publication on insider activities that was current at the time of the charged conduct; GX 701 is the cover letter showing that the OCC distributed GX 702, using an emailed hyperlink, to bank CEOs, among other groups; GX 704 is a portion of the OCC publication on commercial real estate lending at the time of the charged conduct; and GX 719 is the cover letter showing that the OCC similarly distributed GX 704 to people in the defendant's position, among others. Each of these exhibits were sent to the defendant before he engaged in the charged conduct and is directly relevant to his knowledge and intent in committing the charged offenses. The defendant has indicated that he objects to these exhibits under Federal Rules of Evidence 402 and 403. (*See* Dkt. 184-1 at 10-11).[1]

  These exhibits are relevant and more probative than unfairly prejudicial because they demonstrate that the OCC informed the defendant of certain basic principles of banking, such as

---

[1]  The defendant's objections to these exhibits were noted in the parties' May 6, 2021 submissions to the Court, but the Government did not request a ruling at that time because it was uncertain whether it would offer them, and thus did not wish to seek a ruling that might be unnecessary. (*See* Dkt. 184-1, at 1, 10-11). Consistent with the Court's guidance, the Government will brief the admissibility of any other exhibits in this category at least two business days before offering them, absent unforeseen circumstances.

that officers and directors of banks—categories which include the defendant—must report any conflict of interest in a loan to the board of directors and then abstain from decision-making about the loan (GX 702), and that lending based on real estate collateral alone is not a sound banking practice (GX 704).  The Court has already ruled that Paulson may testify on these subjects, as probative of the defendant's intent.  (*See* Dkt. 133 at 6-7 (Government proffer of Paulson's testimony); Jan. 26, 2021 Tr. 29-30 (overruling defense objections to Paulson's testimony)).  The exhibits here are simply original OCC sources that reflect the principles the Court already found relevant and probative.

These publications are particularly useful to the jury because they were *actually* sent to the defendant before he embarked on the charged conduct:  In admitting Paulson's testimony, the Court accepted "the government's argument that the regulations in question are not trivial and therefore Mr. Calk should have or likely would have known about them."  (*Id.* at 30).  That the OCC actually sent publications to Calk containing the relevant regulations and standards makes them particularly probative of Calk's intent.  *See, e.g.*, *United States v. Parse*, 789 F.3d 83, 122 (2d Cir. 2015) (finding evidence of defendant's intent sufficient based on, among other things, defendant's receipt of opinion letter explaining that conduct he later undertook was inconsistent with IRS rules); *United States v. Berry*, 683 F.3d 1015, 1021-22 (9th Cir. 2012) (defendant "indisputably was informed" of his legal obligations by mailings he received from Social Security Administration); *United States v. Sinclair*, 74 F.3d 753 (7th Cir. 1996) (evidence of bank's code of conduct properly admitted in bank bribery case, as probative of defendant's intent).  Indeed, even the defendant appears to concede that regulations and standards of which he was aware during the charged conduct are relevant.  (*See* Dkt. 167 at 7-8).  These exhibits should therefore be admitted consistent with the Court's prior rulings.

## II.     Post Hoc Evidence of the Loans' Performance

The Government anticipates that the defense may argue that the Manafort loans may ultimately be profitable for the Bank, or at least not cause the Bank significant losses, based on the current value of the collateral properties, over which the Bank has regained control in early 2021 due to Manafort's pardon in December 2020.  The financial performance of the Manafort loans in 2021 has no bearing on what Calk believed when he issued the loans, nearly five years ago.  The Government therefore respectfully requests a ruling that such evidence may not be elicited from any witness, and that the defense may not raise this issue in their opening or closing statements to the jury.  This Court previously accepted the defendant's argument that OCC official Catherine Aguirre could not testify about developments concerning the Manafort loans after they issued, because those developments did not sufficiently bear on the defendant's intent when issuing the loans to outweigh the prejudicial effect of the testimony.  (*See* Dkt. 123 at 32-33 (defense argument that Aguirre could not testify on this subject); Jan. 26, 2021 Tr. 28-29) (precluding Aguirre entirely)).  The same reasoning applies to any other evidence about the loans' post-closing performance.

Indeed, evidence concerning the loans' current performance is less relevant and more prejudicial than the proffered Aguirre testimony that the Court already excluded.  The Court excluded testimony regarding an analysis, made only several months after the loans were extended, that concluded the loans were substandard at origination.  (Dkt. 133 at 32).  The loans' later

performance, years after the loans were extended, is even more attenuated than Aguirre's analysis. Moreover, the Manafort loans have had a particularly convoluted history, including Manafort's non-payment (a development that resulted directly from his arrest, but which may well have occurred anyway given his lack of income when the loans first issued); the seizure of the collateral by the Government when Manafort was indicted, which led the Bank to write off the loans; and then the return of the collateral to the Bank upon Manafort's pardon years later—allowing the Bank a reasonable chance to profit, or at least avoid loss, given the current real estate market. Because Calk could not possibly have foreseen that unpredictable chain of events when he issued the loans, the post hoc performance of the loans has no bearing on Calk's intent at the time he issued the loans.

Eliciting evidence about the loan's performance would thus run afoul not only of the relevance arguments Calk advanced in his motions *in limine*, but also Rule 403's prohibition on wasting time and confusing the issues. Finally, to the extent evidence of the post hoc performance of the loans is sought for the purpose of arguing that there was no financial loss to the Bank (even though it is unclear whether that will be the case), such argument should be precluded because it plainly sounds in nullification and is more prejudicial than probative. *See* Fed. R. Evid. 403; *United States v. McElroy*, 910 F.2d 1016, 1025 (2d Cir. 1990) (in bank bribery case, evidence that loans were repaid after the crime was discovered excluded as not relevant to defendant's intent).[2]

                          Respectfully submitted,

                          AUDREY STRAUSS
                          United States Attorney

by: s/_____
     Paul M. Monteleoni
     Hagan Scotten
     Alexandra N. Rothman
     Assistant United States Attorneys
     (212) 637-2219/2410/2580

---

[2] Even when defending Aguirre's testimony as to her July 2017 analysis, the Government did not seek to introduce evidence of any of this significantly more remote chain of events, which began in November 2017 and continues to this day. (*See* Dkt. 133 at 35 n.24). Indeed, the performance of the loans from November 2017 up until early 2021 was highly unfavorable, a fact that the Government does not propose to elicit.