

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 19, 2021

**BY ECF**
The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *United States v. Stephen M. Calk*, S1 19 Cr. 366 (LGS)

Dear Judge Schofield:

    The Government respectfully submits this letter in response to the defendant's motion (Dkt. 223 ("Motion" or "Mot.")) requesting a June 21, 2021 conference concerning the anticipated testimony of FBI Special Agent Melissa Baccari. The Motion contains numerous errors of fact, questions a well-established practice recently affirmed in a squarely on point Second Circuit opinion, and generally offers more heat than light. For the reasons set forth below, although the Government remains available for a conference at any time convenient for the Court, the Court should deny the Motion, admit the disputed exhibits, and allow Agent Baccari's testimony pursuant to the usual limits on summary witnesses.

    **I.    The Summary Charts Provide an Efficient, Helpful, and Approved Manner to Present Evidence to the Jury.**

    The Motion appears to have been triggered by the Government's disclosure of eight summary charts, labeled GX 2104 through 2111, on June 17, 2021. (*See* Mot. 2). Of those, the Government currently intends to offer four—GXs 2104 and 2109 to 2111—although it was unable to inform defense counsel of this fact, because the Motion was filed without first seeking to resolve or narrow any issues with Government counsel. These charts present voluminous email, text message, phone record, and other evidence in an integrated and chronological manner that the Government believes will aid juror comprehension and allow for an efficient presentation of evidence. For example, GX 2111 combines emails, text messages, and phone records to show in a single place the events of December 21 to 23, 2016 relevant to the charged conduct, so that jurors can see the chronological relationship between this disparate evidence. (*See* Ex. C, GX 2111). There is no requirement for jurors to themselves locate these data points from the totality of the admitted evidence, pull out the relevant pieces, then line them up chronologically so that they can understand such a sequence of events. Rather, that kind of laborious, time consuming task is exactly why Federal Rule of Evidence 1006, allowing the admission of summary charts, exists.

    For this reason, the Second Circuit has "regularly affirmed" the use of summary charts "to draw the jurors' attention to particular evidence culled from a voluminous set of records." *United States v. Yousef*, 327 F.3d 56, 158 (2d Cir. 2003). Most recently, the Circuit affirmed the use of timeline charts similar to those at issue here in *United States v. Ho*, 984 F.3d 191 (2d Cir. 2020). There, as here, the defendant complained that summary charts organizing various types of evidence into timelines were "created for the purpose of generating a narrative supporting the prosecution's

theory of the case." *Id.* at 209. The Circuit disagreed, citing a long line of precedent holding that such charts are useful to the jury and permitted by Rule 1006. *Id.* at 209-10.[1] Indeed, the use of such charts is so plainly proper that it does not always rise to the level of written briefing. *See, e.g.*, *United States v. Skelos*, No. 15 Cr. 317, Tr. 2252-57, 2262 (S.D.N.Y. 2015) (rejecting defense argument that timeline charts were "argument presented through an FBI agent" and "in effect summation," and finding that "it is precisely the type of information that has been allowed to be used in charts"). The disputed exhibits here, far from being "unprecedented" (Mot. 4), were based on the charts approved in *Ho* and in *Skelos*. *Compare* Exs. A (GX 2109), B (GX 2110) and C (GX 2111) *with* Ex. D (*Skelos* charts); *compare* Ex. E (GX 2104) *with* Ex. F (one of two *Ho* charts).

Calk also errs in suggesting that the charts do not summarize enough evidence to qualify under Rule 1006. In *Ho*, for example, the defendant complained that the charts synthesized "only" 669 pages of documents. 984 F.3d at 209. The Circuit disagreed, explaining that "while it is true that summary charts are sometimes used to synthesize even larger volumes of documentary evidence than was the case here, it was clearly not an abuse of discretion for the district court to conclude that hundreds of pages of evidence merited the use of summary charts." *Id.* at 210 (citation omitted). Here the charts summarize the information from 821 pages of documents, even without counting the much lengthier phone records—meaning significantly more information than sufficed to satisfy Rule 1006 in a published Second Circuit opinion. *Id.*; *see also United States v. Stephens*, 779 F.2d 232, 238 (5th Cir. 1985) ("Rule 1006 does not require that 'it be literally impossible to examine the underlying records' before a summary chart may be introduced." (quoting *United States v. Scales*, 594 F.2d 558, 562 (6th Cir. 1978))).

## II. Special Agent Baccari Will Adhere to the Well-Established Limits on Summary Testimony.

Calk claims that offering the charts through an FBI agent will create "unfair prejudice." (Mot. 2). That cannot be right. In a criminal case, the witnesses who offer the Government's summary charts will typically be Government employees, such as the FBI agents who offered the charts in *Ho* and *Skelos*. There is thus no issue with a Government agent offering summary evidence, so long as she does not "offer conclusions or impermissibly argue the government's case." *United States v. Kilpatrick*, 798 F.3d 365, 382 (6th Cir. 2015). The Government has no intention of asking Agent Baccari to opine, argue, offer conclusions, or otherwise comment upon the evidence offered through her—and has in fact instructed her not to do so. Nor will the Government elicit Agent Baccari's credentials at length, or otherwise suggest that she possesses some implicit expertise in or knowledge about the matters at hand.

