# Kramer Levin

| | |
|---|---|
| Paul H. Schoeman<br>Partner<br>T 212.715.9264<br>F 212.715.8064<br>PSchoeman@kramerlevin.com | 1177 Avenue of the Americas<br>New York, NY 10036<br>T 212.715.9100<br>F 212.715.8000 |

**June 20, 2021**

**Via ECF**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    <u>United States v. Stephen M. Calk</u>, S1 19 Cr. 366 (LGS)

Dear Judge Schofield:

      We respectfully submit this letter in response to the government's June 18, 2021 letter (Dkt. No. 225), seeking to (i) admit GXs 701, 702, 704, and 719; and (ii) preclude evidence or argument regarding the "post-hoc performance" of the Manafort loans.

      I.    <u>GX 701, 702, 704, and 719</u>

      We object to the admission of these exhibits because their probative value, if any, is far outweighed by the substantial unfair prejudice they will cause Mr. Calk. With regard to GX 701 and 702, which relate to OCC Handbook sections on fiduciary duties and civil regulations governing loan procurement fees and conflicts of interest, the government has already offered into evidence the Bank Bribery Act / Conflicts of Interest Policy issued by The Federal Savings Bank itself. (GX 451-G). The defense did not object to admission of that policy, which is a Bank document also covering bank bribery and conflicts of interest regulations. Permitting the government to introduce the OCC Handbook sections regarding civil regulations (which it has not shown Mr. Calk ever actually reviewed[1]), and then allowing Mr. Paulson, presently the Senior Deputy Comptroller and Chief Operating Officer of the OCC,[2] to testify about them, is unnecessary, cumulative, and allows the government to improperly wrap its case in the flag – a concern the Court raised at the January 26, 2021 conference. (Tr. 15).

---

[1] The government claims in its letter that GX 701 and 719 are "cover letters," accompanying GX 702 and 704, respectively. In fact, as is evident from the documents themselves, GX 701 and 719 are OCC Bulletins issued in 2013, three years prior to the events in question. Each of the Bulletins, at the very bottom under the heading "Related Link" provides a link to the OCC handbooks that one must click through to access the substantive information that the government seeks to admit as part of GX 701 and 719.

[2] Until recently, Paulson was the Acting Comptroller of the Currency, the highest official at the agency.

The Honorable Lorna G. Schofield
June 20, 2021



       This unfair prejudice is even more pronounced with regard to GX 704 and 719, which concern the OCC Handbook section on lending standards relating to collateral. The government says that "the Court has already ruled that Mr. Paulson may testify on these subjects," citing to pages 29-30 of the January 26, 2021 transcript. (Dkt. No. 225 at 2). In fact, the Court stated, "I will allow the testimony of Mr. Paulson, understanding that it is providing background information about the regulatory framework and that it is not addressed to the particular facts at all." (Tr. 29).[3] Eliciting testimony from Paulson regarding the propriety of relying on collateral as security for a loan is not "background information" and crosses into the facts of this case, given that the government intends to argue that Mr. Calk imprudently relied on collateral. Indeed, the government has indicated that it also expects Paulson to testify as a fact witness about a meeting he had with Mr. Calk in July 2018. During the meeting, Paulson claims, Mr. Calk stated, among other things, that "any banker would have made [the Manafort loans] because of the collateral being put up to secure the loans." The jury will accordingly be left with the strong impression that Paulson, one of the highest officials of the OCC, believes Mr. Calk failed to comply with OCC standards. This is simply a backdoor effort by the government to put in the kind of expert evidence through Paulson about industry standards that it previously planned to introduce through its paid expert, Mr. Belanger – which is precisely what the Court ruled it could not do.[4] (Tr, 15). *See also United States v. Riddle*, 103 F.3d 423, 431 (5th Cir. 1997) (defendant bank chairman unfairly prejudiced at bank fraud trial by introduction of OCC reports regarding bank's alleged regulatory violations).

    II.    <u>"Post-Hoc Performance" of Manafort Loans</u>

       In its indictment – and again in the current superseding indictment, returned earlier this year – the government made the allegation that "the Bank suffered a multi-million dollar loss" as a result of the Manafort loans, and has "currently written off the remaining principal balance – totaling over $12 million – as a loss." (Indictment, Dkt. No. 2 at ¶¶ 1, 28; Superseding Indictment, Dkt. No. 175, at ¶¶ 1, 28). That allegation was the product of the government's decision to forfeit, in connection with Manafort's October 2017 indictment and subsequent conviction, the collateral securing the TFSB loans as the proceeds of Manafort's money laundering and tax fraud crimes, and then to deny that collateral to TFSB, which had a right to foreclose on it when Manafort defaulted post-indictment. As noted in our October 23,

---

[3] *See also* Tr. 15 ("[O]ne of the things, frankly, that bothered me about these two witnesses from the OCC is that, you know, just like the prosecutors, to some extent they're wrapped in the flag, and I don't want the jury to have the impression that the government's case has the imprimatur of people at the highest levels in the regulatory agency that are overseeing the bank, because of course the regulatory issues are separate from whether someone is criminally liable for his actions. And so the 403 issues seem to me very real, given who the witnesses are. I think that's cured, to some extent, by your saying that Mr. Paulson, for example, will just talk about the regulatory framework and not apply any of that to the facts of this case, but it's still a concern of mine.").

[4] Should the Court permit the introduction of these exhibits and Paulson's testimony, we respectfully request that Paulson be identified simply as an OCC employee. There is no reason that the jury needs to be aware that he is a high-level OCC official.

The Honorable Lorna G. Schofield
June 20, 2021



2021 motion in limine, the allegation was always misleading because TFSB was actively litigating a claim to the collateral in D.C. District Court – a proceeding that had been stayed at the government's request pending completion of trial in this case.  (Dkt. No. 123 at 10-11).

More recently, following Manafort's pardon, the forfeiture orders were vacated and the government relinquished its claim to the properties.  The Bank now anticipates recovering the collateral, allowing the Bank, as the government concedes, "a reasonable chance to profit, or at least avoid loss."[5]  (Dkt. No. 225 at 3).  While the government suggests this is some fluke of the real estate market, as it well knows, the collateral was worth substantially more than the loans at the time the loans were made, and it is hardly a surprise that a home in the Hamptons and brownstone in Cobble Hill have retained significant value over time despite being held vacant by the U.S. Marshal's Service.

Accordingly, should the government suggest at trial (as is alleged in the superseding indictment) that the Bank suffered a loss as a result of the loans, or that the collateral required by the bank was inadequate to protect the bank's interests, the defense must in fairness be permitted to elicit evidence to the contrary, including what has actually transpired.  If the government does not do so, the defense will not seek to introduce this evidence.

Respectfully submitted,

/s/ Paul H. Schoeman

Paul H. Schoeman
Darren A. LaVerne

cc:     All counsel (via ECF)

---

[5]  In addition to having recovered the over $3.3 million in cash collateral Manafort posted, the Bank has already obtained and sold Manafort's Virginia condominium for more that the appraised value of $2.7 million.  The Bank is now the process of foreclosing on Manafort's Cobble Hill and Hamptons properties.