# Kramer Levin

| Paul H. Schoeman | 1177 Avenue of the Americas |
| Partner | New York, NY 10036 |
| **T** 212.715.9264 | **T** 212.715.9100 |
| **F** 212.715.8064 | **F** 212.715.8000 |
| PSchoeman@kramerlevin.com | |

**June 27, 2021**

**Via ECF**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    <u>United States v. Stephen M. Calk</u>, S1 19 Cr. 366 (LGS)

Dear Judge Schofield:

      We respectfully submit this letter to advise the Court of highly prejudicial media coverage that appeared on MSNBC this past Friday, and ask that the Court take steps to ensure no jurors have viewed it.

      It has come to our attention that on the evening of Friday, June 25, 2021, following the conclusion of trial proceedings for the week, The Rachel Maddow Show aired an approximately fifteen-minute television segment on MSNBC regarding the case.[1] The segment is a highly inflammatory and prejudicial editorial regarding last week's proceedings, offering one-sided commentary, which contains factual errors, on the testimony of the witnesses who have appeared thus far, and essentially concluding that Mr. Calk is guilty.[2] In addition, the segment makes reference to and displays a document that, while introduced by the government into evidence at the outset of the trial pursuant to the Court's procedures, has not yet been

---

[1] The segment can be viewed at https://www.nbc.com/the-rachel-maddow-show/video/rachel-maddow-62521/4367862. It appears approximately 15 minutes and 30 seconds into the show. For the Court's convenience, we are separately emailing the segment to the Court and will deliver a computer disk (Exhibit A) to chambers with the segment on Monday.

[2] *See. e.g.*, Exhibit A at minute 9:44 ("The guy who he was offering federal government positions to, if the guy would only pay Paul Manafort, the guy put in writing what exact jobs he wanted in exchange for his bank's money, which he was stuffing in Paul Manafort's pockets."); *id*. at 9:02 ("There's a federal government interest in making sure that banks don't get ripped off by people who are using banks as piggybanks to pay for government jobs, which you're not supposed to be able to buy, and if you are supposed to be able to buy them, you shouldn't be able to buy them by giving the money to Paul freaking Manafort. But that was the Trump campaign.").

The Honorable Lorna G. Schofield
June 27, 2021



published to the jury.³  The segment also refers to testimony by Ms. Ivakhnik to which the defense objected – an objection that the Court sustained and thus will be stricken from the transcript. (*Compare* June 24, 2021 Trial Tr. at 208:4-10 (Ivakhnik testimony that Brennan told her "to hold onto all emails or to save all emails because the FBI will be looking into this") to Exhibit A at minute 7:48-8:03).

In this Circuit, a district court must follow a three-step process when it is "confronted with the problem of publication or broadcast of information concerning an ongoing criminal trial." *United States v. Lord*, 565 F.2d 831, 838-39 (2d Cir. 1977); *see also United States v. Elfgeeh*, 515 F.3d 100, 144-45 (2d Cir. 2008) (citing *Lord*); *United States v. Gaggi*, 811 F.2d 47, 51 (2d Cir. 1987) (same).  First, the court is "to determine whether the coverage has a potential for unfair prejudice." *Elfgeeh*, 515 F.3d at 145 (quoting *Gaggi*, 811 F.2d at 51).  If so, the court should "canvass the jury to find out if they have learned of the potentially prejudicial publicity." *Id*.  If jury members have learned of it, the court should "examine individually exposed jurors—outside the presence of the other jurors—to ascertain how much they know of the distracting publicity and what effect, if any, it has had on that juror's ability to decide the case fairly." *Id*.

Here, the Maddow segment, shown during a nationally broadcast program on primetime cable television, clearly has the potential for unfair prejudice.  Accordingly, we respectfully request that the Court ask the jury whether it has viewed any media coverage of the trial during the prior week.  If any juror replies in the affirmative, the Court should separately question the juror to determine the nature of the coverage viewed and the extent to which it has affected his or her ability to remain fair and impartial.  Finally, the Court should continue to instruct the jury at the end of each trial day that it is not to view any media coverage regarding the case.  If a juror is inadvertently exposed, he or she should immediately cease viewing, and advise the Court of the exposure.⁴

Respectfully submitted,

/s/ Paul H. Schoeman

Paul H. Schoeman
Darren A. LaVerne

cc:     All counsel (via ECF)

---

³  The document is a November 19, 2016 email, with attachments, from Mr. Calk to Manafort.  A version of this document is in evidence as GX 261, but the formatting of the version displayed by Ms. Maddow suggests that it was obtained in connection with Manafort's August 2018 trial in the Eastern District of Virginia, where the document was also introduced into evidence.

⁴  In response to our request for its position on this issue, the government has indicated that it believes that the Court should "likely proceed" to the second step of the process outlined herein, but may wish to supply the Court with supplemental law by separate letter.