# Kramer Levin

| Paul H. Schoeman | 1177 Avenue of the Americas |
| Partner | New York, NY 10036 |
| **T** 212.715.9264 | **T** 212.715.9100 |
| **F** 212.715.8064 | **F** 212.715.8000 |
| PSchoeman@kramerlevin.com | |

**July 5, 2021**

**Via ECF**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    <u>United States v. Stephen M. Calk</u>, S1 19 Cr. 366 (LGS)

Dear Judge Schofield:

    We respectfully submit this letter in response to the government's letter of earlier today (Dkt. No. 236) seeking to preclude the admission of DX 50, a composite video of Mr. Calk's television appearances on behalf of the Trump campaign.

    Throughout this trial, the government has elicited testimony and offered other evidence designed to persuade the jury that Mr. Calk was unqualified either to serve on the Trump Campaign's National Economic Advisory Council ("NEAC"), or subsequently, to serve in the administration in the roles Mr. Calk is alleged to have discussed with Manafort, including Undersecretary of the Army, the position for which he unsuccessfully interviewed in January 2017. Two witnesses, prompted by the government, have opined that they did not believe Mr. Calk was qualified to serve. Tr. 361:12-24 (Scaramucci); Tr. 655:22 – 656:18 (Rigby). The government has also introduced into evidence Mr. Calk's military records for the ostensible purpose of showing that Mr. Calk lied about his service, which it claims is relevant because it demonstrates that Mr. Calk himself did not believe he was qualified, and thus needed corrupt assistance from Manafort to help him obtain a position. The government now seeks to unfairly prevent the defense, in its own case, from demonstrating to the jury that Mr. Calk, by virtue of his work serving as an articulate advocate for Trump as a member of the NEAC, was and believed himself to be, qualified for and deserving of an interview for a position in the administration. This is clearly a relevant, non-hearsay purpose, and the Court should accordingly reject its effort to do so.

    In the course of the campaign, Mr. Calk appeared on television more than 30 times, generating more than an hour of video footage. The evidence in the record – some of it in fact introduced by the government – reflects that Mr. Calk sent a link to his "coverage book" (which included this video footage) to Anthony Scaramucci, in order to demonstrate his commitment to and work on behalf of Trump, and to the members of the Trump Transition in connection with his January 10, 2017 interview. *See* Tr. 316:6-21 (Scaramucci testimony on direct examination referencing DX 249 (December 28, 2016 Calk email to Scaramucci; "Hey Anthony, I thought I would give you the link to some of my work on the President Elects behalf spanning the last year." (including link to video footage))); GX 323 (January 10, 2017 Calk



email to Campbell Burr (including link to video footage on page three, first paragraph)). Mr. Calk also sent emails to Manafort referencing his media work. *See, e.g.*, GX 189 (October 12, 2016 Calk email to Manafort referencing media interviews on behalf of the Trump campaign).

The defense has reviewed hours of video and created an exhibit that runs a little over 8 minutes long. It has endeavored to cut out portions that are highly political or potentially inflammatory. What remains are series of short clips that provide the jury with a sense of the nature of Mr. Calk's work on behalf of Trump, the fact that he was good at it, and that he believed he was good at it (indeed, as the government points out, in one clip he is complimented on his advocacy by Chris Cuomo on CNN). As the government seems to acknowledge, the issues Mr. Calk addresses in the clips are not controversial, politically charged topics – they are the kind of general statements regarding economic growth and the like that people hear every night on cable television. There is no reason to believe that the jury would be improperly influenced.[1]

Finally, the clips in DX 50 also show that Mr. Calk thought that his work on the NEAC was good for The Federal Savings Bank, which he promoted during his appearances (*see, e.g.*, DX 50 at 1:58 – 2:40) – an issue that the government has raised by putting on evidence that it would be a conflict of interest for Mr. Calk to act in a way that furthered his personal interest "at the bank's expense." *See* GX 702 at 6. For multiple reasons, then, DX 50 is highly relevant to the jury's evaluation of Mr. Calk's state of mind during the relevant period and directly rebuts the government's claim that he was not and did not believe himself deserving of interviewing for a position in the Trump administration.[2] Any concerns that the government has that the jury will consider the exhibit for a hearsay or other purpose can be addressed by a limiting instruction, as the Court has done on the government's request with other exhibits in this trial. *See, e.g.*, *United States v. Moseley,* 980 F.3d 9, 27 (2d Cir. 2020) ("[A]ny impermissible effect [of the admission of an out-of-court statement] was addressed by the district court's appropriate limiting

---

[1] The government's professed concern that this jury will be improperly influenced by the mild statements in DX 50 should not be taken seriously in light of its letter, filed just a week ago, suggesting that the highly inflammatory segment on The Rachel Maddow Show was unlikely to have any prejudicial effect on the jury. (Dkt. No. 233).

[2] In its letter, the government relies on *United States v. Ho*. There, the Court found the video compilation at issue was irrelevant and prejudicial because it did not mention "people, transactions, or countries relevant to the charged crimes," *see United States v. Ho*, 17 Cr. 779, Dkt. 193, at 62:3-6, and threatened to launch "a debate about foreign policy," *id.* at 62:17, without shedding any light on "whether the defendant did or did not have corrupt intent with respect to the transactions at issue," *id.* at 62:7-8. This is a sharp contrast from DX 50, which relates directly to the charged offense, responds directly to the government's evidence and arguments, and is highly probative of intent for the reasons discussed above. Moreover, the Court in *Ho* found certain statements in the video were relevant only if offered for the truth of the matter asserted, *see* 17 Cr. 779, Dkt. 193, at 62:8-12, which is not the case here.

The Honorable Lorna G. Schofield
July 5, 2021



instruction, which directed the jury to consider the complaints only for purposes of assessing Moseley's state of mind.").

Respectfully submitted,

/s/ Paul H. Schoeman

Paul H. Schoeman
Darren A. LaVerne

cc: All counsel (via ECF)