

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 6, 2021

**BY ECF**
The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *United States v. Stephen M. Calk*, S1 19 Cr. 366 (LGS)

Dear Judge Schofield:

    The Government respectfully submits this letter in response to the defendant's last-minute request to preclude OCC witness Benjamin Lemanski from testifying about (1) a November 15, 2016 meeting when the defendant explained his tardiness by stating that he had been busy picking Lemanski's new boss, and (2) a May 2017 meeting when the defendant threatened to go to the Comptroller of the Currency unless Lemanski agreed to "save face" and change a particular rating of the Bank.[1] The defendant further seeks to prevent Lemanski from identifying himself by title—as an Associate Deputy Comptroller—based on unfounded fears of prejudice. For the reasons set forth below, the defendant's requests should be denied.[2]

    Nearly six months ago, on January 11, 2021, the Government made its first production of 3500 material in this case, which included a typed FBI report reflecting the very statements and meetings that the defendant now seeks to preclude. Under the guise of Rule 404(b), the defendant now claims that the Government failed to give proper notice of its intent to offer these statements and, in any event, that the statements should be excluded as "entirely irrelevant" or prejudicial under Rule 403. (Ltr. at 2). These arguments should be rejected.

    First, the Government is not offering these statements under Rule 404(b), but instead as direct evidence of Calk's state of mind under Rules 402 and 403. The November 15, 2016

---

[1] The Government understands the defendant has no objection to Lemanski testifying about the July 2018 meeting, about which Blake Paulson already testified. As with Paulson, however, the Government does not intend to elicit the defendant's self-serving statements that a government job would have paid him less money, but instead simply that the defendant denied the media reports that he wanted a Government job. The Government intends to object to any similar attempts by the defendant to insert those self-serving statements into the record. (Tr. 144-48).

[2] As noted in the defendant's letter, the Government has no objection to the Court instructing the jury regarding OCC testimony as it did in connection with the testimony of Paulson and Gongaware. The Government does not intend to elicit that the purpose of the November 2016 meeting was to discuss a possible new venture in the marijuana business.

statement that the defendant was busy picking Lemanski's new boss—made just days after the 2016 election—is probative of the defendant's state of mind at a critical moment in the case, when the first loan to Paul Manafort was about to close and the defendant was contemplating which role he wanted in the new administration through Manafort's assistance. (*See* GX 244 (Nov. 14, 2016 email to Manafort with first list of "perspective rolls," including Secretary of the Treasury, the ultimate supervisor of the OCC); GX 245 (Nov. 14, 2016 email to Manafort to confirm "[a]re you aiding in the transition in any type of formal capacity?")). Thus, the defendant's statement to Lemanski about the purported "role" the defendant was playing in picking the new Comptroller is relevant to the defendant's corrupt state of mind and the charged quid pro quo.

The May 2017 statement that the defendant would go to the Comptroller if Lemanski did not "save face" and change a particular rating reflects another attempt by the defendant to intimidate and pressure OCC officials just months after the OCC first raised questions about the Manafort loans in late-March 2017. Given that this intimidation relied on the political influence Calk had gained from his appointment to the Trump campaign economic advisory council, it goes directly to proving that Manafort's assistance had value to Calk, an element of the offenses. That is, Calk's use of the status derived from his campaign position to attempt to pressure the OCC shows that he valued that campaign position, which helps establish its value to Calk.

Second, the defendant's claim that the defendant will be unduly prejudiced if Lemanski states his title when testifying is unfounded. The Government expects Lemanski to testify that, between 2016 and August 2017, he was an Assistant Deputy Comptroller in the Schaumburg Field Office in Illinois, where he provided oversight for financial institutions including the Federal Savings Bank. The Government furthers expects Lemanski to testify that beginning in August 2017, he became an Associate Deputy Comptroller in the Central District Office, where he was responsible for supervising financial institutions in Illinois. Unlike Blake Paulson, who occupied a top position in the OCC, the Government does not see how Lemanski's positions in middle management could prejudice the defendant, especially when the jury will be instructed, as it has been for each OCC witness, that the OCC does not have an opinion on the Manafort loans.[3]

                                                Respectfully submitted,

                                                AUDREY STRAUSS
                                                United States Attorney

                                  by: s/ Alexandra Rothman
                                        Paul M. Monteleoni
                                        Hagan Scotten
                                        Alexandra N. Rothman
                                        Assistant United States Attorneys
                                        (212) 637-2219/2410/2580

---

[3] The Government has no objection to the unsealing and public docketing of the defendant's letter.