

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, NY 10007*

July 8, 2021

**BY ECF**

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *United States v. Stephen M. Calk*, S1 19 Cr. 366 (LGS)

Dear Judge Schofield:

      In advance of the charge conference, the Government respectfully submits this letter requesting the following substantive modifications to the Court's draft charge. The Government may also request minor wording changes not discussed in this letter during the conference.

      **I.**    **False Exculpatory Statements**

      At trial, OCC officials Blake Paulson and Benjamin Lemanski, and TFSB underwriter James Brennan, all testified that after the defendant was accused of making loans to Manafort in return for help in trying to obtain a position in the Trump administration, the defendant denied seeking such a position. (Tr. 91, 823, 1253-54). That denial has been proven false. (*See, e.g.*, GX 266 (defendant emailing Manafort "As you know, my number one desire is to serve as Secretary of the Army.")). In addition, OCC examiner Jack Gongaware testified that after Calk was accused of making the loans in return for Manafort's help despite Manafort facing foreclosure on several properties, Calk denied knowing about those pending foreclosures and misled Gongaware as to whether he knew Manafort was in default. (Tr. 973-74, 978-82). That denial has also been proven false. (*See, e.g.*, GXs 279, 281 (emails showing defendant's awareness of foreclosure and default)).

      "Instructing the jury that false exculpatory statements can evidence consciousness of guilt is appropriate when the Government presents a substantial factual predicate at trial showing that the defendant made false statements in an effort to appear innocent." *United States v. Dawkins*, --- F.3d ---, 2021 WL 2274288, at *15 (2d Cir. June 4, 2021). Although a defendant's false denials cannot themselves prove guilt, they provide strong corroboration that the defendant had a guilty state of mind. An instruction explaining the proper uses of such statements is therefore appropriate. *See United States v. Strother*, 49 F.3d 869, 877 (2d Cir. 1995); *United States v. Scheibel*, 870 F.2d 818, 822 (2d Cir. 1989); *United States v. Di Stefano*, 555 F.2d 1094, 1104 (2d Cir. 1977).

The Government therefore respectfully requests that the jury be instructed as follows:

> You have heard testimony that the defendant made statements in which he claimed that his conduct was consistent with innocence and not with guilt. The government claims that these statements in which the defendant attempted to exculpate himself are false. If you find that the defendant gave a false statement in order to divert suspicion from himself, you may infer that the defendant believed that he was guilty. You may not, however, infer on the basis of this alone that the defendant is, in fact, guilty of the crimes for which he is charged. Whether or not the evidence as to a defendant's statements shows that the defendant believed he was guilty and significance, if any, to be attached to any such evidence, are matters for you, the jury, to decide.

This charge is taken almost verbatim from the charge given in *Dawkins*, which the Circuit found to be a correct statement of the law (although inapplicable in that case, because the defendant had not in fact made exculpatory statements). *Dawkins*, 2021 WL 2274288, at *15; *see also United States v. Thomas*, 101 F.3d 1392 (2d Cir. 1996) (table) (approving similar language). It is also more favorable to the defendant than the charge in *Strother*, which the Circuit upheld. *See* 49 F.3d at 877 (holding that it was legally correct, but possibly unclear, to further charge the jury, "[o]rdinarily, it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his or her innocence").

## II. Things of Value Are Not Limited to Tangible Items.

In the parties' initial request to charge, the Government requested that the second element of Count One include an explanation that "[t]he thing of value is not limited to tangible items." (Dkt. 196 at 39). The defendant objected in significant part that the broader discussion of value should be located in the fourth element. (*Id.*). The Court's draft charge relocates the general language on valuation to the fourth element, but omits an instruction that a thing of value need not be a tangible item.

