L6M5cal1

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,

 4              v.                        19 CR 366 (LGS)

 5    STEPHEN M. CALK,

 6              Defendant.

 7    ------------------------------x
                                         New York, N.Y.
 8                                       June 22, 2021
                                         9:45 a.m.
 9

10    Before:

11                   HON. LORNA G. SCHOFIELD,

12                                       District Judge
                                          And A Jury
13
                         APPEARANCES
14
      AUDREY STRAUSS
15         United States Attorney for the
           Southern District of New York
16    PAUL MONTELEONI
      HAGAN SCOTTEN
17    ALEXANDRA ROTHMAN

18    KRAMER LEVIN NAFTALIS & FRANKEL
           Attorneys for Defendant
19    BY:  PAUL SCHOEMAN
           DARREN LaVERNE
20         MICHELLE BEN-DAVID

21    LOEB & LOEB
           Attorneys for Defendant
22    BY:  JEREMY MARGOLIS

23

24

25
```

L6M5cal1

```
 1                (Case called)

 2                THE DEPUTY CLERK:  Counsel, please state your name for

 3     the record.

 4                MR. MONTELEONI:  Good morning, your Honor.  Paul

 5     Monteleoni, Hagan Scotten, and Alexandra Rothman for the

 6     government.

 7                THE COURT:  Good morning.

 8                MR. SCOTTEN:  Good morning, your Honor.

 9                THE COURT:  Good morning.

10                MR. SCHOEMAN:  Good morning, your Honor.  Paul

11     Schoeman, Darren LaVerne, Jeremy Margolis, this is Mr. Calk,

12     and, my colleague, Michelle Ben-David, is here for the defense.

13                THE COURT:  Good morning.

14                MR. LaVERNE:  Good morning, your Honor.

15                THE DEFENDANT:  Good morning, your Honor.

16                THE COURT:  So, I'm not sure when the venire will be

17     ready but I thought we could at least take this opportunity to

18     take care of some housekeeping matters.  I received a couple of

19     applications since we were last together I think over the

20     weekend but, in any event, it seemed to me that none were so

21     urgent that we had to meet yesterday to address them.  So, let

22     me first address the issue of summary charts.

