# Kramer Levin

Paul H. Schoeman
Partner
T 212.715.9264
F 212.715.8064
PSchoeman@kramerlevin.com

1177 Avenue of the Americas
New York, NY 10036
T 212.715.9100
F 212.715.8000

August 20, 2021

<u>Via ECF</u>

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    <u>United States v. Stephen M. Calk</u>, S1 19 Cr. 366 (LGS)

Dear Judge Schofield:

        On behalf of Mr. Calk, we respectfully submit this letter in support of our motion for a judgment of acquittal on all counts pursuant to Federal Rule of Criminal Procedure 29(c). The Court previously reserved decision on the motion when it was initially made at the close of the government's case and renewed after the parties rested. Viewing the evidence in the light most favorable to the government, no rational juror could have found beyond a reasonable doubt that (i) Mr. Calk acted corruptly and intended to be influenced in connection with the Manafort loans; or (ii) the alleged bribe – here, the "assistance" provided by Paul Manafort regarding a position with the Trump Campaign and Administration – was a "thing of value" under the bank bribery statute, or one worth more than $1,000. Accordingly, the jury's verdict on Counts One (bank bribery) and Two (conspiracy to commit bank bribery) should be set aside and the Court should enter a judgment of acquittal.

    **I.**    <u>**Legal Standard**</u>

        Rule 29(c) provides that on a defendant's motion, or on its own, after the jury's verdict, a court shall "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a), (c). "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Percoco*, 317 F. Supp. 3d 822, 827 (S.D.N.Y. 2018) (internal quotation marks and alteration omitted).

        Where a jury's finding regarding intent rests only on "modest evidentiary showings, equivocal or attenuated evidence of guilt, or a combination of the three," it must be set aside. *United States v. Cassese*, 428 F.3d 92, 103 (2d Cir. 2005). In *Cassese*, for example, the Second Circuit affirmed a district court's post-verdict grant of a Rule 29 motion where the government failed to present sufficient proof that the defendant acted willfully, and where the evidence, at best, gave "equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence." *Id.* (citation omitted). Similarly, in *United States v. Stewart*, the district court granted a Rule 29 motion where the jury could have drawn multiple reasonable inferences

The Honorable Lorna G. Schofield
August 20, 2021



as to why the defendant made certain allegedly false statements, some of which were equally consistent with innocence.  305 F. Supp. 2d 368, 376-78 (S.D.N.Y. 2004).

In drawing inferences, a jury may not rely simply on speculation, and courts give no deference to impermissible speculation.  *See United States v. Pauling*, 924 F.3d 649, 656 (2d Cir. 2019); *see also Stewart*, 305 F. Supp. 2d at 376.  While the jury may draw inferences from the evidence, an inference must be "a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist." *Pauling*, 924 F.3d at 656 (internal quotation marks and citation omitted).  Even still, "[w]here a fact to be proved is also an element of the offense . . . it is not enough that the inferences in the government's favor are permissible. . . . The inferences [must be] sufficiently supported to permit a rational juror to find that the element, like all elements, is established beyond a reasonable doubt." *Id*. at 657 (internal quotation marks and citation omitted).  In this context, the Second Circuit recently reiterated the requirement that "the government must do more than introduce evidence at least as consistent with innocence as with guilt." *Id*. at 656.[1]

## II.     The Government Failed to Prove The Requisite Intent

To convict on either count, the jury was required to find that Mr. Calk, acting corruptly, accepted a bribe (or, in the case of Count Two, conspired to accept a bribe) while intending to be influenced in connection with The Federal Saving Bank's ("TFSB" or "the Bank") extension of the Manafort loans.  To prove intent, the government had to prove not only that Mr. Calk acted with a bad or evil motive, but also that Mr. Calk solicited or received the bribe (or conspired to do so) intending to be influenced by it, and that he did so in exchange for causing, or promising to cause, the loans to be issued.  Based on the evidence at trial, no rational

---

[1] *See also United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002) (Where "the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." (internal quotation marks and citation omitted)); *accord United States v. Mulheren,* 938 F.2d 364, 372 (2d Cir. 1991).

