**Kramer Levin**

Paul H. Schoeman
Partner
T 212.715.9264
F 212.715.8064
PSchoeman@kramerlevin.com

1177 Avenue of the Americas
New York, NY 10036
T 212.715.9100
F 212.715.8000

October 8, 2021

<u>Via ECF</u>

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    <u>United States v. Stephen M. Calk</u>, S1 19 Cr. 366 (LGS)

Dear Judge Schofield:

    On behalf of Mr. Calk, we respectfully submit this reply letter in further support of our August 20, 2021 motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c).

### I.    The Government Failed to Prove the Requisite Intent

    To prove that Mr. Calk acted with the requisite criminal intent, the government was required to show that he corruptly engaged in a quid pro quo and had the specific intent to be improperly influenced by the personal benefits alleged to have been conferred on him by Paul Manafort. Because the government could not and did not introduce evidence sufficient to prove that Mr. Calk believed that the Manafort loans would be anything other than good business for the Bank, the government is left to recast facts that can just as easily be understood as evidence of Mr. Calk's innocence. Arguments of this kind are insufficient to survive a challenge under Rule 29. *See United States v. Pauling*, 924 F.3d 649, 656 (2d Cir. 2019) ("[T]he government must do more than introduce evidence at least as consistent with innocence as with guilt.") (internal citations and quotations omitted).

    The clearest example of the government's manipulation of the trial evidence is its insistence on Mr. Calk's "tellingly-timed reversals in extending each of the [Manafort] loans." (Dkt No. 285 at 2). What the government misleadingly calls "reversals" are merely examples of Mr. Calk following unobjectionable procedures at the Bank while other people – not Mr. Calk – flip-flopped or sought special treatment. Thus, when the Nottingham loan was set to close on October 19, 2016, twenty days before the presidential election, it was Manafort who reversed course and requested a different loan structure. (*See* GX 201). Whether TFSB president Javier Ubarri would also characterize his own reaction to Manafort's eleventh-hour renegotiations, (GX 203), as a reversal is purely speculative because the government elected not to call him or any other member of the TFSB loan committee. Whatever Ubarri's characterization of his own decision-making may have been, it was not Mr. Calk who walked away from the Manafort loan. On the contrary, when Raico immediately took it upon himself in October to shop the new proposal to Bank of the Internet ("BofI"), Mr. Calk supported the idea. (*See* GX 206). When, despite Raico's optimistic updates, BofI's underwriters were slow to approve the loan terms

The Honorable Lorna G. Schofield
October 8, 2021



(which they eventually did), Raico discussed with Ubarri the possibility of originating the loan in TFSB's portfolio. It was ultimately Ubarri who changed his own mind. It is clear from Raico's emails updating Ubarri that Ubarri considered the possibility of making the loan in the Bank's own portfolio, that Ubarri directed the underwriting department to evaluate Manafort's income, that the underwriting department expressed comfort with making a portfolio loan, and that Mr. Ubarri then told Mr. Calk in no uncertain terms that he was comfortable with any of three options for making the loan to Manafort. (GX 230-A; GX 234). Ubarri's agreement was a necessary precondition to making the loan since – as was undisputed – all portfolio loans require the unanimous approval of the loan committee. Since the government chose not to call Ubarri as a witness, the jury heard no evidence to support the government's theory that Mr. Calk "reversed" himself.

The government's argument that there was another such "reversal" in December 2016 is equally unfounded. The government points to a December 21, 2016 email in which Mr. Calk writes to Manafort's lawyer "we are in no way scheduling a closing," on the Union Street loan. (GX 295; Dkt No. 285 at 3). The government claims that Mr. Calk then "reversed" himself the next day, sending Manafort a term sheet for the loan, because of discussions between Manafort and Anthony Scaramucci about a job position for Mr. Calk. (Dkt No. 285 at 3). But the rest of the sentence in the email to Manafort's attorney is that "we are in no way scheduling a closing *until this loan is fully structured, underwritten and approved*." (GX 295 (emphasis added)). Mr. Calk never expressed that he was unwilling to make Manafort the loan. The term sheet he sent was step one, *i.e*, the structuring to which he refers in his email. In context, Mr. Calk was obviously just pushing back on the aggressive tone and pushiness of Manafort's real estate lawyer, not indicating that he no longer supported the loan. Lacking actual evidence of corrupt intent, the government once again attempts to shoe-horn a narrative into the otherwise innocuous facts that are in evidence.

None of the government's remaining arguments is sufficient to establish that Mr. Calk acted corruptly, entered into a quid pro quo and had the requisite intent to be influenced in the making of the loans by a purported bribe. They fail for the simple reason that they do not detract from, much less negate, the abundant evidence that Mr. Calk was motivated to support making the loans by his good faith belief that making the loans to Manafort was in the best interest of the Bank. Stripped of the rhetoric, the government is mostly pointing to the fact that Mr. Calk personally and enthusiastically supported the loans to Manafort and that, at the time of these events, neither he nor anyone else at the Bank perceived Mr. Calk's open and obvious political activities as creating a conflict of interest or a violation of a policy or regulation that would preclude the Bank from making the loans. Even Anna Ivakhnik, who left the Bank before the loans that were actually closed were even proposed, did not and could not testify that Mr. Calk had any reservations about the merits of the loans. While the government also seeks to make hay from after-the-fact statements to the OCC, and even a publicist's response to a reporter's questions about Mr. Calk's appointment to the National Economic Advisory Council, the government cannot (and in fact, does not) argue that those statements support an inference that Mr. Calk did not believe that making the loans was in the best interest of the Bank. At trial, the government did everything it could to unfairly impugn Mr. Calk's character, but these attacks, regardless of their merit or lack of merit, do not logically support the inference that the

The Honorable Lorna G. Schofield
October 8, 2021



loans were a corrupt quid pro quo or that Mr. Calk intended to be improperly influenced by the non-monetary "benefits" received from Manafort.

