```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
   UNITED STATES OF AMERICA,                                 :
                                                             :
                         -against-                           :      19 Cr. 366 (LGS)
                                                             :
   STEPHEN M. CALK,                                          :      OPINION AND ORDER
                                        Defendant.           :
------------------------------------------------------------ X
```

LORNA G. SCHOFIELD, District Judge:

After a jury trial, Defendant Stephen M. Calk was convicted of financial institution bribery in violation of 18 U.S.C. § 215(a)(2) and conspiracy to commit financial institution bribery in violation of 18 U.S.C. § 371. Calk was the Chairman, Chief Executive Officer and indirectly the majority shareholder of The Federal Savings Bank (the "Bank"). At the end of the Government's case, Calk moved pursuant to Federal Rule of Criminal Procedure 29 for a judgment of acquittal. The Court took the motion under advisement. After the jury's verdict, Calk renewed the motion under Federal Rule of Criminal Procedure 29(c). For the following reasons, the motion is denied.

I.  **STANDARD**

Rule 29 allows a defendant to move for a judgment of acquittal based on the insufficiency of the evidence. Fed. R. Crim. P. 29(a). "[A] defendant challenging the sufficiency of the evidence bears a heavy burden." *United States v. Landesman*, 17 F.4th 298, 319 (2d Cir. 2021) (internal quotation marks omitted). The reviewing court is required to "'view the evidence presented in the light most favorable to the government[,]' and '[a]ll permissible inferences must be drawn in the government's favor.'" *Id.* (quoting *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999)). "Moreover, the evidence must be viewed in its totality, as

each fact may gain color from others, and the Government need not negate every theory of innocence." *Id.* (internal quotation marks and citations omitted).  Under this standard, "[a] judgment of acquittal can be entered only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Jones*, 965 F.3d 190, 193-94 (2d Cir. 2020).  "[W]here 'either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the court] must let the jury decide the matter.'" *United States v. Jabar*, 19 F.4th 66, 76 (2d Cir. 2021) (quoting *Guadagna*, 183 F.3d at 129).

## II.     DISCUSSION

Calk argues that no rational juror could have found beyond a reasonable doubt that (1) Calk acted corruptly and intended to be influenced in connection with loans issued to Paul Manafort, a finding that was required to convict on both the substantive count and the conspiracy count, and (2) the alleged bribe was a "thing of value" exceeding $1,000.

The financial institution bribery statute makes it unlawful, in pertinent part, for any "officer . . . of a financial institution" to "corruptly accept[] or agree[] to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business or transaction of such institution."  18 U.S.C. § 215(a)(2).  Conspiracy to commit financial institution bribery requires the agreement between defendants to engage in the foregoing and an overt act by one of the conspirators in furtherance of the conspiracy.  18 U.S.C. § 371; *accord Jabar*, 19 F.4th at 76.

Viewing the evidence in the light most favorable to the Government, as required on this motion, a rational trier of fact could have concluded that the essential elements of financial

institution bribery and conspiracy to commit financial institution bribery were established beyond a reasonable doubt. Calk's motion is accordingly denied.

A.   Intent

To convict on either count, the jury was required to find that Calk accepted a bribe (or conspired to accept a bribe) corruptly and with the intent to be influenced in connection with the Bank's extension of loans to Manafort. Corruptly means that a defendant acted with an improper purpose of being influenced or rewarded. *See* 18 U.S.C. § 215(a)(2).

The Government presented evidence from which a rational trier of fact could find beyond a reasonable doubt that Calk acted with the requisite criminal intent -- specifically that Calk sought and accepted Manafort's assistance in securing a position in the Trump Administration (the bribe) in exchange for Calk's assistance in securing loans to Manafort from the Bank. This evidence included the timing of Calk's actions to influence the Bank to issue loans to Manafort, the special treatment Calk extended to Manafort and the personal benefits Calk demanded and received in exchange for such treatment, the breach of Calk's duties as the Bank's CEO and Chairman, the false and misleading statements Calk made to cover up his actions and Calk's contemporaneous admissions.

The Government presented ample evidence related to the timing of Calk's actions with respect to the two loans by the Bank to Manafort. The first loan, totaling $9.5 million, was rejected by the Bank before the November 8, 2016, presidential election. Days after the election, Calk caused the Bank to approve the loan and, shortly thereafter, personally sent Manafort a wish list of desired positions in the Trump administration. The evidence relating to the timing of the second loan also supports a finding that Calk acted with corrupt intent. On December 21, 2016, Calk emailed Manafort's lawyer, stating "we are in no way scheduling a closing" on the

$6.5 million second loan.  The next day, Calk personally sent Manafort the loan's term sheet and an offer to close the loan.  This occurred shortly after Calk and Manafort had an eleven-minute phone conversation during which Calk confirmed that he would be willing to serve as Under Secretary of the Army and discussed the term sheet for the second loan.  The timing and circumstances of each loan was sufficient for the jury to infer Calk's corrupt intent.  *See United States v. Silver*, 948 F.3d 538, 567 n.18 (2d Cir. 2020) ("The government's evidence of the timing of the payments in relation to the actions taken by [the public official] could also be accepted by a rational jury in support of the conclusion that [the defendant] understood that the consulting payments were made in return for official action.") (second alteration in original); *United States v. Friedman*, 854 F.2d 535, 554 (2d Cir. 1988) ("[E]vidence of a corrupt agreement in bribery cases is usually circumstantial, because bribes are seldom accompanied by written contracts, receipts or public declarations of intentions. . . .  As a result, a jury can in such cases infer guilt from evidence of benefits received and subsequent favorable treatment, as well as from behavior indicating consciousness of guilt.").