Calk thus goes far astray in citing cases about an entirely different—and widely condemned—type of witness: the law enforcement agent who gives an "overview" of the prosecution's case. (Mot. 2-3). An overview witness did not enter charts of admitted evidence without comment or conclusion, but rather offered "lay opinion providing a summary overview of anticipated evidence," *United States v. Garcia*, 413 F.3d 201, 210 (2d Cir. 2005), "gave his personal opinion as to guilt or innocence," *United States v. Moore*, 651 F.3d 30, 58 (D.C. Cir.

---

[1] In affirming the charts' admission, the Circuit noted the importance of the usual limiting instruction "that the charts themselves did not constitute independent evidence and that it was the jury's duty to first determine that they accurately reflected the evidence on which they were based." *Ho*, 984 F.3d at 210. The Government consents to the same instruction here.

2011), and "essentially testified that each of the defendants was guilty of the conspiracy charged," *United States v. Flores-De-Jesus*, 569 F.3d 8, 24 (1st Cir. 2009). Because Agent Baccari will do nothing of the sort, there is no need to hold an emergency conference in advance of her testimony.

Unlike the "overview witness" described in Calk's letter, Agent Baccari will not testify as the Government's first witness, will not testify about the full scope of the Government's case, and—most importantly—will not generalize about the Government's evidence, much less suggest any inferences from it. Rather, her testimony will focus on the chronology of Manafort's and Calk's interactions. That subject cannot easily be captured by any percipient witness, primarily because (1) neither Calk nor Manafort, both of whom have an obviously implicated right against self-incrimination, will be testifying in the Government's case, and (2) the two co-conspirators almost completely siloed the two tracks on which they operated, dealing with one set of witnesses (such as Bank employees) on the loans, and another (such as political figures) on Manafort's political assistance to Calk. That is to be expected where the connection between the two tracks shows a corrupt quid pro quo, but also means that the relevant evidence cannot be efficiently presented by any percipient witness.

Calk is correct that Agent Baccari will "read from exhibits"—such as emails between Calk and Manafort, as well as others—and "walk through the entries" in the charts, as would any summary witness. (Mot. 2). By reading aloud from emails or text messages, Agent Baccari will be able to quickly draw the jury's attention to the portions of those messages that are relevant in light of the other evidence, efficiently presenting a portion of the Government's case in a way that jurors can readily understand. It is reading directly from—rather than interpreting—the evidence that makes Baccari a proper summary witness. *See, e.g.*, *United States v. Denton*, 944 F.3d 170, 185 (4th Cir. 2019) (finding no error in permitting a special agent to read portions of defendant's Facebook records to the jury); *United States v. Tragas*, 727 F.3d 610, 614 (6th Cir. 2013) ("As long as the evidence itself is properly admitted pursuant to the Rules of Evidence and does not run afoul of other safeguards like the Confrontation Clause, [the Court does] not see how a defendant could be prejudiced if the evidence is read aloud to the jury."). The defense certainly remains free to ask Agent Baccari whether the evidence in her testimony was chosen by the prosecutors, a common point of cross-examination for any summary witness.[2]

### III.    Calk Has No Grounds to Claim Surprise

Much of the Motion focuses not on the propriety of the evidence at issue, but rather on accusations of ambush. These manufactured claims have no basis in fact or logic:

*First*, Calk claims that the Government will "start its case" with Agent Baccari. (Mot. 4; *see also* Mot. 2 (claiming Agent Baccari will testify "before the first percipient witness is called")). This appears to be a bid to cast her as an improper "overview witness," *supra* at 2-3, even though she plainly is not. In fact, the Government currently intends to call Agent Baccari as its sixth

---

[2]    For that reason, Calk errs in citing *United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997), for the proposition that Rule 1006 does not allow an exhibit "prepared by a lawyer." (Mot. 3). In that case there was no "witness available for cross-examination." *Grajales-Montoya*, 117 F.3d at 361. Here, Agent Baccari will be on the stand, and if the defense wishes to elicit that although she painstakingly verified the contents of each chart, she did not independently choose their contents, or physically format them, it may do so.

witness—after three percipient witnesses and two custodians—although the uncertain availability of other witnesses may require Agent Baccari to testify slightly earlier or later. It thus appears that much of Calk's request for an urgent conference is predicated upon a simple error that might have been resolved by a phone call among counsel.[3]