The Government respectfully submits that this language should also be provided, and suggests that it be added as the final sentence of the fourth element. This language is necessary here, because the "things of value" Manafort offered the defendant were intangible—a position on a prestigious advisory council and assistance in obtaining a senior government position. And although the language already included in the Court's charge adequately explains how a thing of value may be valued, it does not tell the jury that an intangible object not apparently amenable to monetary valuation can nonetheless be a thing of value in the first place. There should, however, be no dispute that the law applies to such items: The language the Government proposes comes from the instruction of the late Hon. William H. Pauley III, in a case where the things of value included intangibles such as entertainment and a promise to write a letter disputing a bill. *United States v. Chambers*, Dkt. 87 at 992 (S.D.N.Y. 2018), *aff'd* 800 F. App'x 43 (2d Cir. 2020). Other cases concerned items at least as intangible as those at issue here. *See, e.g.*, *United States v. Girard*, 601 F.2d 69 (2d Cir. 1979) (illegally obtained information from DEA reports are a "thing of value" because "the phrase is generally construed to cover intangibles as well as tangibles"); *United States*

*v. Mongelli*, 794 F. Supp. 529, 531 (S.D.N.Y. 1992) (licenses without clear pecuniary value could be "thing of value" because that phrase "has long been construed in other federal criminal statutes to embrace intangibles"); *United States v. Marmolejo*, 89 F.3d 1185, 1193-94 (5th Cir. 1996) (conjugal visits can constitute things of value).

Indeed, in the case of *United States v. Scruggs*, 916 F. Supp. 2d 670, 679-80 (N.D. Miss. 2012), a court considered whether a recommendation for a similar intangible item was a thing of value. In that case, the defendant, a relative of a U.S. Senator, bribed a state-court judge by offering to recommend that the senator recommend that the state judge be nominated to the federal bench. *See id.* (finding factual basis for guilty plea). The court found this offer to be a thing of value even though there was no guarantee that the senator would in fact recommend the state judge to the President, that the President would act on any such recommendation in nominating the state judge to be a federal judge, or that the Senate would act on any such nomination in confirming the state judge to the federal bench.

### III. Whether the Defendant Would Have Issued the Loans Regardless of Manafort's Bribes Is No Defense.

The Government's initial request to charge sought an instruction to the effect that whether the defendant believed the actions he took would benefit the bank, or would have taken the same action regardless of the bribery, did not matter under the law. (Dkt. 186, at 43). That instruction legally is correct. (*See id.* at n. 23 (citing *United States v. Kaufman*, 19 Cr. 504 (Tr. 1167); *City of Columbia v. Omni Outdoor Advertising*, Inc., 499 U.S. 365, 378 (1991))). The defendant did not identify any legal flaw in the instruction, but rather noted that the defendant's subjective beliefs as to the quality of the loans could bear on the jury's assessment of whether he in fact intended to be influenced by Manafort's political assistance when he made the loans. (*Id.*).

The Government has no quarrel with the defendant's *factual* point, but respectfully submits that jury should still receive the correct *legal* instruction. Given the amount of time the parties dedicated to showing the defendant's state of mind with respect to loan quality, it is particularly important that the jury understand that the defendant's beliefs on this factual dispute do not constitute an element of any charged offense, and have no independent legal significance. *See United States v. Silver*, 948 F.3d 538, 562 n.14 (2d Cir. 2020) ("It is no defense that an official would have taken certain actions regardless of any alleged bribe." (citing, among other cases, *United States v. Rosen*, 716 F.3d 691, 701-02 (2d Cir. 2013) ("Payments to State legislators may constitute bribes even if the legislator's resulting actions are otherwise 'routine'—such as voting in a certain manner . . . . Moreover, the corrupt intent that is central to an illegal quid pro quo exchange persists even though the State legislator's acts also benefit constituents other than the defendant."))). The Government therefore respectfully requests that the Court use the language suggested by the Government at page 43 of the parties' joint request to charge, but has no objection if the defense wishes to request clarifying language on their factual point (for example, "You may, however, consider the defendant's beliefs as to whether the loans would benefit the bank in determining whether he intended to be influenced or rewarded by Mr. Manafort.").

### IV.     Portions of the Draft Immunity Instruction Do Not Apply in this Case.

The Court's draft instruction on immunity informs the jury that an immunized witness—such as James Brennan or Dennis Raico—"confronted with the realization that he can win his own freedom by helping to convict another, has a motive to falsify his testimony." The Government respectfully submits that this instruction—which the Court does not appear to have given in other cases with immunized witnesses—lacks a factual or legal predicate, and prejudices the Government by inaccurately suggesting that it made deals with Brennan and Raico to "win their freedom" by convicting Calk.