23                I received an application from the defendant to

24     preclude the use of certain summary charts summarizing exhibits

25     and essentially placing them in chronological order.  I
```

L6M5cal1

1    received a response from the government.  I think most telling

2    was the case that was cited by the government, *United States v.*

3    *Ho*, a reported Second Circuit case which obviously is

4    precedential and binding on me.  on very, very similar facts,

5    meaning similar submission of summary charts, the district

6    court allowed the charts in with limiting instructions.  And

7    so, my proposal, if there is a sufficient foundation -- or my

8    inclination, let's put it that way, is to do that.  But I'm not

9    going to pre-admit them, I will wait until Agent Baccari lays

10   the foundation -- and I assume the government will do that in

11   the way that the government has proffered -- and she will give

12   the kind of testimony that the government has proffered which

13   seems to me proper under *United States v. Ho*.  And then,

14   assuming that there is sufficient foundation and proper

15   testimony, I would be inclined to admit the summary charts at

16   that point but I would expect you to offer them and, if there

17   is any objection, you will of course object.

18            Mr. Schoeman?

19            MR. SCHOEMAN:  Your Honor, may I make a couple of

20   points about the *Ho* case that was cited by the government?

21            THE COURT:  Yes.

22            MR. SCHOEMAN:  Because I think it actually makes

23   some -- can you hear me?

24            THE COURT:  Not exactly.

25            MR. SCHOEMAN:  All right.  I will speak louder.

L6M5cal1

1          THE COURT:  Wonderful.

2          MR. SCHOEMAN:  I think the *Ho* case makes implicitly

3    some of the points that the defense was making.  *Ho* was a trial

4    where there were three percipient witnesses who testified in

5    front of Judge Preska.  The percipient witnesses all testified

6    first and then the government called their summary witnesses

7    afterwards so that there was no percipient witness who

8    testified subsequent to the admission of the charts.  And the

9    concern that the defense has, which is reflected in the cases

10   we cite, is that if the government starts its case with an

11   agent who has no firsthand or personal knowledge and then calls

12   witnesses who will say something consistent, it creates an

13   illusion for the jury that there are actually two witnesses who

14   are saying what happened.  And because the summary agent

15   actually has no knowledge and really should only be testifying

16   to the form of this is a piece of paper that I have seen, it's

17   a little -- it is misleading to the jury.  It is a kind of

18   overview witness that sort of corroborates the government's

19   case.  And so, our real objection was both that the charts were

20   turned over late but also that the government seems like it

21   wants to call its summary witness before any other testimony as

22   a way of suggesting that the FBI has done an investigation and

23   agrees with the witnesses who are to follow.

24          So, in the *Ho* case I think the only issue in the *Ho*

25   case was that the defense said those charts are perfectly

L6M5cal1

1    accurate, we don't dispute them, we just don't want them to

2    come into evidence.  That's a sort of minor part of what we are

3    objecting to.  It is really the previewing of the case with an

4    FBI agent before any of the evidence has been admitted through

5    a percipient witness.

6            THE COURT:  OK.  I mean I will hear from the

7    government in just a second but my inclination is, based on the

8    government's representation, that this would not be the first

9    witness and that in fact the plan is for this witness to be the

10   sixth witness, subject to the variables and vagaries of our

11   schedule.  I appreciate having heard your objection because I

12   will try to make it clear in my limiting instruction that what

13   they are hearing is not evidence.  I am sure, when the

14   government lays the foundation, they will make it clear that

15   this is essentially a summary of things that are in evidence

16   and I will instruct the jury that part of their job is to

17   assure and be satisfied that it is in fact an accurate summary

18   of the evidence and that it is not evidence itself which is

19   what I understand was the thrust of the instruction in *Ho*.

20           Thank you for your comment.

21           MR. SCHOEMAN:  Thank you, your Honor.

22           THE COURT:  So that is summary charts.

23           With respect to Government's Exhibits 610 and 611,

24   there was an objection as to hearsay.  The government has

25   redacted those exhibits and eliminated, to me, what seems like

L6M5cal1

1    hearsay, they're not statements offered for the truth

2    remaining.  I'm not going to pre-admit them because there is

3    still I think an objection as to authentication.  So, I will

4    reserve on that, you can offer them at the time, and my

5    inclination, if the objection is hearsay, would be to admit