The Honorable Lorna G. Schofield
August 20, 2021



jury could have concluded that all of these components of the element were proven beyond a reasonable doubt.²

The evidence showed that TFSB loan officer Dennis Raico introduced Manafort to the Bank in April 2016. (*See* DX 208; DX 210; *see also* Tr. 863:3-6). At that time, Raico advised Mr. Calk, along with Javier Ubarri (the Bank's president) and James Brennan (the Bank's head commercial underwriter), that Manafort was a wealthy and successful man who was seeking to do substantial, and potentially very profitable business with the Bank. (*See* DX 208; DX 210). In late July 2016, the Bank's loan committee (including the Bank's president, Mr. Ubarri, and the Bank's chief operating officer, Jim Norini, in addition to Mr. Calk) unanimously and conditionally approved a proposed loan to Manafort on terms that were at least as favorable to the Bank as its standard terms for a portfolio loan. (GX 108; Tr. 862:18-863:2; *see also* Tr. 850:3-856:16). Those terms included a 7.25% interest rate, an upfront payment of 2%,³ and collateral substantially exceeding the amount of the loan. (*See* DX 146-A; GX 108). The loan committee also required Manafort to pay all of the fees and costs associated with the loan. (Tr. 864:10-866:22). It was undisputed at trial that, at that time, none of the negative information regarding Manafort's finances had come to light. (*See* Tr. 862:3-11). Nor had it come to light by early August 2016, when Mr. Calk was appointed to a volunteer position on candidate Trump's National Economic Advisory Council ("NEAC"), which the government alleged was a bribe to induce Mr. Calk to conditionally approve the loan to Manafort. (*See* Tr. 867:25-868:18; Tr. 869:1-6; Tr. 879:21-880:4). Thus, there was insufficient evidence that Mr. Calk thought he was doing anything wrong in accepting Manafort's invitation to work on the NEAC, or in voting, along with the two other loan committee members, to approve the terms of the loan. Nor was there sufficient evidence to prove that the terms of the loan had been approved in exchange for Manafort's assistance with respect to the NEAC position or that Mr. Calk intended to be

---

² The infirmity of the evidence supporting the intent element of the bank bribery charge applies with equal force to the intent element of the conspiracy charge. To convict Mr. Calk of the conspiracy charge the government was required to prove that Mr. Calk had the intent to commit the underlying offense. *See United States v. Torres*, 604 F.3d 58, 65 (2d Cir. 2010) ("[To prove a conspiracy charge,] the government must prove at least the degree of criminal intent necessary for the substantive offense itself." (internal quotation marks and citation omitted)). Additionally, the alleged quid pro quo was at the heart of the government's circumstantial case that Mr. Calk and Manafort had engaged in a conspiracy by forming a mutual agreement to violate the law. (Tr. 1516:13-15). Finally, the conspiracy count is improper because both the charged substantive offense of bank bribery and the conspiracy involved only two people, Manafort and Mr. Calk. Accordingly, it violates Wharton's Rule, and the conviction on Count Two should be vacated for this independent reason. *See United States v. Sager*, 49 F.2d 725, 727-28 (2d Cir. 1931) (reversing judgment and dismissing conspiracy to commit bribery counts under Wharton's Rule); *cf. United States v. Benter*, 457 F.2d 1174, 1178 (2d Cir. 1972) (declining to apply Wharton's Rule because, in that case, "the agreement involved more participants than were necessary for the commission of the substantive offense.").

³ The original terms required an upfront payment of the standard 2%, but the Bank later required Manafort to pay an additional point. (*See* GX 156; Tr. 907:2-908:5).

The Honorable Lorna G. Schofield
August 20, 2021



influenced by that assistance.  Rather, the evidence established that Mr. Calk acted as he did simply because he believed the loans would be good business for the Bank.