The government's failure to prove Mr. Calk had the requisite corrupt intent to commit bank bribery similarly dooms its conspiracy count. (*See* Dkt No. 284 at 3 n.2). In its attempt to demonstrate otherwise, the government offers incoherent arguments as to Manafort's state of mind, such as for example that "Manafort and his son-in-law joked together about the connection between the economic advisory council and the defendant's willingness to lend to them." (Dkt No. 285 at 4 (citing GX 655)). But the fact that Manafort and Jeffrey Yohai were joking at Mr. Calk's expense at the same time that they were indisputably conspiring to defraud Mr. Calk's bank does not support a "logical and convincing" inference that Mr. Calk was a knowing participant in their conspiracy. *United States v. Jones*, 393 F.3d 107, 111 (2d Cir. 2004).

Finally, as argued in our August 20 letter, the conspiracy count also fails in light of Wharton's Rule, given that the charged bribery scheme involved only two conspirators, Manafort and Mr. Calk. In the Second Circuit, a defendant cannot be convicted of conspiracy to commit bribery where, as here, the only "conspiracy" was between the two people necessary to commit bribery itself. (Dkt No. 284 at 3 n.2 (citing *United States v. Sager*, 49 F.2d 725, 727-28 (2d Cir. 1931)). The government had a full and fair opportunity to respond to this argument in its opposition, but chose instead to complain the argument was raised in a footnote. Contrary to the government's claim, the argument is properly before the Court and clearly a basis for setting aside the jury's verdict. *See, e.g.*, *Reid v. N.Y. Cty. Dist. Attorney Marrinaccio*, No. 00 Civ. 5164 (RCC), 2004 WL 1488194, at *4 (S.D.N.Y. July 1, 2004) (holding that "district courts . . . may consider" "an argument mentioned only in a footnote" and finding such an argument "validly raised"); *see also Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, No. 01 Civ. 2946 (AGS), 2002 WL 1159659, at *2 (S.D.N.Y. May 31, 2002) (argument raised in a footnote could "serve as the basis for a motion to reconsider").

Accordingly, the verdict on both counts should be set aside.

## II.   The Government Failed to Prove Manafort's Assistance Was a Thing of Value Worth Over $1,000

We argued in our opening letter that the government failed to adduce evidence that would permit a reasonable jury to reliably assign a monetary value to the "bribe" in this case, much less one of over $1,000. In attempting to satisfy the statute's monetary threshold at trial, the government chose to rely on the costs Mr. Calk incurred in flying to New York and staying at the Four Seasons Hotel the night before he was interviewed by the Tiger Team – a methodology that demonstrably does not measure the value of Manafort's assistance. The government chose not to present any other evidence, or make any other argument to the jury, regarding valuation.

Tellingly, the government's principal argument in opposition is not the one it relied on at trial. Instead, the government now purports to value Manafort's assistance based on the value of the loans Manafort received from the Bank, claiming that "the value of the loans to

The Honorable Lorna G. Schofield
October 8, 2021



the Bank can be used as a measure of the thing of value under 'traditional valuation methods.'" (Dkt No. 285 at 5).  At the same time, however, the government admits that it "did not contend that the entire $16 million face value of the loans was the measure of the bribe," recognizing that the Bank expected to be (and in fact will be) repaid in full for the loans.  (*Id*.).  Because the government did not present at trial (by expert testimony or otherwise) an alternative methodology for calculating the value of the loans, it is now reduced to arguing, without citing any evidence at all, that the loans were "plainly worth well over $1,000."[1]  (*Id*.).  This *ipse dixit* is not enough to support a criminal conviction.

With regard to the sole valuation theory presented at trial, the government offers no substantive response to our argument that the $1,800 in travel costs is not a proxy for the value Mr. Calk placed on Manafort's assistance.  These costs reflect payment for goods and services that Mr. Calk received in return, including, most significantly, a stay at the Four Seasons Hotel.  This was established by the invoices introduced into evidence by the government (GX 851; GX 852), and was not something a rational jury was entitled to ignore in rendering its verdict.  The government fails to explain in its opposition how all, or even most, of the cost associated with these goods and services could instead be attributed to the value of Manafort's offer of assistance.  Accordingly, it has failed to show that there was a rational basis for the jury's verdict.

\*     \*     \*

For the foregoing reasons, and those set forth in our August 20, 2021 letter, the Court should grant our Rule 29 motion and enter a judgment of acquittal.

Respectfully submitted,

/s/ Paul H. Schoeman

Paul H. Schoeman
Darren A. LaVerne

cc:     All counsel (via ECF)

---

[1] The government suggests that it will present further evidence and argument on this issue at sentencing.  This is clearly an insufficient response for purposes of this Rule 29 motion, which concerns the evidence and arguments presented to the jury at trial.