The jury also heard testimony that Calk was personally involved in giving the two loans special, favorable treatment at the Bank despite being aware of potential problems with Manafort's creditworthiness.  Calk made demands for personal benefits from Manafort, including by repeatedly making requests at the same time as critical steps in the lending process.  *See Silver*, 948 F.3d at 558 ("a jury may infer guilt from evidence of benefits received and subsequent favorable treatment") (internal quotation marks omitted).

The Government also presented evidence showing that Calk breached his duties under Office of the Comptroller of the Currency ("OCC") regulations and the Bank's own policies, which required Calk to recuse himself from consideration of the loans.  The jury also heard that

Calk made false and misleading statements to an OCC bank examiner concerning his knowledge of defaults and foreclosures on Manafort's properties, and to OCC supervisors falsely denying that he had wanted a position in the government. *See United States v. Bruno*, 661 F.3d 733, 744 (2d Cir. 2011) (jury may "infer guilt from . . . behavior indicating consciousness of guilt").

Calk argues that the evidence "provid[ed] a far more plausible explanation for the decision to make the loans: Mr. Calk and two other members of the loan committee believed that they would be profitable for the Bank." But this competing inference was before the jury and does not justify the grant of a Rule 29 motion. *Jabar*, 19 F.4th at 81 ("[I]t is the task of the jury, not the court, to choose among competing inferences that can be drawn from the evidence and to assess the weight of the evidence.") (internal quotation marks omitted). Far from being "nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt," *id.* at 76, the Government offered ample evidence that Calk acted with corrupt intent in extending the two loans to Manafort, which was sufficient for a rational jury to make that finding beyond a reasonable doubt.[1]

---

[1] In a footnote, Calk argues that the conspiracy conviction should be vacated under Wharton's Rule. This argument falls short. "[W]here a substantive offense requires persons to agree in order to commit it, Wharton's Rule disallows liability for conspiracy based on the same agreement required for the substantive crime." *United States v. Hoskins*, 902 F.3d 69, 81 (2d Cir. 2018). But Wharton's Rule "has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary." *Iannelli v. United States*, 420 U.S. 770, 782 (1975). Wharton's Rule applies where "[t]he parties to the agreement are the only persons who participate in commission of the substantive offense, and the immediate consequences of the crime rest on the parties themselves rather than on society at large." *Id.* at 782-83. Because conspiracy to commit financial institution bribery is not such a crime, Wharton's Rule does not apply. *United States v. Foster*, 566 F.2d 1045, 1047-48 (6th Cir. 1977) (rejecting applicability of Wharton's Rule to conspiracy to commit financial institution bribery).

### B.     Value of the Bribe

The Government also presented sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that the thing of value Calk solicited and accepted – namely Manafort's assistance -- had a value greater than $1,000, which was required to convict on either count. A "thing of value" may include both tangible and intangible things and need not itself be illegal. *United States v. Rosenthal*, 9 F.3d 1016, 1023 (2d Cir. 1993). To be a "thing of value," the critical inquiry is whether the bribe was believed to have value to the recipient. *Id*. Accordingly, the bribe's monetary value, and whether it reached the $1,000 statutory threshold, may be determined by "the value that the defendant[] subjectively attached to the items received . . . whether or not he has correctly assessed the worth of the bribe." *United States v. Williams*, 705 F.2d 603, 623 (2d Cir. 1983).

Here, the Government presented evidence from which a rational trier of fact could find beyond a reasonable doubt that Calk valued Manafort's assistance in securing a position in the Trump Administration at more than $1,000 because Calk spent more than $1,000 on his travel and hotel costs to attend the so-called Tiger Team interview, which Manafort had facilitated. This was a screening interview of Calk for the position of Undersecretary of the Army or other senior position in the Trump Administration. The interview was held at Trump Tower in New York on January 10, 2017, ten days before the presidential inauguration. After Calk learned that

---

Unlike the canonical examples of Wharton's Rule offenses -- adultery, incest, bigamy and dueling -- society's interest in banks operating "honestly and without failures" is sufficient to raise the third-party exception to Wharton's Rule. *See id*.; *cf.*, *United States v. Langford*, 647 F.3d 1309, 1331-32 (11th Cir. 2011) (rejecting application of Wharton's rule to bribery concerning programs receiving federal funds); *United States v. Hines*, 541 F.3d 833, 838 (8th Cir. 2008) (same).

he would be interviewed the following day, he booked air travel from Chicago to New York for the same evening, a one-night hotel stay and a return trip after the interview the next day, spending over $1,800 on the combined expenses. This evidence supports the jury's finding that Manafort's assistance was worth over $1,000 to Calk. Otherwise, he would not have spent $1,800 to attend the interview Manafort had arranged. "[T]he conduct and expectations of a defendant can establish whether an intangible objective is a 'thing of value[, and] the conduct of the bribed defendant . . . may establish the value of the intangible thing of value." *United States v. Townsend*, 630 F.3d 1003, 1012 (2d Cir. 2011) (internal citation and quotation marks omitted); *see Williams*, 705 F.2d at 622-23.

Calk argues that the value of the hotel and airfare expenses is an improper measure because it means that Calk's conviction "turn[s] on the mode and quality of travel that [Calk] chose to purchase." This argument is unpersuasive because it fails to "focus on the value that [Calk] subjectively attached to the items received." *Williams*, 705 F.2d at 623 (affirming denial of post-trial motions where jury charge focused on the subjective value of stock received). Calk's chosen travel arrangements reflect his belief concerning the value of Manafort's assistance. The evidence was sufficient for a rational jury to find beyond a reasonable doubt that Manafort's assistance was worth over $1,000.

### III. CONCLUSION

For the foregoing reasons, Calk's motion for a judgment of acquittal is DENIED. The Clerk of Court is respectfully directed to close the motion at Docket Number 284.

Dated: January 11, 2022
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**