*Second,* Calk's claim to be surprised by the timing of the Government's disclosures is itself surprising. The Government disclosed Agent Baccari in its initial witness disclosures more than five months ago, on January 13, 2021, describing her as a "summary witness," and noting that the Government might also call "[o]ne or more additional summary witnesses." Experienced counsel, such as Calk's, surely know that a summary witness will testify using summary charts. (*See* Mot. 3 (describing this practice)). At no point prior to June 10, 2021 did counsel ask—much less complain—about when it would receive the exhibits these summary witnesses would offer. That is presumably because experienced counsel also know that composite exhibits are often created close to or during trial, given that their contents can only be determined as a party's case takes its final form. For example, Calk has long stated that he will offer—over unresolved Government objection—a summary compilation of his prior press appearances, but still has not created that exhibit or produced it to the Government. (*See* Dkt. 197 at 1; Dkt. 184-2 at 1).

*Third*, Calk does not identify any reason that the charts should have been created or disclosed earlier. He cannot do so, because it was not until June 10, 2021, that the Government obtained rulings on the admissibility of much of the evidence used in the charts. The defendant does not, and could not reasonably, argue that the Government should have produced summary exhibits based on evidence of uncertain admissibility. (*See* Dkt. 197 at 1-15 (objecting to over 40 Government exhibits, not including objections to phone records or objections based solely on authenticity)). Indeed, given that some of Calk's objections were successful (*see, e.g.*, June 10, 2021 Tr. at 44-45 (excluding nine Government exhibits in whole or in part)), the Government simply could not have created the disputed charts until after the Court's rulings on the underlying evidence.

*Fourth*, Calk claims that he was "sandbagged" to learn that some of the Government's charts include timelines, because the Government had previously discussed other summary charts condensing phone records. (Mot. 2). That makes no sense. The Government noted that it would create phone record charts in the course of explaining why the underlying phone records were admissible. (Dkt. 197, at 9). Nothing about those arguments suggested that the phone record charts were the only summary charts the Government would offer—and given that the subject of discussion was solely the admissibility of phone records, no reasonable reader would have inferred otherwise.

*Fifth*, Calk contends that he would have taken a different "approach to the admissibility of exhibits" and "objected to the pre-admission of exhibits" had he known the Government would create the disputed charts. (Mot. 4). It is difficult to see what this would have accomplished. After

---

[3] Calk's complaint that the Government "refused . . . to disclose the order of its witnesses (or even which witnesses it expects to testify at the outset of trial)" (Mot. 1) is difficult to understand. Approximately four hours *before* the filing of this Motion, the Government informed defense counsel, in a phone conversation with the one of the Motion's signatories, that it would provide a list of its intended witnesses for the first trial week by the end of that day consistent with the usual practice in this District.

all, the authenticating witnesses for the exhibits underlying the charts are almost all custodial—a phone records technician, a bank employee who maintained its email server, and so on. Requiring the personal testimony of such witnesses would have wasted the jury's time without materially changing the charts. Nor can Calk legitimately claim that the use of common and accepted techniques such as summary charts is unfairly enabled by this Court's pre-admission procedures. The material questions underlying the exhibits, such as the application of Federal Rule of Evidence 801(d)(2)(E), would be resolved by most courts during a pretrial conference. And to the extent a defendant interposes objections solely to make the presentation of evidence less cogent, courts can—and often do—simply allow the admission of that evidence subject to later connection under Rule 104, precisely so as not to reward objections whose only purpose is to disrupt the flow of an opposing party's case.

*Finally*, Calk cannot reasonably claim that he will be unable to review the charts prior to Agent Baccari's testimony. Calk does not object to Agent Baccari's summarization of phone records (*See* Mot. 2), which are the most voluminous component of the summary exhibits, but which can be quickly checked with a computer. Leaving aside the phone records, the summary charts are composed of less than 80 individual exhibits. That is more than a jury could easily synthesize during the trial day, but well within the capability of Calk's team of experienced attorneys, who received the charts at least five days before they will be offered. This is especially so given that the constituent exhibits were disclosed to Calk months ago, his counsel have already analyzed and offered detailed argument about those very exhibits, and the charts directly cite to the specific exhibits from which they were assembled. (*See, e.g.*, Ex. A). Calk betrays as much in arguing that the charts could be presented in "several hours" of closing argument. (Mot. 2). Although the charts assemble evidence that is too dense to be presented for the first time in a summation of reasonable length—and too disparate for any percipient witness to offer—digesting their contents is well within the capability of counsel. The true aim of the Motion thus appears to be simply preventing the jury from seeing this probative evidence in a clear, efficient manner.

### IV.     Conclusion

For the foregoing reasons, the Court should deny the Motion, admit the summary charts, and allow Agent Baccari's testimony pursuant to established limits on summary witness testimony.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

by: s/_____
Paul M. Monteleoni
Hagan Scotten
Alexandra N. Rothman
Assistant United States Attorneys
(212) 637-2219/2410/2580