There is no factual support for the notion that either Brennan or Raico has any motive to "win freedom," much less that he could do so by convicting Calk. A review of the entire transcript reveals no suggestion that either witness was imprisoned, charged with a crime, threatened with charges, or otherwise faced a threat to their freedom that required striking any deal with the prosecution. There is also no suggestion that "helping to convict another" has any bearing on their future freedom—the Court's immunity orders contain no express or implied condition that Brennan or Raico will go to jail if Calk is acquitted. (*See* GXs 1302, 1305). Instead, the immunity orders provide only "use" immunity—meaning that the witness's testimony cannot be used against them in a future prosecution, but offer no immunity from prosecution, much less one that turns on the outcome in this case. (*See* GXs 1302, 1305; *see also* Tr. 709-10 (Brennan explaining his understanding of immunity order); Tr. 1012-13 (Raico explaining his understanding of immunity)).

Instead, the "win his freedom" language is derived from cases concerning transactional immunity. (*See* Dkt. 186 at 26 n.12). Those cases are materially different than the "use" form of immunity at issue here, because transactional immunity actually does allow a charged witness to escape prosecution for his crimes. *See, e.g.*, *Lefkowitz v. Cunningham*, 431 U.S. 801, 809 (1977) (explaining how New York's transactional immunity law immunizes witnesses from prosecution for any crimes about which they testify, while use immunity that is required by the Fifth Amendment is "more limited"); *United States v. Dornau*, 491 F.2d 473, 479 (2d Cir. 1974) (holding that defendant received only use immunity in bankruptcy proceeding, therefore Government's derivative use of defendant's testimony to seek indictment for mail and wire fraud was not improper); *United States v. Gallo*, 863 F.2d 185, 190 (2d Cir. 1988) (holding that defendant was only entitled to use immunity and not broader transactional immunity); *United States v. Quatermain, Drax*, 613 F.2d 38, 40 (3d Cir. 1980) (explaining that under use immunity, as opposed to transactional immunity, the witness may still be prosecuted for crimes about which he testifies).

Instead of the "win his freedom by testifying falsely" language, the Government respectfully requests that the Court provide the same instruction that it gave in *United States v. Davis*, 17 Cr. 610 (LGS) (Dec. 16, 2019), as proposed below:

> You have also heard the testimony of [James Brennan and Dennis Raico] who testified under a grant of immunity from the Court. What this means is that the testimony of th[ese] witness[es] may not be used against [them] in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing

to comply with the immunity order of this Court. Such testimony should be scrutinized with great care. If you believe it to be true, and determine to accept the testimony, you may give it such weight, if any, as you believe it deserves.

(Dkt. 546, at 862); *see also United States v. White,* 17 Cr. 611 (RWS), Dkt. 363 at 1465-66 (Oct. 16, 2018) (providing similar charge); *see generally United States v. Vaughn*, 430 F.3d 518, 524 (2d Cir. 2005) (stressing district courts' broad discretion to use appropriate language in instructing jurors on the motives of cooperating witnesses).

### V.     The Defense Request

By separate letter, the defendant has requested an instruction to the effect that violations of banking regulations or policies do not by themselves prove the charges in this case. (*See* Dkt. 249-1). The Government has no objection to this charge, provided that some of the slanted language is removed—for example, it would suffice to say that the Government must prove "the elements" of each count, rather than "each and every element." (*See id.*). The defendant's request to narrow the Court's definition of thing of value (Dkt. 249 at 1-2) remains meritless, as explained in the cases cited above (*see supra* at 2-3) and other cases previously cited to the Court. *See, e.g.*, *United States v. Williams*, 705 F.2d 603, 623 (2d Cir. 1983) (applying *Girard* in 18 U.S.C. § 201 bribery case, and holding that district court properly defined "thing of value" to include "the value that the defendants subjectively attached to the items received"); *United States v. Gross*, No. 15 Cr. 769 (AJN), 2017 WL 4685111, at *37 (S.D.N.Y. Oct. 18., 2017) (finding Section 201 "analogous" to Section 215 and applying Section 201 precedent as to venue).

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

by: s/_____
Paul M. Monteleoni
Hagan Scotten
Alexandra N. Rothman
Assistant United States Attorneys
(212) 637-2219/2410/2580