6    them.  If there is any other objection I would like to hear it

7    now because I don't allow speaking objections, although one

8    word is OK.  It is all right to stand up and say "hearsay" but

9    I don't want a sentence or anything longer than that.  So, we

10   can wait until then.

11           With respect to the preliminary charge, thank you.  I

12   know you have got a lot to do in the days right before trial

13   and I had invited you to submit to me an alternative to the

14   instruction that I had proposed to give to the jury about the

15   nature of the charges and what their job would be during the

16   trial and I have reviewed what you submitted.  My decision is

17   that I will give the preliminary charge that we discussed at

18   the final pretrial conference and that I had distributed in

19   advance of the final pretrial conference and the reason is that

20   it seemed to me that it is more balanced.  The submission from

21   the defendant I think puts emphasis on what I anticipate the

22   defenses would be and, frankly, that is what a good defense

23   lawyer would submit.  So, thank you, but I think what I will do

24   is just give the charge that I had distributed and that we

25   discussed.

L6M5cal1

1          And then in terms of exhibits, I am prepared to admit

2     exhibits now, certain exhibits.  Based on the chart that I

3     received from the government what I am admitting now are

4     exhibits as to which there were no objections.  So, in other

5     words, both parties agreed to admissibility and that includes

6     both government exhibits and defense exhibits, as well as

7     exhibits where I received further argument from the parties in

8     your submissions, we discussed some of them at the final

9     pretrial conference, and I gave you indications of what my

10    rulings were as to overrule objections or accepting the

11    objections.

12         So, let me get the appropriate document and I will

13    read them into the record.  So, I am admitting now Government's

14    Exhibits:  1 through 5, 101 through 108, 110 through 121, 131,

15    137, 139 to 144, 146 and 147, 149 and 150, 152, 154, 156, 158

16    to 161, 163 to 164, 169, 172 to 173, 175 to 176, 181 to 182,

17    184, 186, 186-B, 181 to 191, 193, 196 to 198, 200 to 203, 206,

18    208, 211 to 213, 215 to 217, 219, 222, 225 to 226, 228 to 230,

19    230-A, 231, 233 to 237, 240, 244 to 245, 248 to 249, 252, 254,

20    256, 257, 259 to 261, 263 and 264, 266, 268 to 272, 276, 278 to

21    284, 286, 289 to 290, 291-A, 293, 295 to 300-A, 302, 304 to

22    312, 314, 316, 317 to 325, 327, 330, 332 to 333, 334 to 337,

23    341, 345, 348 to 349, 360-A to 360-D, 451-A, 451-I, 451-1R, as

24    in Robert, 451-T, 453 to 455, 501 to 501-3, 551, 562, 566 and

25    567, 801 to 812, 851 to 854, 951, 954 to 955, 957 to 959, 1009

L6M5cal1

1    to 1012, 1102, 1201, 1202 to 1208, 1209 and 1210, 1211 and

2    1212, 1213 to 1218, 1251, 2201 to 2212 and 2216.

3              Those are all Government's Exhibits.

4              (Government's Exhibits 1 to 5, 101 to 108, 110 to 121,

5    131, 137, 139 to 144, 146, 147, 149, 150, 152, 154, 156, 158 to

6    161, 163 to 164, 169, 172 to 173, 175 to 176, 181 to 182, 184,

7    186, 186-B, 181 to 191, 193, 196 to 198, 200 to 203, 206, 208,

8    211 to 213, 215 to 217, 219, 222, 225 to 226, 228 to 230,

9    230-A, 231, 233 to 237, 240, 244 to 245, 248 to 249, 252, 254,

10   256, 257, 259 to 261, 263, 264, 266, 268 to 272, 276, 278 to

11   284, 286, 289 to 290, 291-A, 293, 295 to 300-A, 302, 304 to

12   312, 314, 316, 317 to 325, 327, 330, 332 to 333, 334 to 337,

13   341, 345, 348 to 349, 360-A to 360-D, 451-A, 451-I, 451-1R,

14   451-T, 453 to 455, 501 to 501-3, 551, 562, 566, 567, 801 to

15   812, 851 to 854, 951, 954 to 955, 957 to 959, 1009 to 1012,

16   1102, 1201, 1202 to 1208, 1209, 1210, 1211, 1212, 1213 to 1218,

17   1251, 2201 to 2212, 2216 received in evidence)

18             THE COURT:  I am also admitting the following defense

19   exhibits:  10-18, 100, 104 to 110, 120 and 121, 121-A to 121-F,

20   122 and 122-A and 122-B, 123 to 125, 125-A to 125-E, 127, 131,

21   133, 141, 141-A, 142, 146, 146-A, 147 and 148, 148-A, 149 and

22   149-A, 151 and 152, 154 and 155, 155-A, 156, 157, 157-A and

23   157-B, 158 and 158-A, 159 to 161, 161-A and 161-B, 162, 162-A

24   and 162-B, 164, 164-A and 164-B, 166, 167, 167-A to 167-D, 169,

25   172 and 173, 173-A, 179 and 179-A, 180, 181 and 181-A, 183 and

L6M5cal1

183-A, 184 and 184-A, 185, and 185-A and 185-B, 186, 186-A and

186-B, 187, 191, 191-A and 191-B, 192, 192-A and 192-B, 193,

193-A, 199 and 200, 200-A, 203 and 204, 207 and 208, 208-A and

208-D, 210, 217, 217-A through 217-C, 222 through 224, 224-A to

224-B, 225 and 226, 226-A and 226-B, 227, 232, and 232-A and

232-B, 233 and 233-A through 233-F, 234, 237, 245 and 246,

246-A to 246-C, 247 to 249, 249-A through 249-B.

(Defendant's Exhibits 10 to 18, 100, 104 to 110, 120,

121, 121-A to 121-F, 122, 122-A, 122-B, 123 to 125, 125-A to

125-E, 127, 131, 133, 141, 141-A, 142, 146, 146-A, 147, 148,

148-A, 149, 149-A, 151, 152, 154, 155, 155-A, 156, 157, 157-A,