       The government spent much of the trial attempting to prove that, after his appointment to the NEAC, Mr. Calk became aware of certain information uncovered by the Bank's underwriting department.  This was the linchpin of the government's case regarding intent.  The government sought to overcome the evidence that the loans were made on the Bank's standard terms, secured by personal guarantees from Manafort and his wife, and supported by collateral with a value substantially exceeding that of the loans, by proving that information obtained by the Bank subsequent to the initial approval by the loan committee established that the loans the Bank ultimately made in November 2016 and January 2017 were unduly risky – and thus that the only plausible explanation for the loans was that Mr. Calk had been bribed by Manafort.  The government's proof failed.  The only witness called by the government who could speak authoritatively with respect to this issue was Brennan.  But he testified that he never told Mr. Calk that the Bank should not make the loans, and could not remember ever discussing with Mr. Calk any of the concerns he claims to have had with the loans.  (Tr. 883:6-11; Tr. 753:3-13).  Instead, Brennan authored or approved loan memoranda reflecting that any risks associated with the loans were sufficiently mitigated by Manafort's income, assets, and collateral, and which assigned the loans an "Average" rating, meaning a loan to be approved.[4]  (GX 2; GX 4).  The government chose not to call any of the other underwriters who worked on the loans, or the other two members of the loan committee that approved the loans.  The other witnesses that the government did call were used in an effort to tar Mr. Calk in various respects, but none of them could provide testimony supporting the critical inferences that the government needed to establish Mr. Calk's corrupt intent to be influenced with respect to the loans.  And while the record contains numerous emails that Mr. Calk received conveying other Bank employees' support for the loans, (*see, e.g.*, GX 234; GX 230-A; DX 208; GX 108; GX 156), there are no emails or other documents received by Mr. Calk that provide an adequate foundation for the government's central contention that, absent the alleged bribes, Mr. Calk would not have supported the loans to Manafort.

       In sum, the government failed to adduce evidence from which a reasonable jury could conclude that Mr. Calk acted corruptly, intended to be influenced by a bribe, or approved the loans to Manafort in return for a bribe.  The record is replete with evidence providing a far more plausible explanation for the decision to make the loans:  Mr. Calk and two other members of the loan committee believed that they would be profitable for the Bank.  Accordingly, the Court should set aside the jury's verdict and enter a judgment of acquittal on both counts.

---

[4]  While the government argued that Mr. Calk became aware of prior defaults by Manafort on loans from other lenders, Brennan testified that the Bank had previously made loans to borrowers with prior foreclosures, and the record reflects that, as the chief underwriter, he did not include Manafort's defaults in the memoranda evaluating the risks of the loans.  (Tr. 833:25-834:17; GX 2; GX 4).

The Honorable Lorna G. Schofield
August 20, 2021



### II.   The Government Failed To Prove Manafort's Assistance Was a Thing of Value Worth Over $1,000

The government failed to prove beyond a reasonable doubt that the alleged bribe in this case – Manafort's "assistance" – was a thing of value under the bank bribery statute, much less one worth over $1,000.[5] Its failure to do so requires a judgment of acquittal on both counts.

The government alleged that Manafort's bribe was "assistance in obtaining a position with the [Trump] Presidential Campaign and the incoming presidential administration." (S1 Ind. ¶¶ 30, 33). With regard to the former, the government presented no evidence that the volunteer NEAC position Mr. Calk accepted in August 2016 (or, more specifically, the assistance Manafort rendered in facilitating that appointment) had any monetary value. In fact, evidence the government presented suggested the contrary. The government's witness Anthony Scaramucci, purportedly an insider with significant influence in the Trump Campaign and Transition Team, testified that he could not even remember whether he, too, had been a member of the NEAC, and did not recognize the names of some of the committee members. (Tr. 374:22-376:10; Tr. 322:5-8). Moreover, the evidence – including testimony from Brigadier General Bernard Banks – showed that rather than obtaining value from the NEAC position, Mr. Calk viewed it as a form of service and an opportunity to contribute to the campaign on issues of interest to him. (Tr. 1309:6-24; Tr. 1310:21-24; Tr. 1312:11-15; *see also* DX 100). He devoted substantial time and effort to the position, at his own cost, and received nothing of value in return.