157-B, 158, 158-A, 159 to 161, 161-A, 161-B, 162, 162-A, 162-B,

164, 164-A, 164-B, 166, 167, 167-A to 167-D, 169, 172, 173,

173-A, 179, 179-A, 180, 181, 181-A, 183, 183-A, 184, 184-A,

185, 185-A, 185-B, 186, 186-A, 186-B, 187, 191, 191-A, 191-B,

192, 192-A, 192-B, 193, 193-A, 199, 200, 200-A, 203, 204, 207,

208, 208-A, 208-D, 210, 217, 217-A through 217-C, 222 through

224, 224-A to 224-B, 225, 226, 226-A, 226-B, 227, 232, 232-A

and 232-B, 233, 233-A through 233-F, 234, 237, 245, 246, 246-A

to 246-C, 247 to 249, 249-A through 249-B received in evidence)

THE COURT:  I am also admitting, in part, the

following exhibits and the "in part" was discussed at the final

pretrial conference and I think everyone understands what the

limitations are:  51-1 through 51-5, 136, 165, 167, 185, 209,

218, 223, 227, 273, 315 and 953.

L6M5cal1

1            Those were all Government's Exhibits.

2            (Government's Exhibits 51-1 through 51-5, 136, 165,

3    167, 185, 209, 218, 223, 227, 273, 315, 953 received in

4    evidence)

5            THE COURT:  There are also two government's exhibits

6    that I am admitting subject to connection or admitting

7    conditionally and they are 552 and 1152.

8            (Government's Exhibits 552 and 1152 received in

9    evidence)

10           THE COURT:  Anything else you want in evidence you

11   should move into evidence either at the time during the

12   testimony or if there is some discussion you want you can ask

13   for it either at the beginning of the trial day or at the end

14   of the trial day.

15           Yes?

16           MR. MONTELEONI:  Thank you, your Honor.  On that,

17   there are several exhibits that we have added and some that the

18   defense have added recently.  Obviously, since those happened

19   after the sort of prescribed objection time we haven't really

20   gotten to a point of exchanging objections and I was just

21   wondering, would it be possible to just sort of set a time for

22   when we would do that?  We would certainly propose talking to

23   the defense about it tonight but we would like to get some of

24   these new exhibits ready for potentially our witnesses

25   tomorrow.

L6M5cal1

1          THE COURT:  So, ideally what you would do is talk to

2     each other and perhaps agree to the admissibility of some

3     substantial portion and then, in the same way that you had

4     grouped the exhibits for our prior discussions, if there are

5     groupings, or if you think they are similar to my rulings as to

6     other exhibits, if you could present that to me?  I am happy to

7     hear it whenever and however the parties can agree, and if you

8     can't agree then I will impose something.  But, I would let you

9     talk first to see if you can agree on something.

10          Let me just ask Mr. Street where we are with the

11     venire because you may even have time to talk now. (pause)

12          So we haven't heard anything about the venire or any

13     projections when they might be ready so I will go off the

14     bench, I will give you a chance to talk to each other if you

15     can agree on something or, if you can't, you can respectively

16     propose something, then I will hear it.

17          Yes?

18          MR. MONTELEONI:  Thank you, your Honor.

19          As soon as there is a break we will talk to the

20     defense about it.  We have two other things to raise.  One,

21     just as a sort of a housekeeping matter, I understand that the

22     Court's rule, COVID protocols for non-jury proceedings are

23     somewhat different and more relaxed than the jury proceedings.

24     If, during times like this when the jury isn't here it would be

25     possible to sort of apply the non-jury rules and bring an extra

L6M5cal1

1    chair so the AUSAs could all be at the table we would

2    appreciate that.

3         THE COURT:  I am going to deny that.  Sorry.  And the

4    only reason is that I don't want to defy my Court's rules and

5    the rule, it says for non-jury proceedings and this is a jury

6    proceeding even though the jury is not here and so I would

7    like, as much as I would like to take my mask off but that

8    doesn't seem to be the protocol.  My guess is that it will

9    change during the course of this trial.  I think it will change

10   soon.

11        MR. MONTELEONI:  All right.  Thank you, your Honor.

12        The other is that we -- I think that there are some

13   exhibits that are now fully briefed that we put in a letter in

14   the 700 series, 701, 702, 704 and 719 that we had letters

15   coming in over the weekend on.  I don't know if the Court

16   wishes to hear from us on that.

17        THE COURT:  Maybe the thing for me to do, can you just

18   remind me which one those exhibits are?

19        MR. SCOTTEN:  Your Honor, I will give you the exhibits

20   and also the docket numbers.  The government had a letter of

21   June 18 which is docket no. 225 which the defense responded to

22   on June 20th in docket no. 227, and there are sort of two

23   issues in there.  The first is as to Government Exhibit 701,

24   702, 704 and 719 which are OCC regulations that were e-mailed