The evidence with regard to the value of Manafort's assistance in obtaining a position in the Trump Administration was similarly deficient. Of course, Mr. Calk never obtained a position, only an interview. Scaramucci testified that he told Mr. Calk in advance of the interview that it was unlikely to lead to a job, and defense witness Steven Cortes testified he told Mr. Calk that Manafort, who had been fired from his positon as campaign chairman, had no meaningful influence with Trump. (Tr. 326:16-327:3; Tr. 1406:18-1407:22). The proof of Manafort's assistance amounted to one email sent to Jared Kushner recommending Mr. Calk for a position and communications with Scaramucci – principally a call that lasted three minutes and 14 seconds – concerning an interview for a job that, by everyone's account, Mr. Calk was unlikely to get. (GX 562; Tr. 383:1-386:9; Tr. 369:13-21; Tr. 371:3-13; *see also* Tr. 1247:1-6). There was abundant evidence – including the testimony from Scaramucci and Lieutenant General Randall Rigby, as well as the references that many other contacts, independent from Manafort, provided for Mr. Calk – that making this kind of reference was commonplace, readily provided as a courtesy, and had no monetary or market value. (*See e.g.*, Tr. 368:25-372:6; Tr. 396:19-397:13; Tr. 672:14-673:3; DX 222-227; DX 230-232; DX 234; DX 237; DX 239-241; DX 245-246; DX 249).

---

[5] A violation of the charged statute, 18 U.S.C. § 215(a)(2), is not a felony offense unless the value of the bribe exceeds $1,000. *See* 18 U.S.C. § 215(a). The initial indictment in this case failed to charge a felony offense, as it failed to allege that Manafort's assistance had a value of more than $1,000. (*See* Ind. ¶ 30, Dkt. No. 2). After the defense noted this in the first set of joint requests to charge, (Dkt. No. 156 at 36 n.17), the government added the allegation to its superseding indictment. (S1 Ind. ¶ 30, Dkt. No. 175).

The Honorable Lorna G. Schofield
August 20, 2021



    In light of the absence of evidence on value, the government was compelled to argue in its closing that Manafort's assistance had a value of more than $1,000 based on Mr. Calk's travel costs in connection with the interview.[6] (*See* Tr. 1512:4-13). In particular, Mr. Calk's credit card reflected charges of approximately $1,800 for his stay at the Four Seasons Hotel and airfare when he travelled from Chicago to New York, where the interview took place. This evidence did not support the conclusion the government urged the jury to draw. For one, the travel costs were in substantial part a measure of the value Mr. Calk sought to receive in return for traveling by air and staying in a five star hotel, not the value of the interview he participated in after he arrived in New York, and surely not of Manafort's assistance. If Mr. Calk had chosen to drive to New York and to stay at the Holiday Inn, his trip likely would have taken longer, been less comfortable, and cost far less. Under the government's theory, Mr. Calk's conviction thus turned on the mode and quality of travel that Mr. Calk chose to purchase and could afford (and the prevailing prices available to someone traveling on short notice), not the monetary value of any assistance Manafort rendered in helping to procure the interview. And there was no evidence that Manafort knew the amount of Mr. Calk's travel expenses, which precludes any argument that the government's methodology for valuing the bribe reflects any form of negotiation or agreement between the parties.

    The government charged this case as a felony under a statute that required it to prove that the bribe offered has a value, and that the value exceeded $1,000. By its very terms (which set forth a monetary threshold separating a felony from a misdemeanor), the statute governs only bribes that are reliably susceptible to monetary valuation. Here, the evidence at trial failed to establish that the alleged bribes had any intrinsic or market-based monetary value, and the methodology the government offered to the jury to determine a value was far too speculative, vague, and arbitrary to withstand scrutiny under Rule 29. *Cf. United States v. Tillmon*, 954 F.3d 628, 644-45 (10th Cir. 2019) (vacating convictions under federal-programs bribery statute, where government failed to prove, using a non-speculative measure, that value of service received for bribe exceeded the statute's $5,000 threshold). Accordingly, the Court should enter a judgment of acquittal on both counts.

Respectfully submitted,

/s/ Paul H. Schoeman

Paul H. Schoeman
Darren A. LaVerne

cc: All counsel (via ECF)

---

[6] The government chose not to call at trial its proposed expert on value, Jeffrey McCutcheon. McCutcheon submitted a lengthy report prior to trial. (Dkt. No. 122-4). That report contained a number of theories as to how Manafort's assistance could be quantified at more than $1,000, none of which the government chose to pursue at trial. The theory that it did choose to pursue – relying on Mr. Calk's hotel and travel costs – was not contained in McCutcheon's report.