25   to the defendant.  And then a separate issue, Government

L6M5cal1

1    Exhibit 285, which is the voicemail left by James Brennan --
2    this wasn't ruled up on at the PTC because it was a voicemail
3    and wasn't teed up right.  Frankly, on the voicemail -- and
4    there is no urgency, Mr. Brennan is not testifying today or
5    unless we go very quickly tomorrow -- we would appreciate the
6    Court's ruling on the OCC exhibits because Mr. Paulson is
7    likely to testify fairly soon.  It is a fairly minor issue.  We
8    already have a ruling on the substance of his testimony.  The
9    question is can he show the regulations that were emailed to
10   the defendant which we think it is helpful both in showing the
11   jury what the regulations --
12            THE COURT:  Just say that again?  The issue is?
13            MR. SCOTTEN:  So, the issue is just the admissibility
14   of the exhibits and the exhibits are, to be more specific, two
15   cover letters that would be emailed by the OCC to, among other
16   people, bank chairmen -- actually bank CEOs which the defendant
17   was; and then two organization portions of two OCC regulations
18   which were sort of the regulations being announced by the cover
19   letters.  And so, we want to show those regulations to the jury
20   so that when Mr. Paulson testifies, as the Court has already
21   ruled he can, about background regulation and that banks were
22   informed of this and that the defendant was likely to be aware
23   of them we want to say, one, here is what he is talking about
24   when he talks about X regulation; and two, look, this was
25   actually sent to the defendant so this is one of the ways in

L6M5cal1

1    which a bank CEO would be informed of these regulations.

2              THE COURT:  Or at least this was sent to bank CEOs and

3    the defendant is a bank CEO.

4              MR. SCOTTEN:  Correct.  He was at the time that they

5    were emailed out.

6              And since your Honor gave me a minute I should note,

7    just so that if your Honor is going to resolve it over lunch or

8    something, that in the defense response they make two requests

9    which we are actually agreeable with so there is no need for

10   your Honor to consider it.  One is they ask to not elicit

11   Mr. Paulson's current position.  He is currently essentially

12   the no. 2 at the OCC and we are fine with that, it doesn't have

13   any relevance to his testimony.  We do need to elicit his

14   position as of 2018 where he was sort of head of the OCC

15   Chicago office.  That's important because that's how he gets to

16   meet the defendant and have this interaction he is going to

17   testify about.

18             THE COURT:  Is there any objection to that?

19             MR. SCOTTEN:  I don't know.  They just ask that he not

20   talk about his current position.

21             THE COURT:  I will hear from the defendant in a

22   second.

23             So, you said in the defense response there were two

24   requests with which you agree; one was not to elicit his

25   current position and the other was?

L6M5cal1

1          MR. SCOTTEN:  The other is the defense -- I'm not sure

2     if it was a request so much as a complaint -- not to be

3     pejorative -- but they were concerned that if we asked

4     Mr. Paulson what the defendant said about the loans, one of the

5     things Mr. Paulson would testify to was that the defendant

6     essentially said any banker in Chicago would have made these

7     loans because the collateral was great.  And the defense said,

8     well, if we bring that out of Mr. Calk and then five minutes

9     later Mr. Paulson is testifying under OCC regulations "the

10    collateral is great" is not a safe and sound banking practice

11    it would look like we were using Mr. Paulson to kind of

12    directly rebut the defendant's testimony alone.  We do not

13    intend to elicit that statement, it is frankly an exculpatory

14    statement by the defendant that we don't want to elicit and the

15    defense has no right to elicit.  We are solely going to ask

16    Mr. Paulson about essentially whether -- about the false

17    statement that the defendant played to him denying that he

18    sought a position in the Trump Administration and he did this

19    in the context of the Manafort loans.  We are not going to

20    elicit the defendant's substantive statements on the quality of

21    the Manafort loans and therefore when Mr. Paulson talks about

22    these OCC regulations it will not, you know, look like he is

23    sort of telling you, *Hey, look, the OCC regulations* --

24          THE COURT:  It sounds like that was an effective

25    defense request to which you conceded.

L6M5cal1

1          MR. SCOTTEN:  I think that's right, your Honor.

2          THE COURT:  Since we are talking about these why don't

3  I hear from the defense both on Government's Exhibits 701, 702,

4  704 and 719 and then anything else.

5          MR. LAVERNE:  Thank you, your Honor.  And we

6  appreciate the government's concession of those couple of

7  points and I think that that fielded that issue.  Just though I

8  would see in terms of identifying Mr. Paulson's position, my

9  understanding is at the time of the events in question I think

10  his title is something like senior deputy comptroller of the

11  OCC.  I disagree with Mr. Scotten.  I don't think it is

12  necessary to say what his title was or the seniority of his

13  position at the time of this meeting.  The meeting can easily

14  be explained by saying simply that Mr. Paulson was employed by

15  the OCC, he was involved in the examination -- or however they

16  want to put it.  I don't think that eliciting his title is

17  relevant here and I think that even saying he is the head of

18  the Chicago office or he is Senior Deputy Comptroller is very

19  likely to have prejudicial effect given the concerns your Honor

20  raised the last time we discussed the issue about the jury

21  being given the impression that he was a high-level person from

22  the OCC here talking about these regulations, their importance,

23  bankers always follow them.  It is going to have an unfair

24  prejudicial effect on Mr. Calk.

25          MR. SCOTTEN:  Your Honor, if the title is a concern we

L6M5cal1

1    are happy to not ask about the title.  We don't think that
2    really conveys anything.  The fact that Mr. Paulson was
3    managing the Chicago office is relevant.  One, the jury is also
4    going to hear from sort of the line-level bank examiner about a
5    different meeting.  It is important to know why there is two
6    meetings; and two, the fact that this was a meeting called at
7    Mr. Calk's request of the chairman of the bank saying I want to
8    talk to sort of the regional manager lends weight and
9    significance to the meeting where Mr. Calk goes on to make
10   false statements about his interest in the position.  It is
11   significant that it is sort of a principal-to-principal
12   meeting.  I don't think saying *I was in charge of the Chicago*
13   *office* is going to imbue Mr. Paulson with such authority -- it
14   is not like saying he is the head of the OCC -- which he was
15   recently, we are not going to tell the jury that -- but I think
16   it is fine to say, look, I managed the Chicago office, one of
17   my regional banks wanted to meet with me.  I think that makes
18   sense to the jury.
19           MR. LAVERNE:  If the government wants to say he
20   managed the Chicago office, that is fine.
21           THE COURT:  OK.  You want to say that he managed the
22   Chicago office and agree with that and everyone agrees?
23           MR. SCOTTEN:  I will talk to Mr. Paulson beforehand.
24   I will ask him what were you doing for OCC at the time.  He may
25   say I ran the Chicago office, I was in charge of the Chicago

L6M5cal1

1    offices or something like that.

2              THE COURT:  You might prompt him for "manage".

3              MR. SCOTTEN:  Manage is better.  I am sure I can get

4    him to say that.

5              THE COURT:  What about the regulations and cover

6    letters, Government Exhibit 701, 702, 704, 719?

7              MR. LAVERNE:  I think with all the agreements we just

8    happened to reach in the courtroom I think we are OK, we will

9    cross on those exhibits.

10             THE COURT:  So I will admit 701, 702, 704 and 719.

11             (Government's Exhibits 701, 702, 704 and 719 received

12   in evidence)

13             THE COURT:  Is there anything else we can take care of

14   right now?

15             MR. SCOTTEN:  No, your Honor.  285 can wait, it is an

16   open issue, it is exceedingly minor and won't come up today.

17             THE COURT:  OK.

18             MR. SCHOEMAN:  Your Honor, the tiniest of clerical

19   issues.  When your Honor admitted exhibit -- I think you said

20   "10 dash 18" and I want to make it clear for the record it is

21   intended to be 10 through 18.

22             THE COURT:  Through 18, OK.  Were those defense

23   exhibits?

24             MR. SCHOEMAN:  Those are defense exhibits.

25             THE COURT:  OK.  So thank you for the correction.

L6M5cal1

1    Defense Exhibits 10 through 18 are admitted.

2             We are adjourned now briefly.  You can confer with

3    each other about additional exhibits and Mr. Street will let us

4    know when we have word about the venire.

5             (Recess; Jury selection under separate cover)

6

7                         GOVERNMENT EXHIBITS

8    Exhibit No.                                    Received

9     1 to 5, 101 to 108, 110 to 121, 131,  . . . . .11

10              137, 139 to 144, 146, 147,

11              149, 150, 152, 154, 156, 158

12              to 161, 163 to 164, 169, 172

13              to 173, 175 to 176, 181 to

14              182, 184, 186, 186-B, 181 to

15              191, 193, 196 to 198, 200 to

16              203, 206, 208, 211 to 213, 215

17              to 217, 219, 222, 225 to 226,

18              228 to 230, 230-A, 231, 233 to

19              237, 240, 244 to 245, 248 to

20              249, 252, 254, 256, 257, 259

21              to 261, 263, 264, 266, 268 to

22              272, 276, 278 to 284, 286, 289

23              to 290, 291-A, 293, 295 to

24              300-A, 302, 304 to 312, 314,

25              316, 317 to 325, 327, 330, 332

L6M5cal1

```
                      to 333, 334 to 337, 341, 345,

                      348 to 349, 360-A to 360-D,

                      451-A, 451-I, 451-1R, 451-T,

                      453 to 455, 501 to 501-3, 551,

                      562, 566, 567, 801 to 812, 851

                      to 854, 951, 954 to 955, 957

                      to 959, 1009 to 1012, 1102,

                      1201, 1202 to 1208, 1209,

                      1210, 1211, 1212, 1213 to

                      1218, 1251, 2201 to 2212, 2216

    51-1 through 51-5, 136, 165, 167, 185,  . . . .13

                      209, 218, 223, 227, 273, 315,

                      953

    552 and 1152   . . . . . . . . . . . . . . .13

    701, 702, 704 and 719   . . . . . . . . . . .21

                         DEFENDANT EXHIBITS

    Exhibit No.                              Received

      10 to 18, 100, 104 to 110, 120, 121,  . . . . .12

                      121-A to 121-F, 122, 122-A,

                      122-B, 123 to 125, 125-A to

                      125-E, 127, 131, 133, 141,

                      141-A, 142, 146, 146-A, 147,

                      148, 148-A, 149, 149-A, 151,

                      152, 154, 155, 155-A, 156,

                      157, 157-A, 157-B, 158, 158-A,
```

L6M5cal1

```
1                    159 to 161, 161-A, 161-B, 162,

2                    162-A, 162-B, 164, 164-A,

3                    164-B, 166, 167, 167-A to

4                    167-D, 169, 172, 173, 173-A,

5                    179, 179-A, 180, 181, 181-A,

6                    183, 183-A, 184, 184-A, 185,

7                    185-A, 185-B, 186, 186-A,

8                    186-B, 187, 191, 191-A, 191-B,

9                    192, 192-A, 192-B, 193, 193-A,

10                   199, 200, 200-A, 203, 204,

11                   207, 208, 208-A, 208-D, 210,

12                   217, 217-A through 217-C, 222

13                   through 224, 224-A to 224-B,

14                   225, 226, 226-A, 226-B, 227,

15                   232, 232-A and 232-B, 233,

16                   233-A through 233-F, 234, 237,

17                   245, 246, 246-A to 246-C, 247

18                   to 249, 249-A through 249-B

19

20

21

22

23

24

25
```